**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

DAMONIE EARL, LINDA RUGG,　§
ALESA BECK, TIMOTHY BLAKEY, JR.,　§
STEPHANIE BLAKEY, MARISA　§
THOMPSON, MUHAMMAD MUDDASIR　§　　Civil Action No. 19-cv-00507
KHAN, ELIZABETH COOPER, JOHN　§
ROGERS, VALERIE MORTZ-ROGERS,　§
and LAKESHA GOGGINS, each　§
individually and on behalf of all others　§
similarly situated,　§
　§
　　*Plaintiffs*,　§
v.　§
　§
THE BOEING COMPANY, SOUTHWEST　§
AIRLINES CO.,　§
　§
　　*Defendants*.　§
　§

**THE BOEING COMPANY'S MOTION TO DISMISS
FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL ALLEGATIONS ................................................................................. 3

ARGUMENT .......................................................................................................... 5

    I.      Plaintiffs lack the injury-in-fact required for Article III standing because they received the flights for which they paid. ........................................ 6

    II.     Plaintiffs fail to state a RICO claim. ............................................................ 8

         A.      Plaintiffs lack statutory standing under RICO. ......................... 9

              1.      "Benefit of the bargain" injuries are insufficient for RICO standing. ........................................................ 9

              2.      Plaintiffs' attenuated theory of causation is insufficient for RICO standing. ................................................... 11

         B.      Boeing and Southwest's business relationship is not a RICO enterprise. ............................................................................. 14

         C.      Plaintiffs' RICO conspiracy claim fails for the same reasons as their RICO claim. ......................................................... 17

    III.    The federal aviation statutes bar Plaintiffs' claims. .............................. 18

         A.      The Airline Deregulation Act expressly preempts Plaintiffs' state law claims, which seek to regulate air carrier prices by demanding refunds. ........................................................................... 19

         B.      Plaintiffs' fraud-on-the-FAA allegations are barred as an obstacle to the proper enforcement of the Federal Aviation Act. ......................... 21

    IV.    Plaintiffs fail to plead the elements of their state law claims. ............... 23

         A.      Plaintiffs are not entitled to recover for an unmanifested alleged defect. .................................................................................... 25

         B.      Nearly all of Plaintiffs' state law claims fail for lack of reliance. ........... 27

CONCLUSION .................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995) ....................................................................................... 19, 20

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 5

*Beavers v. Metro. Life Ins. Co.*,
    566 F.3d 436 (5th Cir. 2009) ................................................................................... 6

*Beck v. Prupis*,
    529 U.S. 494 (2000) ............................................................................................... 10

*Boyle v. United States*,
    556 U.S. 938 (2009) ............................................................................................... 15

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ............................................................ 10, 11

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ............................................................................... 25

*Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) ............................................................................ 25, 26

*Buck v. Am. Airlines, Inc.*,
    476 F.3d 29 (1st Cir. 2007) ................................................................................... 20

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001) ........................................................................... 18, 21, 22, 23

*Cheatham v. ADT Corp.*,
    161 F. Supp. 3d 815 (D. Ariz. 2016) ..................................................................... 29

*Cole v. General Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007) ................................................................................... 8

*Conroy v. Regents of Univ. of Cal.*,
    203 P.3d 1127 (Cal. 2009) ................................................................................ 27, 28

*Cont'l Airlines, Inc. v. Am. Airlines, Inc.*,
    824 F. Supp. 689 (S.D. Tex. 1993) ........................................................................ 20

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) ............................................................................................... 18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ............................................. 28, 29

*ePlus Tech., Inc. v. Aboud*,
  313 F.3d 166 (4th Cir. 2002) ...............................................9

*Ferrell v. Air EVAC EMS, Inc.*,
  900 F.3d 602 (8th Cir. 2018) ............................................. 19–20

*In re GM LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016) ........................... 10, 11, 16

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
  2005 WL 6778678 (N.D. Ohio Feb. 22, 2005) ....................... 26

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*,
  127 F.3d 1390 (11th Cir. 1997) ......................................... 27

*Gomez v. Guthy-Renker, LLC*,
  2015 WL 4270042 (C.D. Cal. July 13, 2015) ......................... 15

*Hamilton v. TBC Corp.*,
  328 F.R.D. 359 (C.D. Cal. 2018) ....................................... 29

*Harris v. FDIC*,
  885 F. Supp. 2d 1296 (N.D. Ga. 2012) ............................... 27, 28

*Holmes v. SIPC*,
  503 U.S. 258 (1992) ....................................................... 11

*Huawei Techs. Co. v. Huang*,
  2018 WL 1964180 (E.D. Tex. Apr. 25, 2018) ....................... 6

*IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*,
  900 F.3d 640 (5th Cir. 2018) ........................................... 13, 27

*In re Jamster Mktg. Litig.*,
  2009 WL 1456632 (S.D. Cal. May 22, 2009) ....................... 15

*JP Morgan Chase Bank v. Winnick*,
  350 F. Supp. 2d 393 (S.D.N.Y. 2004) ................................. 28

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*,
  340 P.3d 405 (Ariz. Ct. App. 2014) ................................... 27

*Kia Motors Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. Dist. Ct. App. 2008) ......................... 26

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Leider v Ralfe*,
  387 F. Supp. 2d 283 (S.D.N.Y. 2005) ..................................................... 29

*Lofton v. McNeil Consumer & Specialty Pharm.*,
  672 F.3d 372 (5th Cir. 2012) ............................................................ 21

*Longmont United Hosp. v. Saint Barnabas Corp.*,
  305 F. App'x 892 (3d Cir. 2009) ........................................................ 14

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
  283 F.3d 282 (5th Cir. 2002) ............................................................ 20

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. Ct. App. 2011) .............................................. 27, 28

*Marlow v. AMR Servs. Corp*,
  870 F. Supp. 295 (D. Haw. 1994) ...................................................... 20

*McCalment v. Eli Lilly & Co.*,
  860 N.E.2d 884 (Ind. Ct. App. 2007) ................................................. 27

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ............................................................. 10

*McManus v. Am. Express Tax & Bus. Servs.*,
  67 F. Supp. 2d 1083 (D. Ariz. 1999) .................................................. 28

*Microsoft Corp. v. Manning*,
  914 S.W.2d 602 (Tex. App.—Texarkana 1995) .................................. 26

*Miranda v. Ponce Fed. Bank*,
  948 F.2d 41 (1st Cir. 1991) ............................................................ 8, 9

*Montesano v. Seafirst Commercial Corp.*,
  818 F.2d 423 (5th Cir. 1987) ............................................................ 15

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .................................................................... 18, 19

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
  781 F.3d 182 (5th Cir. 2015) ............................................................ 17

*Northwest, Inc. v. Ginsberg*,
  572 U.S. 273 (2014) .................................................................... 19, 20

*Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*,
  868 F.2d 740 (5th Cir. 1989) ............................................................ 12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Oceanic Expl. Co. v. Phillips Petroleum Co.*,
  352 F. App'x 945 (5th Cir. 2009) ........................................ 12

*In re Oil Spill by Oil Rig "Deepwater Horizon*,"
  802 F. Supp. 2d 725 (E.D. La. 2011) .................................. 14

*Perry v. Am. Tobacco Co.*,
  324 F.3d 845 (6th Cir. 2003) ............................................... 9

*Price v. Pinnacle Brands, Inc.*,
  138 F.3d 602 (5th Cir. 1998) ............................................. 10

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ................................................ 16

*Randall D. Walcott, M.D., P.A. v. Sebelius*,
  635 F.3d 757 (5th Cir. 2011) ............................................... 5

*Ranieri v. AdvoCare Int'l, L.P.*,
  336 F. Supp. 3d 701 (N.D. Tex. 2018) ............................... 13

*Raysoni v. Payless Auto Deals, LLC*,
  766 S.E.2d 24 (Ga. 2014) .................................................. 28

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002) ...................................... 6, 7, 8

*Roberts v. The Scott Fetzer Co.*,
  2010 WL 3937312 (M.D. Ga. Sept. 30, 2010) ................... 10

*Robinson v. Standard Mortgage Corp.*,
  191 F. Supp. 3d 630 (E.D. La. 2016) ................................. 13

*Sam L. Majors Jewelers v. ABX, Inc.*,
  117 F.3d 922 (5th Cir. 1997) ............................................. 19

*Schneidewind v. ANR Pipeline Co.*,
  485 U.S. 293 (1988) .......................................................... 18

*Se. Laborers Health & Welfare Fund v. Bayer Corp.*,
  444 F. App'x 401 (11th Cir. 2011) ..................................... 23

*Shaw v. Nissan N. Am., Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016) .................... 15, 16, 17

*Snyder v. Smith*,
  7 F. Supp. 3d 842 (S.D. Ind. 2014) ................................... 28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ........................................................................ 6

*Statland v. Am. Airlines, Inc.*,
   998 F.2d 539 (7th Cir. 1993) ............................................................. 20

*In re Taxable Mun. Bond Sec. Litig.*,
   51 F.3d 518 (5th Cir. 1995) ........................................................... 9–10

*Tiismann v. Linda Martin Homes Corp.*,
   637 S.E.2d 14 (Ga. 2006) ................................................................. 29

*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
   915 F. Supp. 1151 (C.D. Cal. 2013) ................................................. 26

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) ............................................ 16

*In re Toyota Motor Corp.*,
   2012 WL 12929769 (C.D. Cal. May 4, 2012) ................................... 26

*Tri-State Express, Inc. v. Cummins Engine Co.*,
   2000 U.S. Dist. LEXIS 20837 (D.D.C. Sept. 11, 2000) ................... 11

*United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*,
   2012 WL 3061859 (N.D. Ill. July 26, 2012) ..................................... 23

*United States v. Estate of Romani*,
   523 U.S. 517 (1998) ......................................................................... 18

*United States v. Fausto*,
   484 U.S. 439 (1988) ......................................................................... 19

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) ........................................................ 16

*Wendt v. 24 Hour Fitness USA, Inc.*,
   821 F.3d 547 (5th Cir. 2016) ...................................................... 6, 7, 8

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) .................................................. 7, 8

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175 (5th Cir. 1997) ...................................................... 6, 27

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

U.S. Const., Art. VI, ¶ 2 ............................................................................. 18

18 U.S.C. § 1962 .......................................................................................... 9

18 U.S.C. § 1964 ..................................................................................... 9, 11

49 U.S.C. § 40113 ....................................................................................... 22

49 U.S.C. § 41713 .............................................................................. 2, 19, 22

49 U.S.C. § 44105 ....................................................................................... 22

49 U.S.C. § 44701 ....................................................................................... 22

49 U.S.C. § 44709 ....................................................................................... 22

49 U.S.C. § 44713 ....................................................................................... 22

49 U.S.C. § 46101(a)(2) .............................................................................. 22

49 U.S.C. § 46104 ....................................................................................... 22

49 U.S.C. § 46106 ....................................................................................... 22

49 U.S.C. § 46301 ....................................................................................... 22

49 U.S.C. § 46320 ....................................................................................... 22

Ariz. Rev. Stat. § 44-1521, *et seq.* ............................................................ 25

Cal. Bus. & Prof. Code § 17500, *et seq.* ................................................... 24

Cal. Civ. Code. § 1750, *et seq.* .................................................................. 24

Fla. Stat. § 501.201, *et seq.* ....................................................................... 25

Ga. Code § 10-1-370, *et seq.* ..................................................................... 25

Ga. Code § 10-1-390, *et seq.* ..................................................................... 25

Ind. Code § 24-5-0.5-0.1, *et seq.* .............................................................. 25

N.Y. General Business Law § 349 .............................................................. 25

N.Y. General Business Law § 350 .............................................................. 25

**Other Authorities**

14 C.F.R. § 121.9 ........................................................................................ 22

Fed R. Civ. P.  9 ...................................................................... 6, 13, 27, 28, 29

## INTRODUCTION

The Complaint in this case fails to state a plausible claim to relief for the most basic of reasons:  Plaintiffs have failed to allege a legally cognizable injury or valid cause of action. Plaintiffs bought airplane tickets and have not alleged that there was anything wrong with the actual flights they took.  Plaintiffs have nevertheless asked for "their money back," Compl. ¶ 8, because those successful flights might have been on Boeing's 737 MAX airplane, which they claim was defective.  Plaintiffs allege no physical or emotional injury from any defect.  Nor do they allege that any defect manifested itself on any of their flights.  And they do not allege *that they have ever flown on a Boeing 737 MAX*.  So Plaintiffs do not deny that they got a successful flight at the agreed price and arrived safely at their intended destination.  But, they allege, they now wish they had paid less.

This lawsuit should be dismissed for numerous reasons.  Most fundamentally, Plaintiffs' lack of injury means they have no standing to bring this lawsuit in federal court, let alone recover on the merits.  It is a fundamental tenet of the law of Article III standing that plaintiffs can sue only based on their *own* injuries, not those of others; and the Complaint makes clear that these Plaintiffs have not been harmed.  The Fifth Circuit has previously rejected this same purported "benefit of the bargain" theory of injury, where plaintiffs paid for and used a product that was fully effective for them, but later claim they want their money back.  Under this precedent, the Plaintiffs' claims here must be dismissed for lack of Article III standing because they paid for and used their tickets, and do not suggest their flights caused them injury in any way.

Even if Plaintiffs did satisfy the constitutional standing requirement, their civil RICO and state law claims would fail for multiple independent reasons.  The civil RICO claims are deficient in at least three key respects.  First, Plaintiffs' allegations do not satisfy the injury

1

requirement for statutory standing under RICO.  RICO, a statute designed to combat organized crime, restricts standing for civil claims to persons "injured in [their] business or property." Plaintiffs have alleged no RICO injury, just as they have alleged no constitutional injury, because they received the successful flights for which they paid.  And even if Plaintiffs could clear the constitutional hurdle, courts have regularly held that allegations (like Plaintiffs') that a product is really worth less than the buyer agreed to pay are insufficient to satisfy the more demanding RICO standing requirement.  Second, Plaintiffs' allegations also fail to satisfy the separate causation requirement for RICO standing.  That is because the RICO violation they allege (misrepresentations by Boeing and Southwest about the safety of the Boeing 737 MAX) has no direct relation to their supposed injuries (higher ticket prices), with a chain of causation far too attenuated and remote to satisfy the statutory requirement.  Third, Plaintiffs have failed to plead a plausible RICO "enterprise" involving Boeing and Southwest.  Plaintiffs allege that Boeing is the exclusive seller of airplanes to Southwest, and the series of acts they complain of are nothing more than entirely legal and economically rational acts in furtherance of that relationship. Courts have repeatedly recognized that a RICO enterprise must be more than such a longstanding manufacturer-buyer relationship.

Plaintiffs' claims are also barred by multiple federal statutes, which both preempt their state law claims and preclude their RICO claims.  First, Plaintiffs' state law claims are preempted by the Airline Deregulation Act ("ADA"), which expressly preempts all state law claims "related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  Supreme Court precedent establishes that state law claims are preempted under this standard if they have "a connection with, or reference to" airline prices, routes, or services.  Because Plaintiffs' state law claims all challenge the pricing of their completed flights on Southwest Airlines and

2

American Airlines, and seek a refund of their ticket prices, those claims all have "a connection

with" and "reference" airline pricing, and so are preempted.  Those claims are also independently

preempted by the Federal Aviation Act ("FAAct") insofar as they are predicated on allegations

that Boeing and Southwest defrauded the FAA into allowing the 737 MAX to fly between

August 29, 2017 and March 13, 2019.  The Supreme Court has recognized that attempts to police

alleged fraud on federal agencies through claims by private parties serve as an obstacle to the

achievement of Congress's objectives in delegating regulatory enforcement to the agency, and

therefore are preempted.  The FAAct likewise precludes Plaintiffs' civil RICO claims insofar as

they are based on the allegation that Boeing defrauded the FAA.

Finally, Plaintiffs have failed to plead critical elements of their state law claims.  First,

Plaintiffs have failed to plead a cognizable injury.  It is not enough to claim that an alleged defect

has manifested in *other* customers' products.  Rather, under the law of every state, there is no

claim without an injury, and no injury exists where, as here, a product performs satisfactorily and

never exhibits an alleged defect.  And second, Plaintiffs have failed to plausibly plead the basic

element of reliance as required for most of their state law claims.

## FACTUAL ALLEGATIONS

Plaintiffs allegedly bought tickets for flights on Southwest Airlines or American Airlines

between August 2017 and March 2019.  Compl. ¶ 52.  They do not say whether their flights were

on a 737 MAX 8 (the "737 MAX" or "MAX") or some other airplane, even though the

complaint acknowledges that Southwest and American's fleets included relatively few Boeing

737 MAX airplanes during this period.  *See* Compl. ¶ 231 (Southwest had only thirty-four 737

MAX airplanes as of December 31, 2018, out of a fleet of more than 750 Boeing airplanes);

¶ 290 (American had only twenty-eight 737 MAX airplanes in its fleet as of March 10, 2019).

3

Boeing designed the 737 MAX as the successor to its successful 737 NG.  Compl. ¶ 98.
The FAA approved the 737 MAX's design, Compl. ¶¶ 159–60, and Southwest took delivery of
its first 737 MAX in August 2017.  Compl. ¶ 173.  Plaintiffs allege that, before the development
of the 737 MAX, Boeing and Southwest had a "Handshake Agreement" that made Boeing the
exclusive airplane supplier for Southwest in exchange for Southwest receiving Boeing's best
prices.  Compl. ¶ 9.  According to Plaintiffs, "Southwest gains some advantages from this
business model, which allows cost savings."  Compl. ¶ 85.  Plaintiffs also concede that
"Southwest's aggressive support of the 737 benefits both Southwest and Boeing."  Compl. ¶ 87.
Plaintiffs also allege that Southwest participated in the development of the 737 MAX, Compl.
¶ 170–72, and was owed a rebate if its pilots required additional simulator training for the MAX,
Compl. ¶ 164–65.

According to Plaintiffs, the 737 MAX contained a defective feature called the Maneuvering
Characteristics Augmentation System ("MCAS"), which adjusts the airplane's pitch automatically
during flight under certain circumstances.  Compl. ¶¶ 105, 108.  Plaintiffs assert that MCAS caused
the crashes of Lion Air Flight 610 on October 29, 2018 and Ethiopian Airlines Flight 302 on March
10, 2019.  Compl. ¶¶ 179, 184, 220, 223.  Plaintiffs point to public statements from Boeing and
Southwest defending the safety of the 737 MAX after those incidents.  Compl. ¶¶ 192–99, 206–
15, 229–37.  The FAA decided to ground the 737 MAX on March 13, 2019, pending further
investigation.  Compl. ¶ 252.  Plaintiffs allege that the public statements they describe by Boeing
and Southwest were false, Compl. ¶¶ 192–99, 206–15, 229–37, but make no specific allegations
that they or the airlines they patronized relied on such statements.  Plaintiffs further insinuate that
Boeing and Southwest "actively misled" regulators, including the FAA, about the safety of the 737
MAX.  Compl. ¶ 46.  A section of Plaintiffs' complaint is titled "Boeing's Misrepresentations to

4

Regulators and the MAX 8 Approval Process."  Compl. § II(D).  And Plaintiffs assert that Boeing and Southwest participated in a fraudulent scheme based on "communications with the FAA," and that Boeing chose not to inform regulators about an issue with MCAS.  Compl.  ¶¶ 343(a), 29, 163.

Plaintiffs do not allege that MCAS was activated on any of their flights, or that it caused them any personal injury.  Compl. ¶ 325.  Instead, they assert they "did not receive the benefit of their bargain" because they "received flights of lesser or no value."  Compl. ¶ 54.  The tickets were worth less than paid, according to Plaintiffs, because they could be used "to potentially fly" on a 737 MAX.  Compl. ¶ 8; *see also* ¶ 53 (Plaintiffs "risked flying on a MAX 8").  Plaintiffs assert civil RICO claims (Counts 1–2), common law claims based on fraud, unjust enrichment, and negligence (Counts 3–8), and various state statutory claims (Counts 9–17) based on that alleged "benefit of the bargain" injury.  *See infra* § IV for a table setting forth the various state law claims.

## ARGUMENT

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)).  In evaluating plausibility, the Court does not "'accept as true a legal conclusion couched as a factual allegation.'"  *Randall D. Walcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Iqbal,* 556 U.S. at 678).  Indeed, "conclusional allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Beavers v. Metro. Life Ins. Co.,* 566 F.3d 436, 439 (5th Cir. 2009).

Federal Rule of Civil Procedure 9(b) further requires a plaintiff alleging fraud to "state with particularity the circumstances constituting" that fraud.  Thus, a plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Huawei Techs. Co. v. Huang*, 2018 WL 1964180, at *3 (E.D. Tex. Apr. 25, 2018) (Mazzant, J.). "Directly put, the who, what, when, and where [of a fraud] must be laid out before access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Plaintiffs' allegations do not satisfy the requirements of either *Iqbal* or Rule 9(b).

## I.    Plaintiffs lack the injury-in-fact required for Article III standing because they received the flights for which they paid.

Plaintiffs' claims should be dismissed in the first instance because they have alleged no constitutionally cognizable injury, and therefore lack Article III standing.  Article III standing—the *sine qua non* of a federal lawsuit—requires an "injury in fact," *i.e.* "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 550 (5th Cir. 2016).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n. 1 (1992)).  That is, "the party seeking review [must] be himself among the injured." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002).

In *Rivera*, the Fifth Circuit rejected a purported "benefit of the bargain" injury just like the one Plaintiffs assert here. *Id.* at 319; *see also, e.g.*, Compl. ¶ 54.  That case addressed the prescription painkiller Duract, which was withdrawn from the market after it injured some long-term users.  But the plaintiffs were short-term users who did "*not* claim Duract caused them

6

physical or emotional injury, was ineffective as a pain killer, or has any future health consequences." *Id.* (emphasis in original).  Instead, the "claim to injury" was a "loss of cash": "other patients were injured by Duract," and the plaintiffs "would like [their] money back." *Id.*

The Fifth Circuit held that the *Rivera* plaintiffs lacked standing.  That the defective painkiller harmed *other* users was irrelevant because the plaintiffs were "not among the injured." *Id.* at 320.  And the plaintiffs were not "denied 'the benefit of the bargain' due to them under general, contract law type principles." *Id.*  That is because the plaintiffs "paid for an effective pain killer, and [they] received just that—the benefit of [their] bargain." *Id.*  Even if the manufacturer had "provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now." *Id.*; *see also Wendt*, 821 F.3d at 550 (fitness club members lacked standing to sue for statutory violations because the club "gave Plaintiffs exactly what they paid for:  access to a gym").

*Williams v. Purdue Pharma Co.* also rejected Article III standing for the sort of "benefit of the bargain" injury Plaintiffs assert here.  297 F. Supp. 2d 171 (D.D.C. 2003).  The *Williams* plaintiffs alleged, pursuant to Washington D.C.'s consumer fraud statute, that they were "economically injured because they purchased an expensive name-brand drug that did not possess the characteristics represented by Defendants," including "lower abuse potential." *Id.* at 175.  But the plaintiffs did not deny that the drug was effective, and the class excluded users with addiction or other personal injury claims. *Id.* at 176.  Because the plaintiffs "do not allege any future harm that is expected from their past ingestion," their complaint boiled down to the alleged "invasion of a purely legal right without harm to the consumer." *Id.* at 178.

As in *Rivera* and *Williams*, Plaintiffs here received the full benefit of their bargain. Plaintiffs "purchased a ticket for air travel." *See, e.g.*, Compl. ¶ 295.  And they "received just

that—the benefit of [their] bargain." *Rivera*, 283 F.3d at 320.  Plaintiffs do not allege any

"physical or emotional injury," *id.* at 319; in fact, they "expressly disclaim" any such recovery.

Compl. ¶ 325.  They do not claim that the Boeing 737 MAX was "ineffective" in transporting

any putative class members to their destination.  *Rivera*, 283 F.3d at 319.  In fact, they do not

allege that any of them even traveled on a 737 MAX.  And even overlooking that pleading

deficiency and assuming they did fly on a 737 MAX, they do not claim that they are at risk for

"any future health consequences" or *any other consequences whatsoever* as a result.  *See also*

*Williams*, 297 F. Supp. 2d at 178 (no standing for fraud claim where plaintiffs "do not allege any

future harm" that is expected from the successful past use of a product).  So as they have pleaded

their case, these Plaintiffs got "exactly what they paid for." *Wendt*, 821 F.3d at 550.  Without

any particularized injury *to Plaintiffs*, the mere fact that they "would like [their] money back" is

insufficient for standing.  *Rivera*, 283 F.3d at 319.[1]  Accordingly, their claims must be dismissed.

## II.     Plaintiffs fail to state a RICO claim.

RICO is "the litigation equivalent of a thermonuclear device" meant to combat organized

crime.  *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).  The RICO offense

Plaintiffs invoke here forbids "any person employed by or associated with any enterprise"

affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

---

[1] These claims are thus distinguishable from those in *Cole v. General Motors Corp.*, which found standing for claims brought by the owners of defective automobiles when GM acknowledged that "a defect which relates to motor vehicle safety exists *and may manifest itself*" by causing airbags to deploy unexpectedly.  484 F.3d 717, 718 (5th Cir. 2007) (emphasis added).  As alleged, those car buyers lost the benefit of their bargain because they continued to own a durable good that might injure them at any time.  In contrast, these Plaintiffs do not allege that they received anything less than the one-time service for which they paid.  *See Williams*, 297 F. Supp. 2d at 178 (no standing where "plaintiffs do not allege any future harm that is expected").

Because "[c]ivil RICO is an unusually potent weapon," *Miranda*, 948 F.2d at 44, Congress leashed the claim with its own standing requirement on top of the requirements of Article III. A civil RICO plaintiff must be "injured in his business or property by reason of" a predicate act. 18 U.S.C. § 1964(c). These stringent requirements "are designed to prevent RICO's harsh sanctions, such as treble damages, from being applied to garden-variety fraud schemes," *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002), much less standard business arrangements that are completely lawful.

### A.   Plaintiffs lack statutory standing under RICO.

RICO's statutory standing provision is more demanding than Article III, *see Perry v. Am. Tobacco Co.*, 324 F.3d 845, 849–50 (6th Cir. 2003), and requires both a certain type of injury and a close causal link with a predicate racketeering activity. These Plaintiffs satisfy neither the injury nor the causation requirement. "Benefit of the bargain" allegations such as those Plaintiffs make here are inadequate to establish statutory standing under RICO, and the Complaint does not allege that any injury Plaintiffs' purportedly did suffer is traceable to Defendants' conduct.

### 1.   "Benefit of the bargain" injuries are insufficient for RICO standing.

The crux of Plaintiffs' Complaint is that they "did not receive the benefit of their bargain." Compl. ¶ 54. As discussed above, that allegation fails under Article III because the Complaint itself makes clear that Plaintiffs *did* receive the benefit of their bargain, and so cannot show the cognizable injury required to satisfy Article III. *See supra* at 6–8. But the requirement for RICO standing is even more stringent:  Plaintiffs must have suffered a "concrete financial loss." *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). Accordingly, "damages based on the benefit of the[] bargain . . . are generally unavailable in RICO suits." *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008), *abrogated in part on other*

*grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  Plaintiffs here allege that they overpaid for their tickets, because they learned after the fact that the plane they flew on might not have met "their expectations," Compl. ¶ 54; this is a classic case of "benefit of the bargain" expectation damages.

Such damages, which seek to recover the "loss of value" between the price plaintiffs paid for a product and the price they would have paid with full knowledge of the product, cannot confer RICO standing.  *Id.*  That is because RICO is a statute focused on organized crime and is not a source of federal tort liability or quasi-consumer protection law; accordingly, it confers standing only on those who are injured in their business or property.  *See Beck v. Prupis*, 529 U.S. 494, 496 (2000) ("Congress enacted RICO . . . , for the purpose of 'seeking the eradication of organized crime in the United States'").  A "party's 'expectation'" that the product purchased is worth the price paid is not "'business or property'" under RICO.  *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16–18 (S.D.N.Y. July 15, 2016); *see also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing"); *Roberts v. The Scott Fetzer Co.*, 2010 WL 3937312, at *10 (M.D. Ga. Sept. 30, 2010) ("[T]he intangible, expectancy-type, benefit of the bargain damages that Plaintiff seeks are not what are contemplated as being recoverable as RICO damages.").

For that reason, courts have found plaintiffs lack standing under RICO in vehicle defect cases involving similar benefit of the bargain claims.  In *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1091 (S.D. Ind. 2001), *rev'd in part on other grounds*, 288 F.3d 1012 (7th Cir. 2002), for example, plaintiffs sought to recover for allegedly defective tires on vehicles they purchased.  The court dismissed the civil RICO claims because the injury

depended on speculation that those tires might fail in the future:  "[A]s numerous appellate and district courts have held …. RICO affords a monetary remedy only to plaintiffs who have actually realized the diminished value or experienced product failure, and not to those who allege a risk (or even a probability) of such loss."  *Id.* (collecting cases); *see also In re GM LLC Ignition Switch Litig.*, 2016 WL 3920353, at *1 (S.D.N.Y. July 15, 2016) (no RICO injury in plaintiffs' claimed harm from "a drop in their cars' value due to the revelations of GM's years-long cover-up of the ignition switch and other potentially fatal defects"); *Tri-State Express, Inc. v. Cummins Engine Co.*, 2000 U.S. Dist. LEXIS 20837, at *16 (D.D.C. Sept. 11, 2000) ("Plaintiffs' claim of having paid more than fair-market value for their trucks because of defendants' misrepresentations also falls short of demonstrating RICO injury.").

Plaintiffs' lack of standing here is even more clear, where they paid for (and received) a one-time service, not—as in those cases—an asset that continues to be owned over time.

### 2.      Plaintiffs' attenuated theory of causation is insufficient for RICO standing.

Plaintiffs also independently fail to satisfy the causation requirement in RICO's standing provision.  *See* 18 U.S.C. § 1964(c) (requiring a plaintiff to show injury "by reason of" a predicate act).  That provision requires "some direct relation between the injury asserted and the injurious conduct alleged," *Holmes v. SIPC*, 503 U.S. 258, 268 (1992), and that link must not be "too remote," *id*. at 271.  The "central question" for RICO causation is "whether the alleged violation led *directly* to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added).

Plaintiffs do not adequately plead even basic "but for" causation, much less proximate causation.  *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989).  Because Plaintiffs do not allege what kind of plane they flew on, they cannot take the

11

first necessary step in demonstrating that issues with the 737 MAX affected their ticket prices. And even if some Plaintiffs did fly on a 737 MAX, Plaintiffs do not allege that they would have paid a different price for flights on different airplanes.  And even if some Plaintiffs did fly on a 737 MAX, they would still have to show that use of a different airplane on that route would have lowered their ticket price.  But Plaintiffs do not allege that they would have paid a different price for flights on different airplanes.

Even assuming they could establish "but for" causation, Plaintiffs' theory of liability is far too attenuated to clear the additional hurdle of proximate causation, as RICO requires.  *See Oceanic Expl. Co. v. Phillips Petroleum Co.,* 352 F. App'x 945, 951 (5th Cir. 2009) (no RICO causation where the causal link "rest[s] only on an overly attenuated chain of inferences").  Plaintiffs rely on the following causal chain:  First, Boeing allegedly incorporated design errors into the 737 MAX (Compl. ¶¶ 14–18; 33–35; 42; 104–51); next, Boeing and Southwest allegedly misrepresented the airworthiness of the 737 MAX (¶¶ 26–27; 38; 152–71; 177–78; 185; 190–99; 215; 219; 237–38; 249); then, the FAA decided to allow the 737 MAX to fly between August 29, 2017 and March 13, 2019 (¶¶ 52; 240–42); and finally, the 737 MAX may have been used for the flights of some (but not all) class members (*Id.* ¶ 52), all of whom now believe their tickets were worth less than they paid, despite having arrived safely and uneventfully at their destinations (¶¶ 52–64).

These allegations are too attenuated for several reasons.  First, although their claims rest on purported misrepresentations by Boeing and Southwest, Plaintiffs nowhere specify what statements they (or anyone else) relied on to their detriment, let alone with the particularity

12

required by Rule 9(b).[2]  *See IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d

640, 648 (5th Cir. 2018) ("Rule 9(b)'s particularity requirements are tied to the elements of

fraud, specifically detrimental reliance.").  Their general and conclusory assertions that safety

and reliability are "material concerns" to consumers (Compl. ¶ 359), and that "[h]ad they been

aware that the [737 MAX] was defective, Plaintiffs and the Class would not have purchased

tickets" (*id*. ¶ 363; *see also* ¶ 373), are insufficient as a matter of law to establish such reliance.[3]

*Ranieri v. AdvoCare Int'l, L.P.*, 336 F. Supp. 3d 701, 718 (N.D. Tex. 2018) (explaining that there

must be a showing of a direct connection between the injuries and conduct to sustain a RICO

claim); *see also Robinson v. Standard Mortgage Corp.*, 191 F. Supp. 3d 630, 645 (E.D. La.

2016) ("In general, 'a RICO plaintiff alleging injury . . . must establish at least third-party

reliance in order to prove causation.'").

Second, to the extent Plaintiffs seek to ground their theory of causation on alleged

misrepresentations by Boeing to the FAA—which is itself unclear from the Complaint[4]—the

---

[2] Boeing joins in and incorporates by reference Southwest's arguments with respect to why dismissal is appropriate pursuant to Rule 9(b).

[3] Paragraph 29 asserts that Boeing and Southwest "misled the public, airline customers, and the FAA about the appropriate fix" for MCAS, and Paragraph 46 asserts that "[h]ad Boeing and Southwest not actively misled the public, airline customers, and regulators about the safety of the MAX 8, passengers would not have taken those flights[.]"  But the Complaint does not say why this is so or even contend that the "passengers" it refers to include Plaintiffs.

[4] Plaintiffs insinuate that the FAA was defrauded into not grounding the 737 MAX sooner, s*ee* Compl. ¶¶ 29; 46; 152–63; 343(a), but do not allege that the FAA would have behaved differently in response to different disclosures from Boeing.  And while the heading above paragraphs 152–63 refers to "Boeing's Misrepresentations to Regulators," the allegations themselves are devoted almost completely to complaining about the FAA's lawful delegation of certain airworthiness determinations to Boeing personnel rather than any particular alleged misrepresentation by Boeing to the FAA.  Paragraph 343(a) alleges generally that Boeing and Southwest schemed to defraud through "communications with the FAA," but again does not allege that any specific communications were fraudulent.

connection with their alleged harm is "too remote" to satisfy RICO because it depends on the independent action of regulators. *In re Oil Spill by Oil Rig "Deepwater Horizon*," 802 F. Supp. 2d 725, 729 (E.D. La. 2011). The analogous *Deepwater Horizon* case shows why. There, plaintiffs alleging economic loss from an oil spill argued that BP defrauded government regulators about its drilling safety and spill-response abilities. *Id.* at 728. But the plaintiffs' harm was "purely contingent on [the regulators] potentially requiring BP to conduct different practices and those practices preventing or lessening the effects of the spill." *Id.* at 729. Thus, the "link between BP's alleged defrauding of regulators and the economic harms suffered by Plaintiffs [was] 'too remote.'" *Id.*; *see also Longmont United Hosp. v. Saint Barnabas Corp.*, 305 F. App'x 892, 894–95 (3d Cir. 2009) (finding a causal link too remote where the alleged harm resulted from an independent agency failing to ensure that the defendant's payment requests were justified, thus depleting the funds available for others). Here, likewise, the link between any representations Boeing made to the FAA and Plaintiffs' alleged harm from paying higher ticket prices is too attenuated and remote to satisfy RICO's causation requirement.

## B.  Boeing and Southwest's business relationship is not a RICO enterprise.

Plaintiffs' civil RICO claims also fail because they identify no plausible RICO "enterprise." Although the Complaint describes Southwest and Boeing's relationship at length, those allegations establish only a lawful manufacturer-buyer business relationship, not anything indicative of a RICO enterprise. To hold otherwise would imply that unexceptional business practices common throughout the American economy form an element of a treble-damages civil RICO claim—an extraordinary proposition that finds no support in the case law.

Plaintiffs claim that Boeing and Southwest were an "association-in-fact" enterprise (Compl. ¶ 331), that is, "a group of persons associated together for a common purpose of

14

engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009).  "The hallmark" of such an enterprise is "an association of entities, groups or individuals that 'must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d. Cir. 2004)).  "Plaintiffs must plead specific facts, not mere conclusory allegations, which establish the enterprise." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987).

Courts have repeatedly rejected attempts to characterize lawful business relationships as establishing the "common purpose" of a RICO enterprise. *See, e.g., Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *9, *11 (C.D. Cal. July 13, 2015) ("[C]ourts have followed a surprisingly wide variety of approaches in reaching the same conclusion. . . . The consensus . . . reflects the judgment that the statutory requirements of RICO 'cannot be circumvented by attempting to characterize a routine contractual relationship for services as an independent enterprise.'"). *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046 (C.D. Cal. 2016), is an instructive example.  The alleged enterprise there was the pairing of a part supplier and a car manufacturer, where "both supplier and manufacturer allegedly knew of a design defect and continued to produce cars without informing the public." *Id.* at 1056.  This is just what Plaintiffs allege.  Compl. ¶ 346 (alleging Defendants had a common purpose of "defrauding Plaintiffs . . . and obtaining significant monies and revenues from them").  In *Shaw*, the plaintiffs alleged that the manufacturer and supplier had a "'common purpose' . . . to design, manufacture, distribute, test, and sell Subject Nissan Vehicles equipped with the defective [part] to Plaintiffs." *Id.* at 1051.  But the district court agreed with the defendants that the manufacturer-supplier

relationship at issue was a perfectly lawful business relationship, not a RICO enterprise:  "At best the allegations here only demonstrate that the parties 'are associated in a manner directly related to their own primary business activities.'"  *Id.* at 1057.[5]

None of Plaintiffs' allegations transform the lawful manufacturer-buyer relationship between Boeing and Southwest into a RICO enterprise.  Plaintiffs allege that, through a "Handshake Agreement," Boeing became Southwest's exclusive supplier of airplanes and promised that Southwest would never pay more than another airline.  Compl. ¶ 9.  But, even if true, there is nothing unlawful or nefarious about exclusive supply contracts and "most favored nation" agreements, which exist for sound economic and business reasons.  *See, e.g.*, *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) (recognizing that "exclusive supply contracts or exclusive dealing agreements have been frequently upheld when challenged on antitrust grounds"); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1250 (10th Cir. 2014) (noting that most-favored-nation clauses are a non-price term that reflects "supply and demand, the balance of bargaining power between the buyer and manufacturer, and the availability of a substitute product to meet the buyer's needs").  Plaintiffs also criticize Boeing's agreement to provide Southwest with rebates if additional simulator training became necessary for 737 MAX pilots, Compl. ¶¶ 164–65; but again there is nothing unlawful about a rebate, especially where, as alleged here, that rebate is tied to a factor that would increase the cost to the buyer.  To the contrary, those rebates are yet more evidence that Boeing and Southwest were

---

[5] *See also, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) (dismissing RICO action where the Complaint "alleges no more than that Defendants' primary business activity— the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently."); *In re GM LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16 (dismissing RICO action because the parties "acted in concert with New GM to carry out its business, and had no common purpose beyond helping New GM carry on its ordinary affairs").

conducting their own business activities in their own self-interest—and not colluding for the benefit of some supposed unitary and unlawful association-in-fact enterprise.  Nor do Plaintiffs' allegations about Southwest's role in the development of the MAX, *see* Compl. ¶¶ 164–78, support the existence of a RICO enterprise.  *See, e.g.*, *Shaw*, 220 F. Supp. 3d at 1054 (no RICO enterprise where the manufacturer and buyer both had input on the design of the allegedly defective part).

Finally, it is hardly indicative of a RICO enterprise that both companies made statements about the safety of the MAX after the Lion Air accident.  *See, e.g.*, Compl. ¶ 215.  An airplane manufacturer and airline would naturally have similar, but independent, interests in vouching for the 737 MAX's safety, as customer confidence in the airplane was important to both companies. *See, e.g.*, Compl. ¶ 87 (acknowledging that Southwest's aggressive support of the 737 benefits Southwest).  Boeing and Southwest's defense of the 737 MAX is fully consistent with each pursuing their independent interests, not those of a separate unlawful "enterprise."

In sum, there is nothing in Plaintiffs' allegations regarding the Boeing-Southwest relationship to support the existence of a RICO enterprise.  Their allegations show nothing more than a lawful manufacturer-buyer relationship, which cannot form the basis for their claims.

### C.   Plaintiffs' RICO conspiracy claim fails for the same reasons as their RICO claim.

Because Plaintiffs fail to establish RICO standing and the existence of a RICO enterprise, their RICO conspiracy claim necessarily falls as well.  *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015) (affirming dismissal of § 1962(d) claims where the plaintiff failed to properly plead a claim under §§ 1962(a), (b), or (c)).  The Court should accordingly dismiss both Count I and Count II.

**III.      The federal aviation statutes bar Plaintiffs' claims.**

Plaintiffs' claims are also barred by the Airline Deregulation Act and the FAAct.  The

doctrine of preemption, which bars the state law claims here, flows from federal law's status as

"the supreme law of the land."  U.S. Const., Art. VI, ¶ 2.  Federal law preempts state laws by

Congress's express command, *see, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374

(1992) (express preemption by the Airline Deregulation Act), or by implication through field or

conflict preemption.  Field preemption operates when a statute reveals Congress's "intent to

occupy a given field to the exclusion of state law."  *Schneidewind v. ANR Pipeline Co.*, 485 U.S.

293, 300 (1988).  "[E]ven if Congress has not occupied the field, state law is naturally preempted

to the extent of any *conflict* with a federal statute."  *Crosby v. Nat'l Foreign Trade Council*, 530

U.S. 363, 372 (2000) (emphasis added).  Conflict preemption occurs either (1) "where it is

impossible for a private party to comply with both state and federal law," *id.* at 373, or (2) where

a state law "stands as an obstacle to the accomplishment and execution of the full purposes and

objectives of Congress."  *Id.*  A statute's express preemption provision does not "bar the ordinary

working of conflict pre-emption principles."  *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S.

341, 352 (2001).

The related doctrine of preclusion, which bars Plaintiffs' RICO claims, addresses

situations like this where federal statutes could be construed to overlap.  The operative question

in such a circumstance is "how best to harmonize the impact of the two statutes," consistent with

"Congress' intent."  *United States v. Estate of Romani*, 523 U.S. 517, 530, 533 (1998).  Where

Congress made one statute more specific and directed to achieve national uniformity, it is fair to

infer that Congress did not intend the more general statute to be construed as extending to that

space.  *See United States v. Fausto*, 484 U.S. 439, 452–53 (1988).

18

**A.**   **The Airline Deregulation Act expressly preempts Plaintiffs' state law claims, which seek to regulate air carrier prices by demanding refunds.**

As Southwest explains in detail in its motion to dismiss, the ADA expressly preempts all state law claims "related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1). Claims meet this standard, and therefore are preempted under the ADA, if they have "a connection with or reference to airline 'rates, routes, or services.'"  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *see also Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014) (holding that state law claim is preempted if it "has 'a connection with, or reference to, airline' prices, routes, or services").  Plaintiffs' theory that their airline tickets for flights "were effectively worthless or worth substantially less than what was paid for them," Compl. ¶ 526, and so they "want their money back," (*Id.* ¶ 8), constitutes a direct challenge to the amount of Southwest's and American's ticket prices.  That necessarily makes Plaintiffs' state consumer-protection and common law claims "related to a price . . . of an air carrier."

The ADA preempts all state consumer protection claims that "police" airline pricing, with the exception of simple breach of contract claims.  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995).[6]  This includes state law deceptive trade practices and consumer protection act claims, especially those related to an airline's rates, routes, or services.  *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 931 (5th Cir. 1997).  This Court should therefore dismiss all the state law consumer protection claims, as it is not Plaintiffs' place to "intrusively regulate" air carriers' price and service through class action litigation.  *Wolens*, 513 U.S. at 229; *see, e.g.*, *Ferrell v. Air*

---

[6] *Wolens* did allow claims "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."  513 U.S. at 228.  This limitation from *Wolens* is inapplicable here because Plaintiffs have not asserted breach of contract claims.

*EVAC EMS, Inc*., 900 F.3d 602, 606 (8th Cir. 2018) (holding that ADA "obviously" preempts consumer protection claim "related" to air carrier's "price and service").

The ADA also preempts Plaintiffs' common law tort claims.  In *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014), the Supreme Court held that "state common-law rules fall comfortably within the language of the ADA pre-emption provision."  *Id.* at 281; *see also Lyn-Lea Travel Corp. v. Am. Airlines, Inc*., 283 F.3d 282, 287 (5th Cir. 2002) ("[Plaintiff] is seeking the application of Texas common law in a way that would regulate American's pricing policies, commission structure and reservation practices.").  Where a common law claim seeks "to obtain reduced rates," it is preempted by the ADA.  *Id*. at 289–90; *see also Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34 (1st Cir. 2007) (affirming dismissal of several state law claims including unjust enrichment and civil conspiracy); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 541–42 (7th Cir. 1993) (holding passenger's state law claims preempted by ADA as cancelled ticket refunds relate to rates).  Plaintiffs' claims here seek to reduce the rates they paid for their tickets by demanding a refund, Compl. ¶ 8, and therefore are preempted.

By its terms, the ADA preempts Plaintiffs' claims against both Southwest *and Boeing*. The text of the ADA's preemption provision applies to *any* claims related to airline rates, not just claims against air carriers.  The Southern District of Texas rejected an argument that the ADA "applies only to suits against an air carrier," because the ADA's plain language provides for preemption of "any state laws that have a 'connection with or reference to' airline rates, routes, or services."  *Cont'l Airlines, Inc. v. Am. Airlines, Inc*., 824 F. Supp. 689, 696–97 (S.D. Tex. 1993) (ADA preempts a claim against an air carrier's parent company); *see also Marlow v. AMR Servs. Corp*, 870 F. Supp. 295, 299 (D. Haw. 1994) (applying ADA to a jet bridge company). That same language requires the dismissal of all state law claims against Boeing here.

20

**B.      Plaintiffs' fraud-on-the-FAA allegations are barred as an obstacle to the proper enforcement of the Federal Aviation Act.**

Plaintiffs' claims are also barred under the doctrines of obstacle preemption and preclusion because they rely on allegations that Boeing misled the FAA into allowing the 737 MAX to continue flying.  *See, e.g.*, Compl. ¶¶ 152–63 (cataloguing Boeing's alleged "misrepresentations to regulators"); ¶ 343(a) (alleging a fraudulent scheme based on "communications with the FAA").[7]

The Supreme Court rejected similar fraud-on-the-agency allegations in *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).  *Buckman* addressed state law claims that a medical device manufacturer misrepresented a device's intended use to gain FDA approval.  *Id.* at 346–47.  The Supreme Court held that those "fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law."  *Id.* at 348.  "The conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the Administration, and that this authority is used by the Administration to achieve a somewhat delicate balance of statutory objectives," such as avoiding a deluge of overdisclosure.  *Id.*  But "[t]he balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law."  *Id.*; *see also Lofton v. McNeil Consumer & Specialty Pharm.*, 672 F.3d 372, 377 (5th Cir. 2012) ("[T]he dispositive factor for federal preemption in *Buckman*" is whether the claims "involve the relationship between the federal regulator and the regulated entity.").

---

[7] *See also* Compl. ¶ 29 (alleging that Boeing "misled . . . the FAA about the appropriate fix for the MCAS's flawed design"); ¶ 46 (alleging that had Boeing "not actively misled . . . regulators about the safety of the MAX 8, passengers would not have taken those flights"); ¶ 163 (alleging that "Boeing chose not to inform regulators" about an MCAS issue).

21

Plaintiffs' state law fraud-on-the-FAA claims are preempted here for the same reasons. Like the Federal Food, Drug, and Cosmetic Act in *Buckman*, the FAAct sets forth a "comprehensive scheme" for regulation.  531 U.S. at 348.  The FAAct authorizes the FAA to regulate the design and certification of aircraft for flight, and to regulate aircraft over the life of the fleet through a variety of enforcement powers and options.  49 U.S.C. § 44701(a)(1); *see also* FAA Compliance and Enforcement Program, Order 2150.3C (Sept. 18, 2018), https://www.faa.gov/documentLibrary/media/Order/FAA_Order_2150.3C.pdf.  The FAA's broad authority encompasses the power to investigate violations of the regulations and statutes it administers.  *See id*. at 2-1; *see also* 49 U.S.C. §§ 40113., 46101(a)(2).  That investigative authority includes the power to subpoena witnesses and documents, administer oaths, receive evidence, and take depositions.  *See* 49 U.S.C. § 46104.  The FAA may also reinspect any aircraft pursuant to its investigative authority.  *See* 49 U.S.C. § 44709(a).

Again like the FDA, the FAA has "various" powers "aimed at detecting, deterring, and punishing false statements made during" the regulatory process it administers.  *Buckman*, 531 U.S. at 349.  For example, the FAA is authorized to issue orders revoking an aircraft's airworthiness certificate and any certificate of registration.  *See* Order 2150.3C, at 2-1; 49 U.S.C. §§ 44709(b), 44105.  It is empowered to assess civil penalties for violations of FAA statutory or regulatory requirements.  *See id*., at 2-1; *see also* 49 U.S.C. §§ 46301, 46320; *see also* 14 C.F.R. § 121.9 (prohibiting false statements to FAA and providing for civil penalties for violations). The FAA may bring a civil action in a U.S. district court to enforce any statutory or regulatory requirement or order.  *See* 49 U.S.C. § 46106.  Furthermore, the FAA has the authority to immediately ground aircraft and impose sanctions.  *See* 2150.3C, at 2-4; 49 U.S.C. § 44713(c); 14 C.F.R. § 121.9.

These broad powers are obviously consequential to the entities that the FAA regulates and allow the FAA to balance Congress's statutory objectives in the FAAct.  Like the FDA, the FAA "has at its disposal a variety of enforcement options that allow it to make a measured response to suspected fraud upon the Administration."  *Buckman*, 531 U.S. at 349.  Interposing state law remedies into this enforcement scheme would pose an obstacle to Congress's objectives and interfere with the relationship between the FAA and the parties it regulates.  Accordingly, as in *Buckman*, Plaintiffs' state law fraud-on-the-FAA claims "conflict with, and are therefore impliedly preempted by, federal law." 531 U.S. at 348.

Likewise, Plaintiffs' RICO claims are precluded insofar as they rely on the theory that Boeing defrauded the FAA.  *See Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 410 n.4 (11th Cir. 2011) ("[Plaintiff] may not rely on a fraud-on-the-market or fraud-on-the-FDA theory of causation for its RICO claim.").  That bar applies here because the FAAct—like the act at issue in *Buckman*—does not grant a private right of action.  Plaintiffs' civil RICO claims impermissibly seek to fabricate that right of action in a context where Congress left enforcement decisions to the FAA.  *See United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 2012 WL 3061859, at *3–4 (N.D. Ill. July 26, 2012), *aff'd*, 719 F.3d 849 (7th Cir. 2013) ("Since the [plaintiff's] complaint relies on regulatory violations to support its RICO claims, the [plaintiff] has failed to state a claim upon which relief can be granted.").

## IV.    Plaintiffs fail to plead the elements of their state law claims.

As referenced above, the Complaint contains various state law causes of action.  To assist the Court, Boeing has included below a table setting forth these claims and the associated

Defendants named in the Complaint, as well as identifying the counts that should be dismissed pursuant to the arguments developed below.[8]

| State and Common Law Claims | Named Defendant | Dismissal – Unmanifested Alleged Defect | Dismissal - Reliance |
|---|---|---|---|
| Count Three - Fraud by Concealment | Boeing and Southwest | X | X |
| Count Four – Fraud by Misrepresentation | Boeing and Southwest | X | X |
| Count Five – Negligent Misrepresentation | Boeing and Southwest | X | X |
| Count Six – Unjust Enrichment | Boeing and Southwest | X | |
| Count Seven – Negligence (brought by Nationwide American Airlines Consumer Class) | Southwest | X | |
| Count Eight – Negligence | Boeing | X | |
| State Subclass Claims | Named Defendant | Dismissal – Unmanifested Alleged Defect | Dismissal - Reliance |
| Count Nine – California Consumer Legal Remedies Act Violation, Cal. Civ. Code. § 1750, *et seq*. | Boeing and Southwest | X | X |
| Count Ten - California False Advertising Law Violation, Cal. Bus. & Prof. Code. §17500, *et seq*. | Boeing and Southwest | X | X |
| Count Eleven - Florida Deceptive and Unfair Trade Practices Act Violation, Fla. Stat. § 501.201, *et seq*. | Boeing and Southwest | X | |
| Count Twelve – New York General Business Law § 349 Violation | Boeing and Southwest | X | |

---

[8] Although all of Plaintiffs' state and common law claims (Counts 3 – 8) are deficiently pleaded for the reasons described below, the specific requirements of those claims vary significantly by state.  Indeed, Plaintiffs agree that this Court must apply "various states' laws" to their common law claims.  Compl. ¶¶ 355 (fraud by concealment), 368 (fraud by misrepresentation), 375 (negligent misrepresentation), 381 (unjust enrichment), 392 (negligence); *see also id.* (suggesting that the Court should apply "the laws of the states where Plaintiffs and Class Members reside and/or purchased their tickets").  Southwest's Motion to Dismiss and Motion to Strike the Class Allegations identify the problems posed by the variances in state law inherent in the Complaint. Boeing joins and incorporates here by reference Southwest's arguments, including the Motion to Strike the Class Allegations.

| | | | |
|---|---|---|---|
| Count Thirteen – New York General Business Law § 350 Violation | Boeing and Southwest | X | X |
| Count Fourteen – Arizona Consumer Fraud Act Violation, Ariz. Rev. Stat. § 44-1521, *et seq.* | Boeing and Southwest | X | X |
| Count Fifteen – Indiana Deceptive Consumer Sales Act Violation, Ind. Code § 24-5-0.5-0.1, *et seq.* | Boeing and Southwest | X | |
| Count Sixteen – Georgia Fair Business Practices Act Violation, Ga. Code § 10-1-390, *et seq.* | Boeing and Southwest | X | X |
| Count Seventeen – Georgia Uniform Deceptive Trade Practices Act Violation, Ga. Code § 10-1-370, *et seq.* | Boeing and Southwest | X | |

## A.    Plaintiffs are not entitled to recover for an unmanifested alleged defect.

Notwithstanding the different standards for Plaintiffs' various state law claims (Counts 3–17), all of those claims are based on the same fundamental assertion that Plaintiffs overpaid for their flights because they might have flown on planes with a potential defect.  But Plaintiffs do not claim that the alleged defect manifested itself on their flights.  That inability to allege a manifestation of the defect is fatal to each of Plaintiffs' state law claims because it is commonly recognized across different jurisdictions that injury is an essential element of each claim alleged here.

First, "[i]t is well established that that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999).  "Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies." *Id.*  That "no injury, no tort" rule properly aligns tort incentives:  "If tort law fully compensates those who are physically injured, then any recoveries by those whose products function properly mean excess compensation."  *In re Bridgestone/Firestone*, 288 F.3d 1012, 1017 (7th Cir. 2002) (Easterbrook, J.).  Thus, "most states would not entertain the sort of theory

25

that plaintiffs press." *Id.*; *see also Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 2005 WL 6778678, at *11 (N.D. Ohio Feb. 22, 2005) ("The great weight of authority from other jurisdictions indicates that a plaintiff has not suffered a present injury compensable in . . . tort until the very product in question has caused some harm to person or property, even if the product in question contains a latent defect that has manifested in other, identical products."). That deficiency is fatal to Plaintiffs' state common law and statutory claims alike.[9]

Second, Plaintiffs' inability to plead a manifestation of the alleged defect on their past flights is doubly fatal because they face no possibility of injury from a *future* manifestation.  *See* Compl. ¶¶ 295, 298 (excluding from the class purchasers of flights after March 13, 2019). Unlike a car owner who still owns a car that could manifest a defect at any time, Plaintiffs' flights are complete.  Thus, Plaintiffs are like "[o]wners who wring the last possible mile out of their vehicles":  they "receive[d] everything they paid for."  *In re Bridgestone/Firestone*, 288 F.3d at 1019; *see also In re Toyota Motor Corp. Hybrid Brake Mktg.*, 915 F. Supp. 1151, 1159 (C.D. Cal. 2013) ("A plaintiff who purchases a car that never malfunctions over its ordinary period of use cannot be said to have received less than what he bargained for when he made the purchase."); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 609 (Tex. App.--Texarkana 1995, writ dism'd) ("Tires and cars have a distinctly limited usable life. . . . [i]f a defect does not manifest in that time span, the buyer has gotten what he bargained for.").  Plaintiffs have now

---

[9] *See, e.g.*, *Briehl*, 172 F.3d at 628 (applying New York and Texas law); *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. Dist. Ct. App. 2008) ("[W]e have firmly aligned ourselves with this majority jurisprudence" refusing to extend tort liability absent a manifestation.); *In re Toyota Motor Corp.*, 2012 WL 12929769, at *16 (C.D. Cal. May 4, 2012) (applying New York law to dismiss New York Consumer Protection Act claims of those plaintiffs "who do not allege manifestation of a defect").

safely completed flights to their destinations; they cannot ground a claim, under the law of any state, on those uneventful flights.

Accordingly, Counts 3–17 should be dismissed for failure to plead a plausible injury.

### B.     Nearly all of Plaintiffs' state law claims fail for lack of reliance.

Counts 3–5, as well as Counts 9–10, 13–14, and 16, require reliance on alleged misrepresentations, but, as discussed above, *see supra* at 13, Plaintiffs do not plausibly allege that reliance.  Still less do Plaintiffs allege reliance with the particularity required by Rule 9(b). *See IAS Servs. Grp., L.L.C.*, 900 F.3d at 648 ("Rule 9(b)'s particularity requirements are tied to the elements of fraud, specifically detrimental reliance.").

Plaintiffs' assertions of reliance are limited to generic, conclusory statements.  *See, e.g.*, Compl. ¶ 373 ("Plaintiffs and members of the Classes reasonably and justifiably relied on Defendants' fraudulent misrepresentations when purchasing tickets, and had the correct facts been known, would not have purchased the tickets at all.").  Nowhere do Plaintiffs allege which statements about safety they specifically relied on or the circumstances in which they did so.

As a result, many of Plaintiffs' nationwide common law and state law claims fail.  For negligent misrepresentation, every state requires some sort of reliance (which must be pleaded with particularity).  *See Williams v. WMX Techs.*, 112 F.3d at 177.[10]  The bare legal conclusion

---

[10] *See, e.g., Conroy v. Regents of Univ. of Cal.*, 203 P.3d 1127, 1136 (Cal. 2009) (requiring justifiable and actual reliance to state a claim); *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 127 F.3d 1390, 1393 (11th Cir. 1997) (finding a party must show justifiable reliance under Florida law to state a claim); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. Ct. App. 2011) (explaining a plaintiff must demonstrate reasonable reliance); *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007) ("[D]etrimental reliance is also an element of negligent misrepresentation, actual fraud, and constructive fraud."); *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 411–12 n.7 (Ariz. Ct. App. 2014) (noting negligent misrepresentation requires the plaintiff's justifiable reliance on the information); *Harris v. FDIC*, 885 F. Supp. 2d 1296, 1310 (N.D. Ga. 2012) (explaining under Georgia law, a plaintiff must allege reasonable reliance on the false information).

that Plaintiffs "reasonably and justifiably relied on Defendants' negligent misrepresentation"
does not satisfy Rule 9(b) for those claims.  That same defect is fatal for the fraud by
concealment and fraud by misrepresentation claims, which again require some sort of reliance,
although the standards vary widely.  Georgia and New York require justifiable or reasonable
reliance to establish claims of fraud and fraud by concealment.[11]  *See, e.g., Harris*, 885 F. Supp.
at 1309; *Mandarin Trading Ltd.*, 944 N.E.2d at 1108.  Arizona law requires a plaintiff to "plead
specific facts explaining how he relied on the representation and why that reliance was
reasonable."  *McManus v. Am. Express Tax & Bus. Servs.*, 67 F. Supp. 2d 1083, 1089–90 (D.
Ariz. 1999) ("Reliance might, for fraud purposes, be defined as a belief which motivates an
act.").  California courts require "actual reliance," which occurs when a "misrepresentation is 'an
immediate cause of [a plaintiff's] conduct.'"  *Conroy*, 203 P.3d at 1136; *see also Daniel v. Ford
Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("[a]n essential element for a fraudulent
omission claim is actual reliance.").  And, in Indiana, a plaintiff's complaint must include
allegations that the plaintiff "relied to her detriment on any false statement or omission."  *Snyder
v. Smith*, 7 F. Supp. 3d 842, 878 (S.D. Ind. 2014) ("Detrimental reliance is often the dispositive
element under Indiana law, because the plaintiff cannot recover for fraud unless he reasonably
relied on the defendant's representations.") (citation omitted).  Plaintiffs did not adequately plead
any form of reliance, and as with their negligent misrepresentation claim, Plaintiffs fail to meet
the pleading standards of Rule 9(b).

---

[11] Both New York and Georgia use the terms "reasonable reliance" and "justifiable reliance" in
the context of fraud claims interchangeably.  *See Raysoni v. Payless Auto Deals, LLC*, 766
S.E.2d 24, 25 n.1 (Ga. 2014); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 406
(S.D.N.Y. 2004).

Plaintiffs' state subclass claims also fail for lack of reliance.  California's Consumer Legal Remedies Act requires a plaintiff to show actual reliance on the misrepresentation, omission, or allegedly deceptive or misleading statements.  *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 380 (C.D. Cal. 2018); *see also Daniel*, 806 F.3d at 1225.  Yet beyond a single conclusory allegation that "Plaintiffs and Class members relied on Defendants' false representations regarding the safety of the MAX Series aircraft," nothing in the Complaint shows the alleged misrepresentations or omissions were the immediate cause of Plaintiffs' conduct.  *See, e.g.,* Compl. ¶¶ 406, 414.  The same problem dooms the claim under the Arizona Consumer Fraud Act ("ACFA"), which requires reliance by a plaintiff, as a "misrepresentation causes injury where the consumer actually relies on it."  *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825–26 (D. Ariz. 2016).  Georgia's Fair Business Practices Act ("GFBPA") likewise requires the plaintiff to prove injury as a result of reliance on the alleged misrepresentation.  *See Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 16–17 (Ga. 2006).  All these claims fail for lack of plausible allegations of reliance.[12]

Accordingly, Counts 3–5, 9–10, 13–14, and 16 should be dismissed for failure to plausibly plead the necessary element of reliance.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint for lack of Article III standing. In the alternative, the Court should dismiss the Complaint because Plaintiffs fail to state a claim.

---

[12] The Complaint also asserts claims under California's False Advertising Law (Count 10) and New York's GBL § 350 (Count 13).  Plaintiffs have since disavowed these claims, but in any event they would also fail for lack of reliance.  *See Hamilton v. TBC Corp.*, 328 F.R.D. 359, 380 (C.D. Cal. 2018); *Leider v Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).

Date:   September 13, 2019     Respectfully submitted,

           */s/ Thomas M. Farrell*
           Clyde M. Siebman
           TX Bar No. 18341600
           Elizabeth S. Forrest
           TX Bar No. 24086207
           Siebman Forrest Burg & Smith LLP
           300 N Travis St
           Sherman, TX 75090
           Tel: 903-870-0070
           Fax: 903-870-0066
           Email: clydesiebman@siebman.com
           Email: elizabethforrest@siebman.com

           Thomas M. Farrell
           TX Bar No. 06839250
           McGuireWoods LLP
           JPMorgan Chase Tower
           600 Travis Street
           Suite 7500
           Houston, TX 77002-2906
           Tel: 713-353-6677
           Fax: 832-214-9933
           Email: tfarrell@mcguirewoods.com

           Brian D. Schmalzbach (*pro hac vice* forthcoming)
           McGuireWoods LLP
           Gateway Plaza
           800 East Canal Street
           Richmond, VA 23219-3406
           Tel:  804-775-4746
           Fax:  804-698-2304
           Email:  bschmalzbach@mcguirewoods.com

           Benjamin L. Hatch (*pro hac vice* forthcoming)
           McGuireWoods LLP
           2001 K Street N.W.
           Suite 400
           Washington, DC 20006-1040
           Tel:  757-640-3727
           Fax:  757-640-3947
           Email:  bhatch@mcguirewoods.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2019, a true and correct copy of the above was served via email through the Eastern District of Texas's CM/ECF system.

*/s/ Thomas M. Farrell*
Thomas M. Farrell

31