UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAMONIE EARL, LINDA RUGG, ALESA BECK, TIMOTHY BLAKEY, JR., STEPHANIE BLAKEY, MARISA THOMPSON, MUHAMMAD MUDDASIR KHAN, ELIZABETH COOPER, JOHN ROGERS, VALERIE MORTZ-ROGERS, and LAKESHA GOGGINS, each individually and on behalf of all others similarly situated, | § § § § § § § § § § | |
| *Plaintiffs,* | § § | Civil Action No. 4:19-cv-00507 |
| v. | § § | |
| THE BOEING COMPANY and SOUTHWEST AIRLINES CO., | § § § | |
| *Defendants.* | § | |

**<u>DEFENDANT SOUTHWEST AIRLINES' RESPONSE TO MOTION WITHDRAW</u>**

Defendant Southwest Airlines Co. ("Southwest") responds to Plaintiffs' Motion to Withdraw Pierce Bainbridge as Co-Counsel (Dkt. 79) ("the Motion") as follows:

## I. INTRODUCTION & BACKGROUND

The present circumstances of this case—including the desired exodus of the majority of Plaintiffs' counsel and their stone-walled refusal to provide information—are anything but normal. Although Southwest does not intend to ask that any lawyer remain in a case unnecessarily, the abnormal circumstances here have resulted in the inability of Southwest to consent to the Motion on the current record.

Put simply, Southwest lacks basic information concerning the sudden push to withdraw by most of Plaintiffs' counsel, and it has related concerns about its ability to understand or discover core facts about the adequacy of Plaintiffs' counsel under Rule 23. These concerns are magnified by counsels' repeated failure to answer simple questions about their Motion, their clients, their co-counsel, and financial responsibility for the case.

The anything-but-normal circumstances of the Motion are summarized as follows:

- The Motion lacks any statement or evidence concerning (a) notice to the named Plaintiffs or (b) whether Plaintiffs themselves consent to the proposed withdrawals and to the continuation of the case by a new two-person firm, Bathaee Dunne.[1]

- The Motion purports to speak for and withdraw six Pierce Bainbridge lawyers, but as many as four of those lawyers appear to have been already unaffiliated with the firm when the Motion was filed.[2]

---

[1] Yavar Bathaee and Brian Dunne have both been counsel of record in the case, with Yavar Bathaee designated lead counsel, from the outset. As detailed below, Mr. Bathaee and Mr. Dunne left Pierce Bainbridge and formed their own firm, with themselves and Pierce Bainbridge acting as co-counsel for Plaintiffs.

[2] One attorney (Barron Flood) had already withdrawn from the case and stated that he left Piece Bainbridge in December 2019. *See* Docket No. 45. Another attorney (David Hecht) reportedly formed his own firm (Hecht Partners LLP) and left Piece Bainbridge before the filing of the Motion. *See Name Partner at Pierce Bainbridge The Latest To Leave The Beleaguered Firm*, Law Fuel (Mar. 22, 2020), https://tinyurl.com/Hecht-Departure. Two other lawyers (Michael Pomerantz and Andrew Wolinsky) were not receiving e-mails at Pierce Bainbridge at the time the Motion was filed, as e-mails from Southwest's counsel to those lawyers had previously been returned as undeliverable.

- The Motion purports to withdraw the law firm of Pierce Bainbridge, but facially admits that none of the withdrawing lawyers would be at Pierce Bainbridge by April 15, one day after the evening filing of the Motion. None of them remains at Pierce Bainbridge now.  In that regard, on the day after the Motion was filed, the legal press reported that firm representatives had announced the firm's dissolution.[3]  The following day, however, John Pierce (a founding and name partner) asserted that the dissolution was "total fake news."[4]

- Long before the Motion was filed, multiple media outlets began reporting on various lawsuit allegations concerning financial issues and purported improprieties against Pierce Bainbridge and its lawyers—including allegations of defrauding litigation funders, defrauding former partners, and improperly paying Plaintiffs.[5]

- As a result of such reports and because Plaintiffs' counsel must establish, among other things, the ability to finance the litigation under Rule 23,[6] Defendants sent a detailed April 8, 2020 e-mail to Plaintiffs' counsel seeking basic facts and discovery into issues related to the adequacy of class counsel (the "Adequacy Request").[7]

- The lawyer who signed the Motion, Andrew Williamson, responded to that April 8 e-mail five days later by stating that Pierce Bainbridge intended to withdraw, while committing that "Southwest can expect Pierce Bainbridge's response . . . prior to Pierce Bainbridge's withdrawal from this matter."[8]  Within 24 hours after that commitment, the Motion was nonetheless filed with no responses whatsoever having been provided.

- Before the Motion was filed on April 14, Pierce Bainbridge refused Defendants' request for a telephonic meet-and-confer on the Motion per Local Rule 7(h) and refused to confirm even basic facts about their withdrawal, including whether their clients consented to the withdrawal,

---

[3] Ryan Boysen, *Pierce Bainbridge to Shut Down After Mass Resignations*, Law 360 (Apr. 15, 2020), https://tinyurl.com/PBs-Dissolution.

[4] Debra Weiss, *Law Firm's Managing Partner Denies Report of Firm's Demise and Calls It "Total Fake News"*, ABA Journal (Apr. 17, 2020), https://tinyurl.com/Pierce-Fake-News.

[5] These allegations are reported, in part, in the articles hyperlinked in this Response.  If the Court has difficulty accessing the links, which were used to reduce the number of exhibits, Southwest can readily file an appendix compiling the articles.  The allegations are also detailed in numerous lawsuits filed against Pierce Bainbridge.  *See, e.g.*, Complaint at 69, *Donald Lewis v. Pierce Bainbridge Beck Price & Hecht LLP et al.*, Cause No. 652931/2019 (N.Y. Sup. Ct., County of New York) (discussing allegation "that Pierce paid off a number of individuals to launch a series of frivolous lawsuits").

[6] Rule 23 requires that class counsel be "adequate," which entails an inquiry into the "resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)(iv), (g)(2); *see also Tijerina v. Phillip Morris, Inc.*, No. CIV. A. 2:95-CV-120-J, 1996 WL 885617, at *3 (N.D. Tex. Oct. 8, 1996) ("The class representatives and their counsel must demonstrate the present ability to finance the litigation and the cost of notice.").

[7] Ex. 1 [E-mail from P. Tarpley to B. Dunne, et al. (Apr. 8, 2020)].

[8] Ex. 3 [E-mail from A. Williamson to M. Swartzendruber, et al. (Apr. 13, 2020, 11:02 p.m.)].

whether all withdrawing lawyers consented, whether they would provide the various lawyers' current contact information (they have not), and whether Pierce Bainbridge or its former lawyers would have ongoing financial obligations for the case.[9]

- In the meantime, the two former Pierce Bainbridge partners who recently formed the Bathaee Dunne law firm[10] *had* responded to the Adequacy Request.  They asserted that they (a) had "no connection (formal, informal, or otherwise) to Pierce Bainbridge beyond the firms' agreement to serve as co-counsel in this matter, with BD as lead counsel," (b) either lacked responsive information or otherwise refused to produce any information they did have, (c) would provide no information regarding their engagement agreements with Plaintiffs or Pierce Bainbridge, and (d) saw "no basis" for documents related to "how BD as lead counsel intends to fund the litigation . . . in light of BD's express representation that it is adequately capitalized to take the case through class certification and trial."[11]

- In the face of this dearth of information, the legal press has now reported that Pierce Bainbridge's litigation funder is contacting the firm's former partners to claim that it is owed a share of any fees generated from ongoing cases and asserting a lien on those cases (which could plainly implicate this case).[12]

In short, this is not a straightforward motion to withdraw.  Plaintiffs' counsel have not been forthcoming with—let alone made a record of—even the basic facts concerning the withdrawal.  Everyone—the Court, Plaintiffs, and Defendants—needs to understand the facts about what is actually happening, whether all clients and lawyers have consented to the withdrawal, how the case will proceed and be managed, and what responsibilities the withdrawing attorneys had or still have (financially or otherwise) in respect of this case.  All of those answers go directly to the orderly proceeding of the case, including issues about the adequacy of class counsel under Rule 23.

---

[9] Ex. 4 [E-mail from M. Swartzendruber to A. Williamson, et al. (Apr. 14, 2020 4:19 p.m.)]; Ex. 3 [E-mail from A. Williamson to T. Farrell et al. (Apr. 14, 2020, 4:49 p.m.)].

[10] *See* Dkt. Nos. 67–68 (Mar. 12, 2020 Notices of Address and Law Firm Change).

[11] Ex. 2 [Letter from Y. Bathaee to M. Swartzendruber, et al. (Apr. 11, 2020)].

[12] Ryan Boysen, *Pierce Bainbridge Funder Targets Ex-Partners In Debt Chase*, Law 360 (Apr. 22, 2020), https://tinyurl.com/Funder-Claims.

Given the uncertainty of these issues and to assist Southwest in evaluating the Motion, Southwest requests a hearing to (1) obtain clarity on the issues, (2) gain assurances as to who has possession, custody, and control of documents regarding adequacy of class counsel (such as engagement agreements), (3) ensure preservation of materials in the possession, custody, and control of the withdrawing law firm and lawyers, and (4) confirm destruction of any of Southwest's confidential information held by the withdrawing law firm and lawyers.  Upon such a hearing, the Court would, if needed, have authority under Local Rule 11(c) to impose conditions sufficient to address these issues.

## II. SOUTHWEST'S CONCERNS ABOUT THE MOTION

Southwest has multiple unanswered concerns about the Motion, some of which may be allayed by a better record addressing the reasons for the withdrawal and the questions raised above.

### A.      Do Plaintiffs Consent to the Motion and Who Is Handling Their Case?

A motion to withdraw must make "a showing of good cause and reasonable notice to the client." *Terra Tersus, LLC v. XTO Energy, Inc.*, No. 6:17-CV-697-RWS-KNM, 2018 WL 10125126, at *1 (E.D. Tex. Aug. 29, 2018) (quoting *In re Wynn*, 889 F.2d 644, 646 (5th Cir. 1989)).  The Motion itself fails to state that any Plaintiff (let alone all of them) received any notice of the withdrawal, reasonable or not.  *Id.*  Plaintiffs' counsel have refused to respond to Southwest's inquiries on this subject.

Under these extraordinarily unusual circumstances where no information has been forthcoming, Plaintiffs' counsel should establish that each of their clients understands and consents to the withdrawal of its originally-retained law firm and all but two of the former Pierce Bainbridge lawyers who have represented them to date.  Notice and consent is even more critical with Pierce Bainbridge's creditors seemingly threatening to pursue former Pierce Bainbridge lawyers and asserting liens on their ongoing cases (which could presumably include Plaintiffs' case).

**B.     Do the Law Firm and the Former Pierce Bainbridge Partners Actually Consent to the Motion?**

The Motion, the lack of information about the withdrawal, and various legal press reports at least raise questions regarding the authority to file the Motion for all lawyers at issue and for the Pierce Bainbridge firm itself.

Although the Motion purports to be on behalf of Pierce Bainbridge, the Motion states that none of the moving attorneys would be at Pierce Bainbridge by April 15, the day immediately following the Motion's filing.  April 15 legal press reports then announced that Pierce Bainbridge was dissolving entirely—such that there may be no Pierce Bainbridge by the time the Court could rule on the Motion.  Confusion ensued the next day, with the founding partner (and reportedly sole equity partner) telling the legal press that Pierce Bainbridge was not dissolving, that it would continue as a firm, and that reports of dissolution were "total fake news."  The authority for the Motion and relief requested (and on behalf of exactly whom) remain a serious question on which there simply is no record.

The same is true for the filing of the Motion on behalf of the other lawyers.  As noted above, there were serious indications that at least four of the attorneys identified in the Motion had left the firm before the filing of the Motion, with one having already represented to the Court that he left Pierce Bainbridge in December 2019, another having apparently formed his own firm in March, and still two others having deactivated Pierce Bainbridge e-mail accounts (such that Southwest had been unable to contact them before the filing of the Motion).[13]  Southwest requested updated contact information for these lawyers, but Pierce Bainbridge refused to provide it.

These facts leave entirely unanswered whether Pierce Bainbridge (in whatever form it now exists) intends to withdraw, authorized the filing by its now former lawyers, or has any remaining

---

[13] *See infra* note 2.

obligations for or stake in the case.  So too with the individual lawyers.  With no evidence or record on these issues of authority to withdraw, then Pierce Bainbridge or the individual lawyers could later attempt to challenge the withdrawal, to represent Plaintiffs, or to otherwise interfere with the case proceedings or results.  There should be a clear record that all attorneys at issue do, in fact, intend to withdraw from this matter.

**C.      Who Will Answer Southwest's Questions About the Adequacy of Class Counsel and Is Pierce Bainbridge Preserving Information Relevant to Those Questions?**

Pierce Bainbridge has refused to respond to Defendants' questions related to the adequacy of counsel.  Bathaee Dunne responded that (a) they are now departed from Pierce Bainbridge, (b) they have no information in the possession, custody or control of Pierce Bainbridge, (c) they can finance the case entirely on their own (without help from others), and (d) they either (i) have no responsive information, or (ii) refuse to produce anything they do have.  The bare representation of their ability to satisfy Rule 23, in their view, is enough and should not be subject to scrutiny. These circumstances are likely to lead to the need for discovery in the future—and beg for basic information and safeguards now.

Bathaee Dunne's refusal to provide responsive information—in particular their disavowal of any connection to Pierce Bainbridge and lack of potentially relevant Pierce Bainbridge material—makes the undisclosed circumstances of the Motion and Pierce Bainbridge withdrawal all the more troubling, at least without further information.  For example, Defendants have requested the production of engagement letters with Plaintiffs, including any amendments or supplements reflecting whether Pierce Bainbridge will continue to have any responsibility (financial or otherwise).  Bathaee Dunne has so far refused to produce them, and as noted above, Pierce Bainbridge has refused to respond at all to Defendants' requests for information. Presumably, Pierce Bainbridge has any such agreements because that firm filed the case on behalf

of the individuals.  Those well might need to be discovered.  And this is but one example of information that might come only from Pierce Bainbridge or its former attorneys.

With Pierce Bainbridge extricating itself from the case (and possibly dissolving), it is unclear where Southwest would go, if needed, to discover information in Pierce Bainbridge's possession, custody, or control.  Indeed, Southwest lacks even basic working contact information for many of the former Pierce Bainbridge lawyers who might have such information.  And Southwest has no assurances regarding whether Pierce Bainbridge is preserving relevant material for potential future discovery if needed.

Southwest needs to understand who has the material that it may need to discover related to counsel's adequacy (e.g., engagement agreements and documents relating to financial responsibility for or interests in the litigation).  And this is true regardless of whether Plaintiffs now agree those materials are discoverable, or whether they might ultimately become the source of discovery disputes to be resolved by the Court.  Southwest also needs assurance that whoever might have discoverable material is preserving it.

**D.    Are Pierce Bainbridge and the Withdrawing Lawyers Safeguarding Southwest's Confidential Information?**

Before granting the Motion, Southwest asks that the Court require Pierce Bainbridge and the withdrawing lawyers to certify that they have returned or destroyed Southwest's confidential information as required in the Protective Order.  The Protective Order provides that only authorized persons may "ke[ep]" such information, and that upon completion of the litigation, counsel must certify that they have destroyed or returned confidential information.[14]  Southwest has already produced over 450,000 pages of documents in this matter—many of which were designated as confidential or highly confidential.  No one has told Southwest what Pierce

---

[14] Dkt. 59 at ¶¶ 6(d), 16, 34.

Bainbridge, the individual lawyers, or their vendors will do with this confidential information. This issue is all the more pressing given the possible imminent dissolution of Pierce Bainbridge and the lack of contact information for its former lawyers.

Southwest thus requests that the Court order Pierce Bainbridge and each of the withdrawing lawyers to certify that they have returned or destroyed Southwest's confidential information and that any third-parties to whom they transferred it have also taken appropriate steps.

### III. CONCLUSION & REQUEST FOR A HEARING

Southwest does not wish to force any lawyer to remain in a case against the lawyer's desire, and hopefully all issues presented in this Response can be addressed in a clear way. But that requires, at a minimum, basic information that Southwest does not remotely have right now.

In a case of this magnitude—where the named Plaintiffs purportedly seek to represent a nationwide class of *all* Southwest and American Airlines passengers during an *18 month period*— the Court, Defendants, and most certainly the Plaintiffs themselves need to understand exactly what is being proposed, who is responsible (both financially and as officers of the Court), and where Defendants can obtain class certification discovery, including discovery regarding the adequacy of counsel.

Defendants thus respectfully request (a) a telephone conference with the Court and all Plaintiffs' counsel to address the issues in this Response, and (b) entry of a Court order, if necessary, to address the issues raised in this Response.

Dated: April 27, 2020

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Michael A. Swartzendruber*
Michael A. Swartzendruber (Lead Counsel)
State Bar No. 19557702
Jason K. Fagelman
State Bar No. 00796525
James V. Leito
State Bar No. 24054950
Philip A. Tarpley
State Bar No. 24098501
2200 Ross Ave., Suite 3600
Dallas, TX  75201
Telephone:  (214) 855-8000
Facsimile: (214) 855-8200
michael.swartzendruber@nortonrosefulbright.com
jason.fagelman@nortonrosefulbright.com
james.leito@nortonrosefulbright.com
philip.tarpley@nortonrosefulbright.com

Geraldine W. Young
State Bar No. 24084134
1301 McKinney St., Suite 5100
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
geraldine.young@nortonrosefulbright.com

*ATTORNEYS FOR DEFENDANT*
*SOUTHWEST AIRLINES CO.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2020, a true and correct copy of the above was served through the Eastern District of Texas's CM/ECF system to the e-mail addresses on file in that system.

*/s/ Michael A. Swartzendruber*
Michael A. Swartzendruber

10