**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| DAMONIE EARL, LINDA RUGG, ALESA BECK, TIMOTHY BLAKEY, JR., STEPHANIE BLAKEY, MARISA THOMPSON, MUHAMMAD MUDDASIR KHAN, ELIZABETH COOPER, JOHN ROGERS, VALERIE MORTZ-ROGERS, and LAKESHA GOGGINS, each individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>              v.<br><br>THE BOEING COMPANY and SOUTHWEST AIRLINES CO.,<br><br>        Defendants. | Civil Action No. 4:19-cv-00507 |

**REPLY BY PIERCE BAINBRIDGE TO BATHAEE DUNNE'S OPPOSITION [ECF 112] AND OPPOSITION TO A. WILLIAMSON, LLC'S LETTER TO COURT**

Pierce Bainbridge Beck Price & Hecht LLP[1] ("PB") submits this reply to Bathaee Dunne LLP ("BD")'s Opposition (Dkt. 122) and opposition to the Letter of Andrew Williamson to the Court dated June 1, 2020 ("AW Letter").

1.      **Summary of Events**

This sideshow began on May 18, 2020, when Andrew Williamson submitted a notice to the Court ("AW Notice") purportedly "confirm[ing] … numerous statements of material fact by David Hecht which are inaccurate" and seeking the sole relief of "correct[ing] the record" and "request[ing] an In-Camera *ex parte* hearing before the Court …." Dkt. 100. Eager to egg on this sideshow for their own strategic purposes, on May 22 Plaintiffs' counsel responded to the Notice by supporting a hearing on the Notice and urging that defendants be permitted to be present. Dkt. 102.

---

[1] The firm is in the process of changing its name to remove Mr. Hecht (who is no longer a partner), which was been delayed due to COVID-19.

On May 28, Plaintiffs' co-counsel, Pierce Bainbridge ("PB"), submitted a response to the AW Notice ("PB Response") showing that: (1) Mr. Hecht's statements were neither inaccurate nor material to withdrawal of the first motion (having no notice as to which specific statements were allegedly inaccurate, PB guessed as best as it could); (2) a hearing would be a waste court of resources and not in the best interests of plaintiffs; and (3) defendants' arguments are meritless.  PB requested that the Court strike the AW Notice (Dkt. 100), vacate the hearing scheduled on Monday June 1, 2020 (Dkt. 106), and/or deny the relief sought in the Notice.

Strangely, BD, the firm separately seeking to be appointed interim lead counsel (Dkt. 99), submitted yesterday an opposition ("BD Opposition") (Dkt. 112) to Mr. Hecht's request to vacate today's hearing, purportedly on behalf the Plaintiffs.  In short, rather than **act** like a lead counsel and try to resolve this matter privately, BD has joined the sideshow (and become bedfellows with Defendants), embracing the idea that it is appropriate to air these squabbles among Plaintiffs' counsel before the Court and the public.  Even more strangely (and tellingly), the BD Opposition roves far beyond the issue of whether Mr. Hecht made material misstatements on May 13, for example seeking to involve the Court in the issues relating to PB's financing (Dkt. 112 at 4), an issue not related to an alleged inaccuracy as enumerated by Mr. Williamson.  BD has enthusiastically joined the public fray and in fact seeks to widen its scope.

Finally, despite the fact that the Court has not yet granted an *ex parte* hearing and that, as Mr. Williamson admits, "letters to chambers are generally disfavored," last night at 1:17 am, Mr. Williamson gave notice that he had in fact submitted materials to the Court *ex parte*, along with the AW Letter to the Court.  Astonishingly, the AW Letter, submitted on the same day as the hearing on the Notice is to be heard by the Court, is **the first time** that Mr. Williamson articulated specifically which statements by Mr. Hecht at the May 13 court call were purportedly inaccurate.  Those statements are: (1) that the initial motion to withdraw was filed "in error"; (2) that Messrs. Hecht and Lorin had "never resigned from" PB; and (3) that Mr. Hecht is knowledgeable about the case and has had a critical role in it.

As shown below, however, Mr. Hecht did not make some of these statements and, with regard to the statements that Mr. Hecht did make, Mr. Williamson has misinterpreted and mischaracterized them and otherwise failed to show that the statements were *prima facie* inaccurate and material so as to justify an evidentiary hearing into the matter.

*     *     *     *     *

In sum, today's narrow hearing is to determine whether the Court requires an evidentiary hearing on the specific issue raised in the AW Notice (*i.e.* whether Mr. Hecht made inaccurate statements to the Court).  As shown below, the answer is a resounding "no."

**2.      The Three Purported Misrepresentations of Mr. Hecht Are Mischaracterizations of His Statements on the Record, Which Were Not Inaccurate or Material**

As noted above, the only alleged misstatements by Mr. Hecht are: (1) that the initial motion to withdraw was filed "in error"; (2) that Messrs. Hecht and Lorin had "never resigned from" PB; and (3) that Mr. Hecht "is 'knowledgeable' about this case" and "has ever had a critical role in" it.[2]

**a.      Whether the Motion to Withdraw Was Filed in Error**

As demonstrated in the PB Response:

> The existence of law office error cannot be doubted – PB filed the Motion on April 15 and on May 13 sought to withdraw the same Motion.  No one has alleged (or in good faith could allege) that PB purposely filed the Motion with the intent to later withdraw it.  The Court should need no hearing to determine that there was law office error when PB concedes the error on behalf of the entire firm. *See* Dkt. 103 (noting that error was result of "combination of factors" and not attributed "to any particular person or persons").

PB further clarified that Mr. Hecht "was referring to a law office error resulting from a combination of factors during a tumultuous time.  It was not [his] intent to assign the error to any particular person or persons." Dkt. 103.

The flaws in Mr. Williamson's reasoning that Mr. Hecht's statements were materially inaccurate are threefold.  First, Mr. Williamson appears to believe that if **he personally** had a good faith basis for electronically filing the Withdrawal Motion then it must not have been filed in error **by entire firm**.  But PB has asserted that the error was "law office error resulting from a combination of factors" and not attributed "to any particular person or persons."  For example, Mr. Hecht noted on the May 13 court call that "there has been no withdrawal of Pierce Bainbridge as counsel by Plaintiffs." Tr. 9.  In other words, even if Mr. Williamson acted with

---

[2] Strangely, Mr. Williamson (like BD LLP) roves beyond the three alleged misstatements of Mr. Hecht, for example speculating that Mr. Hecht's reasoning for withdrawing is "dubious" (but not apparently a material misstatement).

some justification and good faith belief, the filing by **PB** (the entity) could nonetheless have been in error "resulting from a combination of factors during a tumultuous time" – for example, if there were elements of the firm that did not want the motion filed at that time or if PB wanted or needed to consult with its clients before withdrawing.

Second, Mr. Williamson, in lodging this accusation against Mr. Hecht, assumes that his interpretation of Mr. Hecht's statements about law office error are not only reasonable, but the **only** reasonable interpretation.  However, Mr. Hecht is on record as stating that it he "was referring to a law office error resulting from a combination of factors during a tumultuous time" and that it was not his "intent to assign the error to any particular person or persons."  Given that PB has conceded the law office error, and that PB did in fact file the motion and then seek to withdraw it, it is certainly reasonable to interpret Mr. Hecht's statement as merely indicating that PB the entity erred when it filed the Motion.

Third, Mr. Williamson assumes that the Court shared his interpretation of "error" and that that interpretation was material to the Court's decision to permit the withdrawal of the Motion. However, as shown in the PB Response, it did not appear that the Court's decision at all turned on exactly how PB erred or how Mr. Hecht's use of the term "error" should be interpreted.

In sum, the AW Notice and AW Letter fail to make a *prima facie* case that Mr. Hecht's statements regarding PB's law office error were inaccurate or material.

### b.      Whether Messrs. Hecht and Lorin Resigned from PB

The AW Letter refers to "Mr. Hecht's repeated representations that he and Mr. Lorin never resigned from Pierce Bainbridge, but instead only resigned from the partnership."  But that is **not** what Mr. Hecht said.  Rather, his statement was:  "Mr. Lorin and I withdrew from the partnership but we remain affiliated in connection with certain cases, including this one.  We have access to all the [PB] systems….  I can represent that there is an affiliation."  Tr. 4.

Thus, Mr. Hecht never asserted that he and Mr. Lorin "never resigned" from PB. Frankly, it is dumbfounding that Mr. Williamson has lodged an ethical complaint against Mr. Hecht based on Mr. Williamson's misreading of the transcript.  Further, as noted in the PB Response, the nature of PB's affiliation with its former partners "is information in PB's peculiar knowledge."  PB confirms that it remains affiliated with Messrs. Hecht and Lorin.

c.      **Whether Mr. Hecht Is Knowledgeable' About the Case and "Has Ever Had a 'Critical' Role in It**

Mr. Williamson asserts that Mr. Hecht made "repeated statements that he is 'knowledgeable' about this case" and "has ever had[] a 'critical' role in this case."  Once again, Mr. Williamson misstates the record.  Mr. Hecht never said at the May 13 court call "that he is 'knowledgeable' about this case" – indeed, despite Mr. Williamson's quoting the term "knowledgeable," Mr. Hecht never used that term.

In fact, Mr. Hecht in this context only once used the word "knowledge," and that was as follows: "[W]e intend to be continuing to work with folks like Michael Pomerantz and others to make sure that, as the firm restructures, those counsel who are continuing and have critical roles, like Mr. Lorin and myself, could continue to be included, as well as working with people who, you know, have knowledge of the case."  In this sentence Mr. Hecht **does not assert** "that he is 'knowledgeable' about this case."  It is frankly outrageous for Mr. Williamson to accuse Mr. Hecht of making a material misrepresentation to the Court when Mr. Hecht did not make the representation at all.  It is a further mystery as to why Mr. Williamson seems to be searching for even flimsy excuses to assert accusations against Mr. Hecht.

Similarly, as Mr. Williamson acknowledges, Mr. Hecht referred to his "critical" role in connection with his role in securing funding for the matter.  *Id.*  Mr. Williamson quibbles with whether this role is critical or not, but that is a far cry from making a *prima facie* showing that the statement was in fact false or that the Court thought that Mr. Hecht's specific role (or the importance of that role) was material to its decision to permit the withdrawal of the Motion.

*        *        *        *        *

In sum, Mr. Williamson has created a sideshow based on statements that were either accurate or that Mr. Hecht never made.

3.      **BD's Opposition Is Misguided**

Sadly, BD has not acted as one might hope from a candidate for interim lead counsel.  Surely seasoned and mature counsel would have sought to rein in this sideshow privately, without burdening the Court or prejudicing the Plaintiffs – especially given the thinness of Mr. Williamson's accusations and lack of support in the Transcript.

Instead, the BD Opposition has attempted to fan the flames, even while it fails to address the narrow issue of whether any inaccurate statement was made on the record.  For example, the BD Opposition does not assert that Mr. Hecht misrepresented his affiliation with PB but rather would use this public sideshow to explore, for instance, "what his precise affiliation with [PB] is." Similarly, BD delves into the issue of financing even though that is not the subject of an alleged misstatement by Mr. Hecht.  But BD should not require an evidentiary hearing and the Court's participation to learn this information – it could have simply **picked up the phone** and called Mr. Hecht.  Yet Mr. Bathaee has refused to respond to numerous communications from Mr. Hecht since March 2020, to the detriment of the Plaintiffs and beneath the dignity of the Court. [3]

Given BD's refusal to act as mature lead counsel and its choice to burden the Court with matters that are in reality a "family dispute" among former partners of PB, undersigned counsel echoes its request that the Court order a **mediation** between co-counsel to resolve issues of coordination of representation.  Dkt. 110.

Dated June 1, 2020

                                                            /s/ David L. Hecht
                                                            David L. Hecht
                                                            Andrew J. Lorin
                                                            Pierce Bainbridge Beck Price & Hecht LLP
                                                            277 Park Ave. 45th Floor
                                                            New York, NY 10172
                                                            (212) 484-9866
                                                            dhecht@piercebainbridge.com

                                                            *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record through the Court's EM/ECF electronic filing system on June 1, 2020.

                                                            /s/ David L. Hecht
                                                            David L. Hecht

---

[3] The BD Opposition points to withdrawals by Messrs. Hecht and Lorin in other cases (for other clients in other circumstances) that have no relevance to their participation in this case.