UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| DAMONIE EARL, LINDA RUGG, ALESA BECK, TIMOTHY BLAKEY, JR., STEPHANIE BLAKEY, MARISA THOMPSON, MUHAMMAD MUDDASIR KHAN, ELIZABETH COOPER, JOHN ROGERS, VALERIE MORTZ-ROGERS, and LAKESHA GOGGINS, each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOEING COMPANY and SOUTHWEST AIRLINES CO.,<br><br>Defendants. | Civil Action No. 4:19-cv-00507 |

### SUR-REPLY TO BATHAEE DUNNE'S MOTION TO DESIGNATE INTERIM LEAD CLASS COUNSEL UNDER FED. R. CIV. P. 26(g)(3)

### INTRODUCTION

Hecht Partners LLP ("HP"), as successor to Pierce Bainbridge Beck Price & Hecht LLP ("PB") in connection with this action, and as counsel to plaintiffs Stephanie Blakey, Timothy Blakey Jr., Lakesha Goggins, Damonie Earl, Alesa Beck, Marisa Thompson, John Rogers, Valerie Mortz-Rogers, respectfully submits this Sur-Reply to Bathaee Dunne's Motion to Designate Interim Lead Class Counsel Under Fed. R. Civ. P. 26(G)(3) ("Motion"). Dkt. 99.

As PB set forth in its Response to the Motion (Dkt. 110), the Motion is premature because: (1) Bathaee Dunne LLP ("BD") and HP, stepping into PB's co-counsel role, are still organizing their respective roles under the Co-Counsel Agreement ("CCA"); (2) HP stands ready to assist BD as it directs litigation strategy, case management, and public relations; (3) there is only one putative

class action in which BD and HP represent largely the same clients pursuant to the CCA and thus the difficulties inherent in situations with multiple class actions involving multiple sets of plaintiffs with unrelated lawyers does not exist herein; and (4) BD has not established whether all Plaintiffs have consented to the filing of and relief sought in the Motion.

## ARGUMENT

**1.** **BD Has Not Established a Conflict Between the Plaintiffs and the Putative Class**

BD's reply ("Reply") (Dkt. 120) to the responses to the Motion asserts the truism that class counsel may have different obligations than counsel for a particular plaintiff.  But BD has not established how **in this case** there is currently (or will soon be) a clash between the interests of the Plaintiffs and the putative class.  BD cites to an advisory committee note mentioning a divergence of interest that may occur where class counsel considers whether to accept or reject a settlement proposal (Dkt. 120 at 3), but BD does not assert that such a situation is currently presenting (or will soon present) itself.  The note also explains that class representatives do not have an unfettered right to fire class counsel, but BD does not assert that it is concerned about being fired by the Plaintiffs, nor would BD's protection from being fired seem to be, at this stage, a proper basis for appointing it interim lead counsel.

**2.** **BD Has Not Established a Rivalry and Uncertainty Harmful to the Class**

BD asserts that appointment of interim lead counsel may be appropriate where there is rivalry and uncertainty amongst plaintiffs' lawyers that harms the putative class. Dkt. 120 at 1. But BD has not established that this type of rivalry and uncertainty exists here, let alone how it has manifested itself and how such manifestations threaten the interests of the putative class. Classic manifestations of such harm – such as conflicting case theories and competing litigation strategies – have not occurred here.  To the contrary, as set forth in its Response, PB, and now HP, have

agreed that BD will at this time "control workflow" and "direct[] litigation strategy, case management, and public relations . . . ." Dkt. 110 at 1. Indeed, the undersigned is a former partner of Mr. Bathaee who worked closely and successfully with him on this case while at PB and during that time generally shared and sharpened Mr. Bathaee's strategic approach to the case and deferred to Mr. Bathaee on the rare occasions where they respectfully disagreed. Using past as prologue, it seems outlandish to compare this situation to the nasty rivalries of unrelated lawyers battling over conflicting strategies and theories.

However, what could cause harm to the class and indeed run afoul of the principles underlying Rule 23(a)(4) is BD needlessly manufacturing a crisis of rivalry and uncertainty where none exists in order to advance its claim that it is **immediately necessary** to appoint it interim lead counsel. Indeed, such an approach could be perceived as advancing BD's own self-interest over the class interest and thereby jeopardize class certification under the adequacy of representation inquiry. Moreover, pitting the Plaintiffs' chosen counsel against one another without good cause grounded in the class's interest as a whole could create conflicts among class members that BD should be strenuously striving to avoid.

Speaking of conflict-manufacturing, in response to PB's argument that the Motion is premature in the absence of multiple sets of plaintiffs with unrelated lawyers, BD now asserts that it "will soon move to add to this case several new individual plaintiffs represented by BD . . . that have never had and will not have any relationship with Pierce Bainbridge . . . ." Dkt. 120 n.3. BD can hardly cite its own conduct that might add future plaintiffs as a reason **today** that "'rivalry and uncertainty' justifies formal appointment of interim counsel to 'protect the interests of the putative class . . . .'" Id. Moreover, BD points to no inadequacy of the current class representatives (whom

all Plaintiffs' counsel previously agreed met Rule 23(a)'s requirements) that would necessitate the amendment of the complaint to add additional representatives.

Peculiarly, BD writes of rivalry and uncertainty as if BD were a mere passive spectator to the issue, as opposed to a participant responsible for ensuring that no rivalry and uncertainty arises that could harm the class. Yet loudly absent from BD's papers is evidence of its diligent and good faith efforts to prevent any rivalry and uncertainty from blossoming into something deleterious to the class – efforts one would fully expect and demand from a firm seeking appointment as interim lead class counsel. BD's papers, however, seem to strain to find evidence of deleterious rivalry and uncertainty where none exists.

BD points to PB's opposition to the Motion as proof that there is a deleterious rivalry and uncertainty, but if that were true then every such opposed motion would have to be granted. Plaintiffs' counsel's respectful disagreement on whether it is "immediately necessary" for BD to be appointed interim lead counsel does not axiomatically create a rivalry and uncertainty harmful to the class, especially where PB has agreed that BD should direct litigation strategy and case management. Similarly, PB's mere suggestion that if BD is concerned about coordination of representation then the Court could "order a mediation between co-counsel to resolve" the issues is hardly evidence of combatting lawyers harming the class. Dkt. 120 at 4. While it is noteworthy that BD has not established that material issues of coordination exist, if such issues did exist then mediation is an excellent cooperative method of addressing such concerns.

Finally, BD cites Defendants' request to delay a meet-and-confer to show that "Defendants clearly intend to use the very rivalry and uncertainty they have sown to stop this matter from progressing . . . ." Dkt. 120 at 5. But to the extent that the purported rivalry and uncertainty is being sown by Defendants, as noted by BD, it is BD's job to resist and counteract Defendants'

tactics, not simply accept the inevitability of the tactics' success. Happily, the issue was in fact sufficiently resolved such that the meet-and-confer took place on June 8.

3. **BD Has Not Established Its Consultation with Clients**

HP does not consider it "head-scratching" to assert that BD should have first consulted with, and received the approval of, its clients before making its Motion to become interim lead class counsel. After all, BD is not lead class counsel yet, and its duties and loyalties lie first with its clients, who appear to have been ignorant of the Motion before it was made (a view that BD's Reply makes no effort to refute). Surely all Plaintiffs should have had the opportunity to give their views as to whether they think an interim lead class counsel is needed immediately and whether BD is worthy of that appointment.

## CONCLUSION

In sum, BD has at this time failed to establish: (1) that there is a genuine conflict between the putative class and the plaintiffs; (2) that there exists genuine rivalry and uncertainty among Plaintiffs' counsel that is harmful to the putative class (including how the manifestations of that rivalry and uncertainty have harmed the interests of the class); (3) that it has diligently endeavored to prevent such a rivalry and uncertainty from developing into something harmful to the class; and (4) that it consulted with and received the approval of its clients before making its Motion to become interim lead class counsel. The Motion is thus premature and should be denied as such.

Dated June 11, 2020

/s/ Andrew J. Lorin
Andrew J. Lorin
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 851-6821
alorin@hechtpartners.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record through the Court's EM/ECF electronic filing system on June 11, 2020.

                                                /s/ Andrew J. Lorin
                                                Andrew J. Lorin