# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| DAMONIE EARL, LINDA RUGG, ALESA BECK, TIMOTHY BLAKEY, JR., STEPHANIE BLAKEY, MARISA THOMPSON, MUHAMMAD MUDDASIR KHAN, ELIZABETH COOPER, JOHN ROGERS, VALERIE MORTZ-ROGERS, and LAKESHA GOGGINS, each individually and on behalf of all others similarly situated § § § § § § § § § § § § | § § § § § § § § § § § § Civil Action No. 4:19-cv-00507 Judge Mazzant |
| v. | |
| THE BOEING COMPANY and SOUTHWEST AIRLINES CO. | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Southwest Airlines Co.'s Motion to Amend the Court's Memorandum Opinion and Order of February 14, 2020, to Certify for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) (Dkt. #71). Having considered the motion, the relevant pleadings, and the Court's February 14, 2020 Memorandum Opinion and Order, the Court finds that the motion should be denied.

## BACKGROUND

A full factual background can be found in the Court's February 14 Memorandum Opinion and Order (Dkt. #56 at pp. 1–4). As a brief recap: This litigation centers around the allegedly fraudulent representations and conspiratorial conduct of Defendants Southwest and Boeing (Dkt. #1 ¶ 8).[1] Plaintiffs Damonie Earl, Linda Rugg, Alesa Beck, Timothy Blakey, Jr., Stephanie Blakey, Marisa Thompson, Muhammad Muddasir Khan, Elizabeth Cooper, John Rogers, Valerie

---

[1] Defendant Boeing did not join in Defendant Southwest's motion. *See generally* (Dkt. #71).

Mortz-Rogers, and Lakesha Goggins (collectively, "Plaintiffs") bring their own claims against Defendants and seek to represent a putative class of similarly situated individuals who—they claim—were overcharged at the moment they purchased their airplane tickets (Dkt. #1 ¶ 325).

On September 13, 2019, Defendants filed their motions to dismiss (Dkt. #19; Dkt. #21). Plaintiffs responded on October 11, 2019 (Dkt. #28). Defendants filed their replies on October 28, 2019 (Dkt. #34; Dkt. #35), and on November 12, 2019, Plaintiffs filed their sur-reply (Dkt. #39). On December 9, 2019, the Court held a hearing on Defendants' motions to dismiss (Dkt. #48).

After thoroughly considering Defendants' motions to dismiss, the Court granted in part and denied in part both motions (Dkt. #56). Relevant to Defendant Southwest's motion to certify for interlocutory review, the Court found in its Memorandum Opinion and Order that Plaintiffs had sufficiently pleaded an injury in fact to establish Article III standing at the Rule 12 stage (Dkt. #56 at pp. 7–18).[2] Specifically, the Court recognized that Plaintiffs advanced two theories of economic injury:

> (1) if Plaintiffs had known the MAX 8 was fatally defective, Plaintiffs would never have purchased a ticket, so Plaintiffs want their money back; and (2) Defendants' RICO enterprise and fraudulent actions allowed Defendant Southwest to overcharge Plaintiffs for their tickets (Dkt. #1 ¶¶ 8, 52–53, 364–65; Dkt. #48 at pp. 42–43).

(Dkt. #56 at p. 8).

The Court held that Plaintiffs' first theory was insufficient to establish an economic injury in fact (Dkt. #56 at p. 9). But the Court explained that "Plaintiffs have satisfied their burden at this stage and may invoke the Court's jurisdiction" on their second theory (Dkt. #56 at p. 9). So, the Court found that the single, limited ground establishing Plaintiffs' Article III injury at the Rule

---

[2] The Court also dismissed the majority of Plaintiffs' claims under Rule 12(b)(6), leaving Plaintiffs with "two remaining causes of action for: (1) civil RICO violations under 18 U.S.C. § 1962(c); and (2) civil RICO violations under 18 U.S.C. § 1962(d)" (Dkt. #56 at p. 26). That decision is not at issue here.

12 stage was an alleged overcharge that resulted from "Defendants' alleged RICO enterprise and fraudulent conduct—designed to hide the MAX 8's defect—[which] allowed them to inflate the price of an airplane ticket, resulting in an overcharge of Plaintiffs" (Dkt. #56 at p. 12). This was the only a well-pleaded economic injury "separate and distinct from any alleged risk of physical harm" that the Court found Plaintiffs had alleged under binding Fifth Circuit precedent (Dkt. #56 at pp. 12–16).

On March 13, 2020, Defendant Southwest filed its Motion to Amend the Court's Memorandum Opinion and Order of February 14, 2020, to Certify for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) (Dkt. #71). Defendant Southwest asks the Court to certify the following question:

> Whether plaintiffs who used a service safely, completely, and without incident can allege Article III injury merely by claiming that they would have paid less if an alleged safety risk had been disclosed.

(Dkt. #71 at p. 2). Plaintiffs responded in opposition to certification on March 27, 2020 (Dkt. #72). Defendant Southwest filed its reply on April 2, 2020; Plaintiffs filed their sur-reply three days later (Dkt. #73; Dkt. #75).

## LEGAL STANDARD

Under 28 U.S.C. § 1292(b), the Court may certify one of its orders for interlocutory appeal if it determines "that such order involves a [(1)] controlling question of law [(2)] as to which there is substantial ground for difference of opinion and that [(3)] an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."

In the Fifth Circuit, interlocutory appeals are exceptional and "[d]o not lie simply to determine the correctness of a judgment." *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68 (5th Cir. 1983). Thus, "[a]ll three . . . elements should be present before a court certifies an order for interlocutory appeal." *Monroe v. Cessna Aircraft Co.*, No. 2:05-cv-250,

3

2006 WL 1305116, at *1 (E.D. Tex. May 9, 2006). But even "[s]atisfying these three statutory criteria is not always sufficient, 'as district court judges have unfettered discretion to deny certification even when all three are satisfied.'" *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:07-cv-341, 2011 WL 738871, at *4 (E.D. Tex. Feb. 23, 2011) (internal citation omitted), *vacated on other grounds*, *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015).

## ANALYSIS

"Section 1292(b) appeals are exceptional." *Clark-Dietz & Assocs.-Eng'rs*, 702 F.2d at 69. This is not one of the exceptional cases. In fact, the question Defendant Southwest wants certified was definitively answered by the Court in *Defendant Southwest's favor*. Defendant Southwest asks for this question to be certified:

> Whether plaintiffs who used a service safely, completely, and without incident can allege Article III injury *merely by claiming that they would have paid less if an alleged safety risk had been disclosed*.

(Dkt. #71 at p. 2) (emphasis added). As the Court explained in its February 14 Memorandum Opinion and Order, the answer to that question is clearly, "no":

> Pointing to the tragic fatalities of *other* passengers at the hands of a potentially defective airplane is not a basis that Plaintiffs can use to show that they were injured because they paid money for a ticket. . . . To put it in *Rivera*'s terms: "[Plaintiffs'] no-injury 'damages' will not vary with [Defendants'] degree of negligence or the [airplane's] propensity for harm." *See* [*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002)].
>
> Accordingly, Plaintiffs' first theory of injury—that had Plaintiffs known the MAX 8 was fatally defective, Plaintiffs would never have purchased a ticket—is not a cognizable injury-in-fact. Plaintiffs may not invoke the Court's power to decide "Cases" and "Controversies" under Article III with this damages theory.

(Dkt. #56 at pp. 11–12). The Court then went on to explain:

> While Plaintiffs' first theory does not represent an injury in fact, Plaintiffs successfully established an economic injury in fact on their second theory. . . . Defendants' arguments are almost exclusively tailored toward Plaintiffs' first theory of injury and how that theory of injury is proscribed by *Rivera*. And the Court agrees with Defendants on that point; Plaintiffs cannot

4

> establish standing on the theory that they would not have purchased a ticket had they known there was a risk of physical injury caused by the MAX 8's defect.
>
> . . .
>
> The two MAX 8 crashes are what *alerted* Plaintiffs to the Defendants' alleged scheme of concealing the MAX 8's defect in order to overcharge customers; the economic injury does not stem from the risk of physical injury. Rather, taking Plaintiffs' allegations as true, Defendants knew about the MAX 8's defect from the beginning, but they chose to hide that defect to keep ticket prices inflated (Dkt. #28 at p. 47). Plaintiffs' claim of economic injury via an overcharge is similar to the economic injury suffered by the plaintiffs in [*Cole v. General Motors Corporation*, 484 F.3d 717 (5th Cir. 2007)].
>
> . . .
>
> Defendants' alleged RICO enterprise and fraudulent conduct—designed to hide the MAX 8's defect—allowed them to inflate the price of an airplane ticket, resulting in an overcharge of Plaintiffs. Like the *Cole* plaintiffs, Plaintiffs' economic injury centers around a design defect that, once revealed, allowed Plaintiffs to identify an economic injury that occurred at the moment of purchase. And, unlike the Rivera plaintiffs, Plaintiffs here do not allege an economic harm that emanated only from potential physical harm. *See Cole*, 484 F.3d at 723 (distinguishing *Rivera*).

(Dkt. #56 at pp. 11–14) (footnote omitted).

As a careful reading of the Court's Order shows, Defendant Southwest's motion to certify is infirm at its inception—the Court already explicitly *rejected* Plaintiffs' argument that they could establish an Article III injury by claiming that they would have paid less if an alleged safety risk had been disclosed (Dkt. #56 at pp. 11–12). Unless Defendant Southwest is suggesting that the Court's rejection of Plaintiffs' argument was in error—and it surely is not—then Defendant Southwest has not identified any question to be certified for interlocutory appeal.

Even then, the Court denies Defendant Southwest's motion on the independent ground that it has not met all three elements of § 1292(b). First—as discussed above—an immediate appeal from the order will *not* materially advance the ultimate termination of the litigation because the grounds for Defendant Southwest's appeal have already been resolved *in Defendant Southwest's favor*. And second, Defendant Southwest has not identified a "substantial ground for difference

5

of opinion" on this issue. Indeed, the Fifth Circuit itself distinguished *Rivera* in the same way the Court did when it decided *Cole*. Particularly at the Rule 12 stage, there is not a "substantial ground for difference of opinion" on this issue when the Court faithfully applied the Fifth Circuit's binding precedent to reach its conclusion. As Plaintiffs identify, Defendant Southwest points to no Fifth Circuit or United States Supreme Court decision evincing a substantial ground for difference of opinion on this issue (Dkt. #72 at pp. 10–11 & n.1).

In sum: The Court decided the question Defendant Southwest seeks to certify in Defendant Southwest's favor.[3] And to the extent Defendant Southwest actually wants to certify the only holding adverse to its interests in the Court's February 14 Memorandum Opinion and Order— which is that "Plaintiffs' claim of economic injury via an overcharge is similar to the economic injury suffered by the plaintiffs in *Cole*," giving Plaintiffs a cognizable Article III injury(Dkt. #56 at p. 13)—Defendant Southwest has not identified a substantial ground for difference of opinion on this question.

## CONCLUSION

It is therefore **ORDERED** that Defendant Southwest's Motion to Amend the Court's Memorandum Opinion and Order of February 14, 2020, to Certify for Interlocutory Review Pursuant to 28 U.S.C. § 1292(b) (Dkt. #71) is hereby **DENIED**.

---

[3] *Compare* (Dkt. #56 at p. 9) ("Plaintiffs' first claim of economic injury—that had Plaintiffs known the MAX 8 was fatally defective, Plaintiffs would never have purchased a ticket—is identical to the no-injury products liability claim foreclosed by *Rivera*. Plaintiffs cannot establish an injury by pointing to an alleged design defect that injured others but did not injure Plaintiffs."), *with* (Dkt. #71 at p. 2) ("Whether plaintiffs who used a service safely, completely, and without incident can allege Article III injury merely by claiming that they would have paid less if an alleged safety risk had been disclosed.").

**SIGNED this 23rd day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE