# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DAMONIE EARL, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | Civil Action No.  4:19-cv-507 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| THE BOEING COMPANY, ET AL., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Hecht Partners' Motion to Withdraw or, in the Alterative, to Compel Cooperation (Dkt. #176).  Having considered the Motion and the relevant pleadings, the Court finds that it should be granted in part and denied in part.

## BACKGROUND

This dispute does not directly involve the putative class representatives or the defendants—in the words of Hecht Partners LLP ("HP"), it simply involves "Plaintiffs' counsel squabbling" (Dkt. #109 at p. 5), or as Defendant The Boeing Company ("Boeing") describes it, "internecine squabbling among law firms over basic questions of representation of a single client or client group and allegations of attorney misconduct" (Dkt. #137 at p. 5).

Regardless of its characterization, the present discord began when the firm originally representing the plaintiffs, Pierce Bainbridge Beck Price & Hecht LLP ("PB"), decided to cease operations and begin winding down in April 2020 (*see* Dkt. #80 at p. 3 n.3).  On April 14, 2020, the PB attorneys moved to withdraw from the present case, assuring in the motion that no delay or prejudice would result because two former PB partners, Yavar Bathaee and Brian Dunne, would "continue to appear as counsel on behalf of Plaintiffs" (Dkt. #79 at p. 1).  Bathaee and Dunne did

so, now as name partners of Bathaee Dunne LLP ("BD").  But at the May 13, 2020 hearing, David

Hecht—formerly of PB, now of HP—withdrew PB's motion to withdraw on behalf of himself and

Andrew J. Lorin, stating that the motion was filed in error and that PB had undergone "significant

structural changes" but remained as counsel of record (Dkt. #95 at pp. 3–4).  So began the ongoing

rift between BD and HP, which has plagued this action at many turns over the last five months

(*see, e.g.*, Dkt. #99; Dkt. #110; Dkt. #147 at pp. 23–30).

On October 1, 2020, HP filed its Motion to Withdraw or, in the Alterative, to Compel

Cooperation, currently before the Court (Dkt. #176).  That same day, BD filed its Non-Opposition

to HP's Motion for Withdrawal (Dkt. #177).  On October 15, 2020, Defendant Southwest Airlines

Co. ("Southwest") filed its response (Dkts. #182, 186).  On October 22, HP filed its reply (Dkt.

#189).[1]

## ANALYSIS

To decide what relief, if any, should be granted, the Court bears in mind pertinent

considerations of the class-action vehicle and its underlying rationale.  On the one hand, class

actions exist to further "the efficiency and economy of litigation[,] which is a principal purpose of

the procedure."  *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974).  Rule 23(d) of the

Federal Rules of Civil Procedure grants district courts significant latitude to give effect to this core

policy aim.  *See* FED. R. CIV. P. 23(d) advisory committee's note to 1966 amendment ("Subdivision

(d) is concerned with the fair and efficient conduct of the action and lists some types of orders

which may be appropriate.").  On the other hand, the interests of the class members must always

take priority if the protections afforded to absent class members under the "Constitution's

guarantee of due process" are threatened, even to the detriment of judicial economy.  *See* 1

---

[1] In its Motion and reply, HP requested a hearing on the matter at hand (Dkt. #176 at p. 14; Dkt. # 189 at p. 2).  The Court does not find a hearing necessary to resolve the issue.

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS § 1:1 (5th ed. 2011 & Supp. 2020) [hereinafter NEWBERG].  The fundamental objectives of Rule 23's enactors are fully realized when the "class-action device serves to 'avoid a multiplicity of actions,' 'enable claim processing through representatives,' and 'prevent inconsistent adjudications' through centralized determination of similarly situated litigants' substantive rights."  *See In re: Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2020 WL 6161495, at *14 (E.D. Tex. Oct. 21, 2020) (brackets omitted) (quoting 1 NEWBERG, *supra*, § 1:9).

Paramount to a proper class action is adequate legal representation of the class representatives, particularly to ensure that representatives and members of a class "possess the same interest[s] and suffer the same injur[ies]."  *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *see In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (explaining "the important role" courts play as "protector[s] of the absentees' interests . . . by approving appropriate representative plaintiffs and class counsel").  And while courts should not hinder the "basic tenet[] of our adversarial legal system" that "lawyer[s] owe[] the client loyalty and zealous representation," *United States v. Cavin*, 39 F.3d 1299, 1308 (5th Cir. 1994), courts should specifically seek to "foster mutual respect and cooperation . . . among the attorneys" in the class-action context, MANUAL FOR COMPLEX LITIGATION § 10.13 (4th ed. 2004).  *See* David Crump, *What Really Happens During Class Certification? A Primer for the First-Time Defense Attorney*, 10 REV. LITIG. 1, 3 (1990) ("[C]ooperation among counsel—*particularly counsel on the same side . . .* —is very important." (emphasis added)).  Above all else, courts and putative class counsel must vigilantly pursue the guiding light in the fog of class-action litigation—the best interests of the class members.  *See In*

*re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) ("Class counsel are duty bound to represent the best interests of class members.").

While courts must manage complex litigation in an adequate fashion, the significant level of control lawyers exert in the class-action setting means that putative class counsel share in the duty to manage class actions properly and appropriately. *See, e.g.*, Mary Kay Kane, *Of Carrots and Sticks: Evaluating the Role of the Class Action Lawyer*, 66 TEX. L. REV. 385, 393 (1987) ("The unique lawyer management aspect of class actions is one area in which courts have identified that the heart of the problem, as well as its solution, lies in the hands of attorneys litigating these suits."). Which brings the Court to the instant Motion. On several occasions, the Court strongly encouraged counsel from BD and HP to work together as they represented their clients and attempt to certify the putative class. This suggestion apparently fell upon deaf ears. Because the BD and HP lawyers appear incapable of resolving this conflict on their own, the Court has no choice but to intervene in order "to look out for the interests of absent class members and to balance those interests." *See* Jonathan T. Molot, *An Old Judicial Role for a New Litigation Era*, 113 YALE L.J. 27, 29 (2003).

HP requests two different forms of relief: either permit the HP attorneys to withdraw from the case or compel BD to "work cooperatively and to share work and responsibility" (Dkt. #176 at p. 14). While the Motion is styled to indicate that the latter option is an alternative request for relief, the movants made clear at the October 1, 2020 hearing that the Court should consider *both* requested forms of relief (Dkt. #189 at p. 3). After due consideration, the Court finds that permitting the HP attorneys to withdraw is the superior option.

The issue with HP's request for the Court to compel cooperation is not the procedural device itself. Motions to compel are far from uncommon. *See, e.g.*, *Vine v. PLS Fin. Services,*

*Inc.*, No. 4:18-CV-00450, 2020 WL 408983 (E.D. Tex. Jan. 24, 2020).  But they usually involve disputes between opposing parties, not intra-party conflicts.  This is not the main problem with HP's alternative form of requested relief—it is the vagueness of the request itself.  Motions to compel normally call for some definite end that the moving party seeks—such as an answer to a question in a deposition, an answer to an interrogatory, or a requested document.  *See* 8B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2285 (3d ed. 2007); *see also, e.g.*, *Calaway v. Schucker*, No. 02-2715-STA-CGC, 2011 WL 13097617, at *2–3 (W.D. Tenn. Aug. 11, 2011) (compelling the plaintiff, "in order to conserve judicial resources and ensure the expeditious resolution of this case," to cooperate with the defendant in having "the state court order release" of a document for the district court to review).  Even motions to compel particular action among putative class counsel request relief with identifiable ends.  *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 571 F. Supp. 481, 482–83 (E.D.N.Y. 1983).  Such is not the case here.

HP asks the Court to compel BD "to work cooperatively and to share work and responsibility" (Dkt. #176 at p. 14).  Nowhere in the Motion or the reply does HP even begin to detail what this form of relief entails (*see* Dkt. #176 at pp. 12–14; Dkt. #189 at pp. 1–3).  While "protection of the interests of the class" and "manageability of the lawsuit" are two of the most significant details courts must consider in class actions, *Witherspoon v. Mercury Freight Lines, Inc.*, 457 F.2d 496, 498 (5th Cir. 1972), the Court cannot act as an intra-party traffic cop in such sweeping fashion.  And even if the Court was inclined to compel cooperation among putative class counsel, the directive and its parameters would be practically unascertainable and almost certainly unworkable, especially because none of the parties provide any idea as to what such an order would contain.  *See United States v. Egbert*, 347 F.2d 987, 988 (5th Cir. 1965) (mem.) (Brown, J.,

concurring) (affirming that federal courts "have the right, if not the duty," to preserve the "precious and limited resources" available to them).

This form of relief is particularly inauspicious given the alternative.  Granting HP's withdrawal from the case is a much more straightforward way to resolve issues that the putative class currently faces as to its representation.  For one thing, HP's withdrawal will not deprive any putative class representatives of legal representation in the matter (Dkt. #189 at pp. 2–3).  As well, BD actually supports HP's request for this relief (Dkt. #177 at p. 1).  And perhaps most importantly, in HP's own words, "HP's withdrawal will lessen the disruption" in the case (Dkt. #176 at p. 12).

Allowing HP to withdraw does not mean they may not represent clients to this action in the future.  As they make clear in their Reply, HP moved for withdrawal out of concern that they may violate rules of professional responsibility by continuing as counsel in the suit (Dkt. #176 at pp. 11–12).  Regardless, whether the inter-counsel strife is a result of case-specific disagreement or general bad blood among former partners, granting HP's withdrawal is the preferable form of relief requested at this point when considering the best interests of the class.

## CONCLUSION

It is therefore **ORDERED** that Hecht Partners' Motion to Withdraw or, in the Alterative, to Compel Cooperation (Dkt. #176) is **GRANTED in part** and **DENIED in part**.  David L. Hecht, Andrew J. Lorin, and Kathryn Lee Boyd are hereby relieved of any obligation to accept service or otherwise represent Plaintiffs Damonie Earl, Timothy Blakey, Jr., Stephanie Blakey, Marisa Thompson, John Rogers, Valerie Mortz-Rogers, and Lakesha Goggins in this matter.  It is further **ORDERED** that the request for the Court to compel cooperation is **DENIED**.

SIGNED this 30th day of October, 2020.

6

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE