UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Damonie Earl, et al., | Case No. 4:19-CV-507-ALM |
| *Plaintiffs*, | Jury Trial Demanded |
| v. | |
| The Boeing Company et al., | |
| *Defendants*. | |

**Plaintiffs' Reply
in Support of Motion to Compel Discovery from Defendants**[1]

**[public version]**

---

[1] This is a ten page consolidated reply brief that has been authorized by the Court.  Dkt. 202.

## Table of Contents

I.   Defendants' efforts to bar "post-grounding" and "post-lawsuit" discovery should be rejected. ................................................................................................................. 1

    A.   Documents created after the grounding and the complaint are relevant. ................ 1

        1.   Documents showing an "association-in fact enterprise." ........................... 1

        2.   Documents showing Defendants' pattern of racketeering. ......................... 2

        3.   Documents showing the damages Defendants caused. .............................. 2

    B.   Defendants fail to defend their cut-off dates. ........................................................... 3

        1.   Defendants are required to produce *all* relevant documents, not just a preselected subset of relevant documents. ................................................ 3

        2.   Defendants' accusations of a "fishing expedition" are unfounded. ............. 4

        3.   Defendants' willful ignorance should not be tolerated. .............................. 4

        4.   Defendants' "injury was in the past" argument fails. ................................. 5

        5.   Defendants ignore the rules and cite cases that are irrelevant. ................... 6

    C.   Defendants' proportionality arguments fail. ............................................................ 7

II.  Defendants' objections to Plaintiffs' requests for specific documents fail. ........................ 8

    A.   Post-mortem analysis of the MAX 8 crashes and Defendants' efforts to redesign and recertify the MAX 8. ............................................................................ 8

    B.   Specific meetings and discussions about the Max 8 and Defendants' messaging to the public, the airlines, and the pilots about the MAX 8's failures and its recertification status. .................................................................... 9

    C.   Payments to and from Southwest concerning the MAX 8. ...................................... 9

    D.   Documents concerning former and current employees of Boeing. .......................... 9

III. Conclusion. .......................................................................................................................... 10

## Table of Authorities

**Cases**

*JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*, 936 F.3d 251 (5th Cir. 2019)...................... 7

*Labaty v. UWT, Inc.*, Civil Action No. SA-13-CV-389-XR,
   2015 U.S. Dist. LEXIS 37405 (W.D. Tex. Mar. 24, 2015). ....................................................... 8

*United States ex rel. King v. Solvay S.A.*, No. H-06-2662,
   2013 U.S. Dist. LEXIS 30752 (S.D. Tex. Mar. 5, 2013)............................................................ 7

*United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672,
   2013 U.S. Dist. LEXIS 121554 (E.D. Pa. Aug. 27, 2013) ......................................................... 7

*Vine v. PLS Fin. Servs.*, Civil Action No. 4:18-CV-00450,
   2020 U.S. Dist. LEXIS 12346 (E.D. Tex. Jan. 24, 2020)........................................................... 5

I.      **Defendants' efforts to bar "post-grounding" and "post-lawsuit" discovery should be rejected.**

Defendants object to producing "post-grounding" and "post-lawsuit" discovery. They act like these are ordinary objections. They are not. Objecting to producing relevant documents simply because they were created after the date Defendants' acts of racketeering culminated in yet a second fatal crash of the MAX 8 is no more logical than it would have been to limit discovery in a case about Chernobyl to documents created on or before the date of the meltdown. And cutting off "post-lawsuit" discovery is no more sensical than denying "post-Labor Day" discovery. These are unprecedented constructs that Defendants have created to hold back damaging information; those constructs must be rejected.

   A.    **Documents created after the grounding and the complaint are relevant.**

While this case involves a dense body of evidence and a large damages claim, this case is very simple. There are really just three elements to Plaintiffs' claims. And, as explained below, Defendants are withholding documents relevant to each element based on their cut-off dates.

      1.    **Documents showing an "association-in fact enterprise."**

Plaintiffs allege that Boeing and Southwest "constitute an 'association-in-fact enterprise' within the meaning of RICO." Dkt. 165 (First Amended Complaint) ¶ 331. To be clear, the existence of this enterprise is not itself illegal. In fact, as required to prove a RICO claim, "the Boeing-Southwest RICO Enterprise is separate and distinct from the pattern of racketeering in which Boeing and Southwest engage." *Id.* ¶ 333. Additionally, as Plaintiffs have alleged, the Boeing-Southwest enterprise is ongoing. *Id.* ¶ 332 ("The Boeing-Southwest RICO Enterprise has an ongoing organization with an ascertainable structure and functions as a continuing unit with separate roles and responsibilities."). Accordingly, Plaintiffs are entitled to evidence that will prove their allegations that Boeing and Southwest constitute an ongoing "association-in-fact

enterprise" under RICO. That evidence will not be limited to documents created prior to the MAX 8 grounding in March 2019 or prior to the filing of this lawsuit. That evidence continues to be created by Defendants and there is no justification for its withholding.

## 2. Documents showing Defendants' pattern of racketeering.

Plaintiffs allege that Boeing and Southwest engaged in an unlawful scheme to "conceal[] the scope and nature of the deadly safety issues present in the MAX 8 aircraft" so they could avoid pilot training costs, avoid remediation costs, and increase the sales of the MAX 8 aircraft and tickets for flights on airlines using those aircraft. *Id*. ¶¶ 339-340; ¶¶ 152-178. Their scheme continued even after the first MAX 8 crash on Lion Air (¶¶ 185-219)—when Defendants continued to lie to the public about the safety of a plane that had just fatally crashed due to a long-known defect—and even after the *second* MAX 8 crash that led its grounding (*id*. ¶¶ 220-253). Documents created after the MAX 8 grounding and after the fling of the complaint in this case, which shortly followed, are relevant to proving this scheme.

The post grounding period of time, continuing through today, is one in which Defendants have been under immense scrutiny from regulators, litigants, and their own internal reviews about what went wrong and what needs to be done to bring the MAX 8 back to service. These documents will demonstrate the lies, concealment, and coverup Defendants engaged in before being forced to ground the MAX 8 and tell the truth. They will also show the steps Defendants are now being required to take in recertifying the MAX 8 (i.e., the steps Defendants knew they should have taken the first time around but intentionally failed to take).

## 3. Documents showing the damages Defendants caused.

Finally, Plaintiffs also allege that Defendants' fraudulent scheme has "directly and proximately caused injuries and damages to Plaintiffs and Class Members," who bought tickets on flights that flew on the MAX 8 or on a route that included the MAX 8, having no idea they

2

were playing a game of Russian Roulette and, on top of it, being "overcharge[d] for tickets." *Id*. ¶¶ 348-349, ¶ 325. As the Court ruled earlier this year, Plaintiffs are entitled to prove their damages under their overcharge theory. Dkt. 56 (2/14/20 Memorandum & Order) at 12 ("Accepting Plaintiffs' allegations as true, the overcharge is an economic injury—separate and distinct from any alleged risk of physical harm—that constitutes an injury in fact."). ███████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.

### B. Defendants fail to defend their cut-off dates.

#### 1. Defendants are required to produce *all* relevant documents, not just a preselected subset of relevant documents.

Defendants tout their existing document productions for the pre-cutoff time periods as being substantial and sufficient for Plaintiffs' purposes. Dkt. 195 ("Boeing") at 1 ("█████ ████████████████████████████████████████"); Dkt. 193 ("Southwest") at 193 at 1 ("████████████████████████████████████████████████████ ███████████████████"); *id*. at 8 ("Plaintiffs have the documents to prove the who, what, where, when, why, and how of the alleged scheme for the time period encompassing when the alleged scheme occurred"). There are two problems with these arguments.

First, Defendants are required to produce "all" relevant documents. Dkt. 30 (OGP) at 4, item 5; Local Rule CV-26(d). That obligation is not met by showing that a certain number of documents have been produced or that, in Defendants' view, the documents they have produced should satisfy Plaintiffs. Rather, it is met by showing <u>all</u> relevant documents have been produced. Defendants do not claim there are no relevant documents created after their cut-offs; they instead claim they shouldn't even have to look for such documents.

3

Second, even for the pre-cutoff period, Defendants have not produced all relevant documents. Indeed, Defendants do not even claim to have collected and produced all relevant documents for the pre-cutoff period, and they won't even commit to an *estimate* of when they will substantially complete their document productions. This is why this motion is necessary, and why the Court's order must specify a hard date for production of all relevant documents, whether those documents were created before or after Defendants' cut-off dates.

### 2.     Defendants' accusations of a "fishing expedition" are unfounded.

Boeing argues that "Plaintiffs are engaged in nothing more than a fishing expedition, hoping against all odds" to find "one document that could be contorted to support their allegations." Boeing at 7. Southwest argues that "no documents produced to date tie Southwest to any alleged coordinated scheme" and "Plaintiffs thus speculatively hope" to find evidence create "after the lawsuit was filed." Southwest at 1. These arguments fail for two reasons.

First, ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████oeing. What is missing are documents from when the trail goes cold, following Defendants' cut-offs.

Second, that Defendants have already produced damaging evidence created during the pre-cutoff period does not bar Plaintiffs from obtaining additional evidence created after the cut-offs. Again, absent a compelling showing to the contrary—which Defendants cannot make—we are entitled to all relevant documents, not just a sampling of them preselected by Defendants.

### 3.     Defendants' willful ignorance should not be tolerated.

Boeing argues "there is no reason to conclude that, as a general matter, documents created after March 13, 2019…are likely to be relevant." Boeing at 1. Southwest argues that "Plaintiffs fail to explain why they believe (a) there would be documents created after

4

Defendants were sued that would support their claims and (b) those documents would likely reflect a different kind of knowledge or scheme than in [earlier] documents." Southwest at 8-9. These arguments also fail.

First, we have explained in detail why materials from the post-grounding and post-filing time frame are relevant and should be produced. Mot. at 2-4, 7-14.

Second, it is the burden of *Defendants* to demonstrate with specificity why they should not be required to produce the documents at issue. *Vine v. PLS Fin. Servs.*, Civil Action No. 4:18-CV-00450, 2020 U.S. Dist. LEXIS 12346, at *7-8 (E.D. Tex. Jan. 24, 2020) ("[T]he party resisting discovery [must] show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted.").

Third, Defendants cannot meet that burden. Defendants speak in the abstract, as if they don't have any idea what is in their post-cut-off documents. But Defendants alone have unfettered access to those documents and the ability—if true—to explain that the materials we seek either do not exist or do not contain the information we seek. Instead, they continue to pretend that they have not already reviewed these materials, don't know what's in them, and cannot possibly imagine how they could be any different than the documents from the pre-cut off time period. That is not good enough. Their attempts to be willfully ignorant of the existence and content of the materials they are withholding cannot justify their continued withholding.

### 4. Defendants' "injury was in the past" argument fails.

Boeing asserts: "Plaintiffs do not allege any post-March 13, 2019, actions by Defendants that contributed to their injury." Boeing at 4. Southwest asserts: "The facts needed to prove [Plaintiffs'] theory must necessarily have occurred before the lawsuit's filing in July 2019 because the alleged injury is the purchase of tickets *before* the grounding of the MAX on March 13, 2019." Southwest at 7 (emphasis in original). Again, these arguments fail.

5

Just because a document was created after the grounding or after the filing of the complaint, that does not mean the document does not contain relevant evidence of acts that occurred earlier. Mot. at 2-3. Furthermore, Defendants' post-grounding and post-filing acts are indeed relevant—to showing the ongoing existence of their association-in-fact enterprise, which we did in fact plead (Dkt. 165, ¶332). Accordingly, documents from the post-grounding and post-filing time period will show (a) the acts of racketeering Defendants engaged in *prior* to the grounding, (b) the existence of a RICO enterprise that continues to this day, and (c) the amount of damages Defendants acts of racketeering caused the Plaintiff classes. [2,3]

### 5. Defendants ignore the rules and cite cases that are irrelevant.

Defendants complain that we seek "virtually unlimited discovery" and "reject the application of *any* time period limitation on the scope of discovery." Boeing at 2 (emphasis in original). The rules require Defendants to produce all relevant documents and to continue supplementing their productions under Rule 26(e). Defendants disregard these rules and instead, nearly a year and a half into this case, can only muster up three cases to support their cut-off position. Southwest at 7-8. These cases are no help to Defendants.

In the *CVS* case, the plaintiff sought discovery of new acts of fraud (occurring after 2007) but was denied the discovery due to inadequate allegations of ongoing fraud. *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 U.S. Dist. LEXIS 121554, at *3-4 (E.D. Pa. Aug. 27, 2013). The court did, however, explain that post-2007 documents addressing the acts of fraud alleged to occur in 2007 were subject to discovery. *Id.* at 9 ("[[T]he audit findings

---

[2] Boeing states it "will readily stipulate that it has had a business relationship with Southwest for decades, a relationship that endures to the present." Boeing at 5. That is not the same as stipulating that Boeing and Southwest constitute a RICO enterprise.

[3] Boeing references its "public/customer facing" proposal, but fails to defend it. *See* Mot. at 6-7.

6

reflect claims made in 2007—a year encompassed by the 'relevant time period' defined in the Amended Complaint. As such, the 2009 audit findings will already be included in the discovery period."). Moreover, Defendants cannot reasonably contend that we have inadequately pleaded their ongoing association-in-fact, particularly when they admit the continuing nature of the unusually close business relationship that we rely upon to show they constitute an enterprise.

The *Solvay* case similarly involved inadequate allegations of ongoing fraud. *United States ex rel. King v. Solvay S.A.*, No. H-06-2662, 2013 U.S. Dist. LEXIS 30752, at *14 (S.D. Tex. Mar. 5, 2013). The disputed issue was whether the Defendant had to produce documents concerning ongoing acts of fraud—not whether the Defendant was permitted to withhold documents relating to the earlier acts of fraud simply due to their date of creation. *Id.* at *6.

Finally, the *Datatreasury* case has no applicability. That case concerned post-judgment discovery to collect the judgment. *JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*, 936 F.3d 251, 254-255 (5th Cir. 2019). The dispute was over which years of financials the Plaintiff should have access to, not over whether backward-looking documents created in a later year were discoverable when the underlying acts of liability occurred in an earlier year. *Id.*

**C.     Defendants' proportionality arguments fail.**

Boeing claims ███████████████████████████████████████████████████████████████████████████████████████████████████████████. Boeing also says this is a $20,000 case, not a $2 billion case (*id.* at 7). Boeing provides no authority or evidence to show that (1) the amount of costs *already* expended can justify denying additional discovery or (2) a defendant's self-servingly dim view of a plaintiff's case or damages claim has any relevance to the proportionality analysis. Moreover, in a case of this nature and size—where the well-resourced Defendant is exclusively in possession of (at this point) *20 months* of relevant, unproduced documents—an additional cost of ████

7

███ is neither prohibitive nor disproportional to the needs of this case. And to the extent Boing has to do any "refreshing" (*id.* at 8) of its prior collections, that inefficiency is the fault of Boeing—having failed to do its job the first time around. [4, 5]

For its part, Southwest can be commended for showing its math. But avoiding ███ ███ to provide discovery that should already have been provided is not a good enough reason to deny our requests. Those amounts are entirely unexceptional, even in the time of COVID. And while we do not dispute that Southwest is facing a downturn in its profits, the company still has a reported $14.5 billion in cash on hand (cash, cash equivalents, and short term investments).[6]

**II.     Defendants' objections to Plaintiffs' requests for specific documents fail.**

**A.     Post-mortem analysis of the MAX 8 crashes and Defendants' efforts to redesign and recertify the MAX 8.**

Boeing objects to these requests because (a) this is not a products liability case, (b) we have abandoned any claims of fraud on the FAA, and (c) Annex 13 prohibits disclosure. Boeing at 11-12. True, we don't need to show the MAX 8 was actually defective (though it clearly was), we need to show Boeing and Southwest lied about its defects and deliberately bypassed the certification steps it knew were required. That evidence is found in these documents. In addition, Boeing's Annex 13 objection is meritless. Dkt. 203.

Southwest (a) says ███████████████████████████████
███████████████████████████████████████

---

[4] In Boeing's *Labaty* case, the damages claim was $160,000. *Labaty v. UWT, Inc.*, Civil Action No. SA-13-CV-389-XR, 2015 U.S. Dist. LEXIS 37405, at *10 (W.D. Tex. Mar. 24, 2015).

[5] ███████████████████████████████████████████████████
███████████████████████████████████

[6] http://investors.southwest.com/~/media/Files/S/Southwest-IR/3Q20%2010-Q.pdf

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

### B. Specific meetings and discussions about the Max 8 and Defendants' messaging to the public, the airlines, and the pilots about the MAX 8's failures and its recertification status.

Boeing casually states that "[d]ocuments relating to these meetings…will be produced in the ordinary course using Boeing's established production protocols." Boeing at 12. Those protocols are the ones under which Boeing (a) is withholding documents based on its date cut-off and (b) refuses to commit to a date certain by which it will complete its document production. Moreover, the documents requested in this category are continuing to be created and are not limited, as Boeing suggests, to the pre-complaint time period.

### C. Payments to and from Southwest concerning the MAX 8.

Defendants claim this discovery is irrelevant and contradicts our allegations. Boeing at 12-13. They are wrong. The complaint does not simply plead a one-way flow of money to Boeing, it alleges that "Boeing promised to give Southwest a substantial rebate [$1 million] for every plane if the MAX 8 required simulator training." Dkt. ¶ 165. As to relevance, if—as has been reported—Boeing agreed to pay Southwest large sums of money to ensure Southwest does not start buying Airbus aircraft, this is further proof of the highly interdependent relationship that constitutes an "association-in-fact enterprise" under RICO.

### D. Documents concerning former and current employees of Boeing.

Mark Forkner: Boeing should be ordered to produce all documents relating to Mr. Forkner's critical role in the MAX 8 certification, regardless of whether they are "custodial" (a

9

term Boeing uses to refer to only documents found in Mr. Forkner's personal files and emails).

<u>Curtis Ewbank</u>:  Boeing downplays the significance Mr. Ewbank's whistleblower complaint and letter to the Senate.  Boeing at 13.  Boeing should be ordered to produce all documents relating to Mr. Ewbank's work on the MAX 8 and his allegations of fraud and misconduct by Boeing regarding the MAX 8.

<u>Mike Sinnet</u>:  Boeing casually commits to producing Mr. Sinnett's documents at some time in the future.  *Id.* at 13.  This production should be ordered to occur now.

<u>Dennis Muilenberg</u>:  Boeing feigns surprise at this dispute, despite having expressly discussed the issue with Plaintiffs as recently as the September 16.  *Id.* at 14.  Boeing also suggests this dispute is resolved, but Boeing has not committed to producing all relevant documents concerning Mr. Muilenberg.  *Id.*  It should be ordered to do so.

<u>Sergio Bustamante and Craig Bomben</u>:  Boeing makes a cursory reassertion of its "date of complaint" objection for these witnesses.  *Id.*  Its objection should be overruled.  Mot. 11-12.

### III. Conclusion.

Defendants should be ordered to produce all relevant documents, including those in the categories above, with no delay, no redactions, and no withholding of email attachments.

November 2, 2020                                Respectfully submitted,

                                                        By: */s/ Jeff Eichmann*
                                                             John Jeffrey Eichmann (CA 227472)
                                                             (Admitted in the Eastern District)
                                                             **DOVEL & LUNER, LLP**
                                                             201 Santa Monica Blvd., Suite 600
                                                             Santa Monica, CA 90401
                                                             Telephone: 310-656-7066
                                                             jeff@dovel.com

                                                             Yavar Bathaee (NY 4703443) (**Lead Counsel**)
                                                             yavar@bathaeedunne.com
                                                             Brian J. Dunne (CA 275689)

       bdunne@bathaeedunne.com
       Edward M. Grauman (TX 24081931)
       egrauman@bathaeedunne.com
       Andrew Wolinsky (NY 4892196)
       awolinsky@bathaeedunne.com
       **BATHAEE DUNNE LLP**
       445 Park Avenue, 9th Floor
       New York, NY 10022
       Tel: (212) 918-8188

       Elizabeth L. DeRieux (TX 05770585)
       ederieux@capshawlaw.com
       S. Calvin Capshaw (TX 03783900)
       ccapshaw@capshawlaw.com
       **CAPSHAW DERIEUX LLP**
       114 E. Commerce
       Gladewater, Texas 75647
       Telephone: (903) 236-9800
       Facsimile: (903) 236-8787

       *Attorneys for all Plaintiffs except Lakesha Goggins*

## Certificate of service

I certify that the above document was served on counsel of record for all parties on the above listed date via the ECF filing system.

       */s/ Jeff Eichmann*

## Certificate of authorization to seal

Under the Stipulated Protective Order entered by the Court (dkt. 132), and in compliance with LR CV-5(7), I hereby certify that this document and any sealed attachments are properly filed under seal.

       */s/ Jeff Eichmann*