# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| DAMONIE EARL, ET AL., § | |
| § | |
| *Plaintiffs*, § | Civil Action No.  4:19-cv-507 |
| § | Judge Mazzant |
| v. § | |
| § | |
| THE BOEING COMPANY, ET AL., § | |
| § | |
| *Defendants*. § | |
| § | |

## MEMORANDUM OPINION AND ORDER

On March 4, 2021, the Court granted Plaintiffs' Motion to Compel Boeing to Produce Documents Under the Crime-Fraud Exception (Dkt. #321).  The next day, Boeing produced the documents specified in the Court's March 4, 2021 Order.  After conducting an *in camera* review of these documents, the Court orders Boeing to produce the documents specified in this Order in fully unredacted form to Plaintiffs as instructed herein.

## LEGAL STANDARD

Under the crime-fraud exception, the attorney-client and work product privileges "can be overcome 'where communication or work product is intended to further continuing or future criminal or fraudulent activity.'"  *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002) (quoting *In re Grand Jury Subpoena*, 220 F.3d 406, 410 (5th Cir. 2000)); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) ("The crime-fraud exception therefore comes into play if 'the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme.'" (quoting *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977))).  These privileges are overcome "when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity." *In re EEOC*,

207 F. App'x 426, 434 (5th Cir. 2006) (citing *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005)). The crime-fraud exception may apply even when the attorney providing legal services is unaware of the ongoing crime or fraud being perpetrated by the client. *See In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 256 (4th Cir. 2005). The party asserting the crime-fraud exception bears the burden to show the "attorney-client relationship was intended to further criminal or fraudulent activity." *Id.* (citing *In re Grand Jury Subpoena*, 419 F.3d at 335).

After the movant makes a prima facie showing of the crime-fraud exception's applicability, courts then conduct an *in camera* review of the documents at issue. The Fifth Circuit has made clear that even when a prima facie case exists, the crime-fraud exception "does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." *In re Grand Jury Subpoena*, 419 F.3d at 343. Materials protected by the attorney-client privilege or the work product doctrine fall within the scope of the crime-fraud exception when they "hold 'some valid relationship' to the *prima facie* violation such that they 'reasonably relate to the fraudulent activity.'" *Id.* at 346 (quoting *In re Int'l Sys.*, 693 F.2d at 1243). The crime or fraud at issue must be ongoing, which may include "occasional backward looks" that are "part of a forward looking scheme." *In re Grand Jury Subpoenas*, 561 F.3d 408, 412 (5th Cir. 2009); *see In re Sealed Case*, 676 F.2d 793, 812 n.74 (D.C. Cir. 1982) ("Once a sufficient showing of crime or fraud has been made, the privilege vanishes as to all material related to the *ongoing* violation." (emphasis added)). The focus of this analysis is not on formal elements but rather the distinction between "material for which the law should not furnish the protections of a privilege and material for which a privilege should be respected." *In re Burlington N., Inc.*,

822 F.2d 518, 525 n.5 (5th Cir. 1987) (internal quotation marks omitted) (quoting *In re Sealed Case*, 676 F.2d at 815 n.91).

## ANALYSIS

The Court first looks to the validity of Boeing's privilege assertions and then turns to crime-fraud exception's applicability to the remaining documents.

### I. Claims of Privilege

Boeing asserts privilege over the 232 documents under *in camera* review. Because the crime-fraud exception applies only when material is privileged, the Court first reviewed each document and evaluated Boeing's privilege claims. The Court finds Boeing's assertions of privilege proper—aside from one set of documents.

The documents numbered under tabs 8–13 and 15–27 involve Boeing employees workshopping the company's public response to inquiries from media outlets. The employees communicating or looped into the conversations include, among others, Boeing in-house counsel. Boeing argues these documents are protected by attorney-client privilege since they (a) involve in-house counsel "provid[ing] legal advice on the content of these communications" or (b) are "implicit request[s] for legal advice on the draft statements"[1] (Dkt. #332, Exhibit 1 at p. 3). The Court finds this position unpersuasive.

---

[1] In its privilege log, Boeing additionally asserts that the documents numbered under *in camera* index tabs 8–11, 13, 16, 18, 20–24, and 26–27 are protected by the work product doctrine (Dkt. #316, Exhibit 1 at pp. 3–9). *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) ("The work-product doctrine 'insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries.'" (quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991))). Because these documents do not appear to have been prepared primarily "in anticipation of litigation," FED. R. CIV. P. 26(b)(3)(A), and Boeing makes no effort to demonstrate as much, the work product doctrine does not shield these documents from discovery. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) ("The law of our circuit is that the privilege can apply where litigation is not imminent, 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982))).

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client." *United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D. Tex. 1993) (citing *In re LTV Sec. Litig.*, 89 F.R.D. 595, 600–03 (N.D. Tex. 1981)) . The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "For a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'" *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, CV 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018) (quoting *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)). "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only where necessary to achieve its purpose.'" *BDO USA, L.L.P.*, 876 F.3d at 695 (brackets omitted) (quoting *Robinson*, 121 F.3d at 974). Further, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395.

"[A]pplication of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[2] *In re Auclair*, 961 F.2d 65, 68 (5th Cir. 1992) (quoting *Hodges, Grant & Kaufmann*, 768 F.2d at 721). "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof." *BDO USA, L.L.P.*, 876 F.3d at 695 (quoting *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)). Attorney-client privilege is not presumed, *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986), and "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent," *BDO USA, L.L.P.*, 876 F.3d at 695.

The circumstances of Boeing's privilege assertion are less straightforward, however, since corporate in-house counsel is involved. As described by the court in *Stoffels*,

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[3]

*Stoffels*, 263 F.R.D. at 411 (emphasis added) (citations omitted). "Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'" *EEOC v. BDO USA, L.L.P.*, 856 F.3d 356, 365 (5th Cir. 2017) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)), *opinion withdrawn and superseded*,

---

[2] Because the Court has subject matter jurisdiction here based on the presence of a federal question, federal common law governs the attorney-client-privilege analysis. *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 495 (5th Cir. 2005)

[3] Even though this standard is "time-consuming" and "requires a document-by-document analysis," it "ensure[s] a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys and encouraging in-house counsel involvement early and often in corporate decision-making." Tom Spahn, *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 STAN. J.L. BUS. & FIN. 288, 307 (2011).

876 F.3d 690 (5th Cir. 2017). If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates. *Neuder v. Battelle Pac. Nw. Nat. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000). Simply labeling communications as "legal advice" is conclusory and insufficient to satisfy the privilege-proponent's burden. *See Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000) ("[D]escribing a document as 'legal advice' . . . is not the same as establishing that [it is] immune from discovery.").

To justify its assertion of attorney-client privilege over tabs 8–13 and 15–27, Boeing offers that these "email communications discussing draft public communications regarding the Lion Air accident" involve the provision of legal advice by in-house counsel or implied requests for such (Dkt. #332, Exhibit 1 at p. 3). This explanation is not enough.

After its *in camera* review, the Court sees these documents as having been created for primarily non-legal purposes. The thoughts and commentary in the thread concern public response to inquiries regarding the 737 MAX 8 in the wake of the Lion Air accident—there is seemingly no legal advice offered on the face of the communications. The primary contributors to the discussion are Boeing's communications and technical personnel, and their aim appears to relate to the general public's consumption of the discussed messaging. Boeing's in-house counsel provides feedback, but it is far from clear that the thoughts they offer constitute advice that is itself primarily legal in nature. *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 802 (E.D. La. 2007) (explaining the necessity of individual explanations for assertions of attorney-client privilege even when the privilege claims concern "legal assistance in a highly regulated industry").

The only case with which Boeing supports its assertion of privilege is unhelpful to its position. Boeing cites to *In re Buspirone Antitrust Litigation*, 211 F.R.D. 249, 254 (S.D.N.Y.

6

2002), for the proposition that attorney-client privilege applies to "communications 'sent to corporate counsel with the expectation that the attorney will respond in the event that the matter raises important legal issues'" (Dkt. #332, Exhibit 1 at p. 3 (ellipsis omitted)). But in that case, the documents to which the court found that principle applicable were nothing like the documents over which Boeing drapes this citation. There, the three groups of documents being examined concerned (1) "information necessary to assist [counsel] in the preparations for filing patent certifications and about FDA follow-up inquiries on the . . . patent certifications"; (2) "problems 'regarding the bioequivalence studies in the ANDA, FDA inspections of the manufacturing facility, studies to validate the manufacturing processes, and the supplier of the active pharmaceutical ingredient'"; and (3) material provided to counsel in the search for legal advice "regarding regulatory issues." *Id.* at 253–54 (internal quotation marks omitted in first and third quotations). By contrast, the documents in question are much more readily associated with public-relations concerns than legal matters.

Nevertheless, the Court's finding here is compelled by what Boeing argues. It is incumbent on the party asserting attorney-client privilege to prove its applicability. *Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 509 (5th Cir. 2020). Boeing offers nothing more than the conclusory "legal advice" label in its privilege log for these documents and cites to a distinguishable, out-of-circuit case to support its assertion. To make matters more difficult, Boeing offers these less-than-barebones justifications "in the context of communications with in-house counsel—an area courts have acknowledged presents unique challenges when it comes to establishing attorney-client privilege." *BDO USA, L.L.P.*, 856 F.3d at 365. Boeing has not carried its burden as to its assertion of attorney-client privilege over the materials in question, and, accordingly, must produce these non-privileged documents.

## II. Applicability of the Crime-Fraud Exception

The remaining documents under review are protected by attorney-client privilege, the work product doctrine, or both. As such, the Court turns to the applicability of the crime-fraud exception to these documents. *See Areizaga v. ADW Corp.*, 796 F. App'x 205, 207 (5th Cir. 2020) ("The crime-fraud exception applies to attorney-client privilege and work-product privilege."). The only communications falling under this exception are "those shown to hold 'some valid relationship' to the *prima facie* violation such that they 'reasonably relate to the fraudulent activity.'" *In re Grand Jury Subpoena*, 419 F.3d at 346 (quoting *In re Int'l Sys.*, 693 F.2d at 1243). In this instance, the prima facie violation is Boeing's admitted "'conspir[acy] to defraud' the Federal Aviation Administration," detailed both by the Court and in the Deferred Prosecution Agreement. *Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 825501, at *2 (E.D. Tex. Mar. 4, 2021); *see* Deferred Prosecution Agreement, *United States v. Boeing Co.*, No. 4:21-cr-005-O (N.D. Tex. Jan. 7, 2021), ECF No. 4, pp. 28–43. Therefore, any communications reasonably relating to Boeing's fraudulent conduct against the Federal Aviation Administration ("FAA") fall within the crime-fraud exception and must be produced by Boeing.[4]

After conducting its *in camera* review, the Court finds the material under the following tabs to reasonably relate to Boeing's fraudulent conduct regarding the established prima facie violation:

- **Tab 28**: Email thread regarding upcoming meeting with the FAA Aircraft Evaluation Group ("AEG")
- **Tab 102**: Email thread regarding upcoming meeting with the FAA AEG
- **Tabs 113, 117, 120–123**: Email thread preparing standard language to describe the Maneuvering Characteristics Augmentation System ("MCAS") system in the wake of the Lion Air crash, with the FAA being an intended recipient

---

[4] The Court analyzes only those documents still at issue. Aside from the materials the Court orders Boeing to produce in this Order, Boeing must also follow through on its stated positions as to the documents it independently plans to produce in fully unredacted form and those containing revised redactions (*see* Dkt. #332 at pp. 2–4; Dkt. #332, Exhibit 1 at pp. 2–6, 8–16).

- **Tab 133**: Email thread preparing material for a meeting with the FAA concerning certification of the 737 MAX 8
- **Tabs 169, 174–183**: Email thread working on an official response to a letter from the FAA AEG
- **Tab 185**: Email thread discussing preparation for Boeing's presentation to the FAA
- **Tab 186**: Email thread involving discussion of a conversation Patrik Gustavsson had with the FAA
- **Tab 187**: Email thread discussing the submission the provision of technical plan updates to the FAA
- **Tabs 188–190**: Email thread regarding an evaluation proposal prepared for submittal to the FAA AEG
- **Tab 191**: Email thread comparing information provided to the FAA compared to other regulators
- **Tabs 200–203**: Email thread with attachments preparing response to an FAA request
- **Tab 211**: Instant message chat between Patrik Gustavsson and another Boeing employee regarding impending and potential communications with the FAA
- **Tabs 220–221**: Email thread discussing response to the FAA's evaluation of a Boeing submittal

Finding these materials to fall within the crime-fraud exception, the Court orders their production in fully unredacted form.

In addition, the Court cannot determine the applicability of the crime-fraud exception as to documents under four tabs—88, 89, 90, and 212—without further context. The documents under tabs 88, 89, and 90 are from an email thread concerning a presentation on updates to the MCAS system and corresponding manual (*see* Dkt. #316, Exhibit 1 at pp. 26–27). It is not apparent from the face of the documents, but if these documents were intended for the FAA or prepared in conformity with a directive from the FAA, then the crime-fraud exception would apply. The document under tab 212 is an email thread in which there appears to be discussion regarding the presentation of information for FAA evaluation, but the Court is not fully certain without more. If this chain of emails does involve Boeing's plans regarding disclosure and evaluation of 737 MAX 8-related information to the FAA, then the crime-fraud exception would apply. To ensure the

appropriate application of the crime-fraud exception here, the Court conditionally orders Boeing to produce these documents in fully unredacted form in accordance with this opinion.

Finally, any documents unaddressed here in the Court's opinion are (1) protected by attorney-client privilege, work product doctrine, or both; and (2) do not fall within the scope of the crime-fraud exception. Accordingly, these materials remain privileged, and they should be produced to Plaintiffs only in the event Boeing withdraws its assertions of privilege.

## CONCLUSION

It is therefore **ORDERED** that Boeing shall produce the documents numbered under the following *in camera* index tabs in fully unredacted form to counsel for Plaintiffs no later than twenty-four (24) hours after this Order issues:

- 8
- 9
- 10
- 11
- 12
- 13
- 15
- 16
- 17
- 18
- 19
- 20
- 21
- 22
- 23
- 24
- 25
- 26
- 27
- 28
- 102
- 113
- 117
- 120
- 121
- 122
- 123
- 133
- 169
- 174
- 175
- 176
- 177
- 178
- 179
- 180
- 181
- 182
- 183
- 185
- 186
- 187
- 188
- 189
- 190
- 191
- 200
- 201
- 202
- 203
- 211
- 220
- 221

It is **FURTHER ORDERED** that Boeing shall file concise answers under seal to the following questions no later than twenty-four (24) hours after this Order issues:

1. Were the materials under tabs 88, 89, and 90 intended for the FAA or prepared in conformity with a directive from the FAA?

2. Does the email thread under tab 212 involve Boeing's plans regarding disclosure and evaluation of 737 MAX 8-related information to the FAA?

The Court will render final decisions as to the crime-fraud exception's applicability to these materials after considering Boeing's answers.

It is **FURTHER ORDERED** that that the deadlines shall be changed as follows:

### DEADLINES

| | |
|---|---|
| March 19, 2021 | Deadline for Plaintiffs to file their Reply Brief in Support of the Motion for Class Certification. |
| April 2, 2021 | Deadline for Boeing and Southwest to file their Sur-Reply Briefs in Opposition to Plaintiffs' Motion for Class Certification. |

All other dates shall remain the same as set out in the Court's Second Amended Scheduling Order (Dkt. #117).

**IT IS SO ORDERED.**

SIGNED this 15th day of March, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE