# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DAMONIE EARL, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | Civil Action No.  4:19-cv-507 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| THE BOEING COMPANY, ET AL., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Boeing's Emergency Motion to Stay Pending Appellate Review (Dkt. #336) and Motion to Certify the Court's March 15, 2021 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (Dkt. #339).  Having considered the motions and the relevant pleadings, the Court finds that they should be denied.

## BACKGROUND

This case arises out of allegations made by Plaintiffs that Defendants The Boeing Company ("Boeing") and Southwest Airlines Co. ("Southwest") colluded to cover up fatal defects in Boeing's 737 MAX 8 aircraft and encourage public confidence to fly aboard these aircrafts while aware of the defects (Dkt. #165).  Defendants deny these allegations (Dkts. #191–92).

On March 1, 2021, Plaintiffs filed their Motion to Compel Boeing to Produce Documents Under the Crime-Fraud Exception, requesting that the Court conduct an *in camera* review to determine if the crime-fraud exception applied to various documents over which Boeing asserts privilege (Dkt. #316 at pp. 4–5).  On March 3, 2021, Boeing filed its response (Dkt. #320).  The next day, the Court published a memorandum opinion and order finding Plaintiffs to have made a

prima facie showing of the crime-fraud exception as to these documents and ordering Boeing to produce said documents to the Court for *in camera* review (Dkt. #321 at pp. 4–6).

On March 15, 2021, the Court published a memorandum opinion and order documenting its findings from the *in camera* review (Dkt. #335). First, the Court found that the documents under tabs 8–13 and 15–27 are not protected by attorney-client privilege or the work product doctrine (Dkt. #335 at pp. 3–7). Then the Court identified a number of documents protected by privilege but within the scope of the crime-fraud exception (Dkt. #335 at pp. 8–9). The Court ultimately ordered all nonprivileged documents and all materials falling within the scope of the crime-fraud exception produced to Plaintiffs' counsel (Dkt. #335 at pp. 10–11).

Boeing filed its Emergency Motion to Stay Pending Appellate Review (Dkt. #336) on March 15, 2021, and its Motion to Certify the Court's March 15, 2021 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (Dkt. #339) on March 16, 2021, both currently before the Court. On March 16, 2021, the Court took up the motions on an expedited basis and ordered Plaintiffs to respond (Dkt. #340). On March 17, 2021, Plaintiffs filed their response (Dkt. #346).

## LEGAL STANDARD

### I.   Certification for Interlocutory Appeal

In the federal judicial system, courts of appeals can review district-court orders only when a decision becomes "final," which generally occurs "upon completion of the entire case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020); *see United Disaster Response, LLC v. Omni Pinnacle, LLC*, 511 F.3d 476, 482 (5th Cir. 2007) ("Under 28 U.S.C. § 1291, unless one of the limited exceptions to the final judgment rule applies, we can review only 'final decisions.'"). But in certain circumstances, Congress permits district judges to certify an issue for

appellate review prior to a case's culmination.  *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1708 (2017).

> The applicable statute, 28 U.S.C. § 1292(b), reads, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Disaggregated, the statutory requirements to certify an interlocutory order are threefold: "(1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation."  *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007).  "All three of these criteria must be met for an order to properly be certified for interlocutory appeal."  *Crankshaw v. City of Elgin*, No. 1:18-CV-75-RP, 2020 WL 1866884, at *1 (W.D. Tex. Apr. 14, 2020) (citing *Clark-Dietz & Assocs.-Eng'rs v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983)); *see Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) ("The criteria are conjunctive, not disjunctive.").  The party moving for certification bears the burden to demonstrate its necessity.  *Coates v. Brazoria Cnty., Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013)

"[I]nterlocutory appeals are exceptional."  *Earl v. Boeing Co.*, No. 4:19-CV-00507, 2020 WL 4220887, at *2 (E.D. Tex. July 23, 2020) (quoting *Clark-Dietz*, 702 F.2d at 68).  Section 1292(b) does not exist "to question the correctness of a district court's ruling or to obtain a second, more favorable opinion."  *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006); *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995) ("[Section 1292(b)] is not intended as a vehicle to provide early review of difficult rulings in hard cases.").  Construing § 1292(b) as anything other than a "narrow exception" would effectively

nullify the "[c]ongressional policy against piecemeal appeals." *Garner v. Wolfinbarger*, 433 F.2d 117, 120 (5th Cir. 1970).  "The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009); *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 20 (D.D.C. 2002) ("A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the 'strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals.'" (quoting *United States v. Nixon*, 418 U.S. 683, 690 (1974))).

The decision to certify an interlocutory appeal lies within the sound discretion of the district court.  *Richardson v. Univ. of Tex. Sys.*, No. 5:19-CV-271-XR, 2019 WL 5683470, at *1 (W.D. Tex. Oct. 31, 2019); *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 405 n.9 (2004) (Ginsburg, J., dissenting) ("[T]he decision whether to allow an [interlocutory] appeal lies in the first instance in the District Court's sound discretion.").  District courts wield this authority precisely because Congress, in enacting § 1292(b), "chose to confer on [them] first line discretion to allow interlocutory appeals."  *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995); *see In re Trump*, 958 F.3d 274, 282 n.2 (4th Cir. 2020) (en banc) (detailing § 1292(b)'s legislative history), *vacated as moot by Trump v. D.C.*, No. 20-331, 2021 WL 231542 (U.S. Jan. 25, 2021) (mem.). As such, even when the statutory criteria are met, district courts may nevertheless deny certification.  *SEC v. Sethi Petroleum, LLC*, No. 4:15-CV-338, 2016 WL 4400064, at *2 (E.D. Tex. Aug. 18, 2016).

## II.    Stay Pending Appeal

"The authority to stay proceedings is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants.'" *Huddleston v. FBI*, No. 4:20-CV-447, 2021 WL 327510, at *1 (E.D. Tex. Feb. 1, 2021) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The decision to stay a case is committed entirely to the district court's discretion.  *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).  "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'"  *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (quoting *Landis*, 299 U.S. at 254–55).

"To determine whether a discretionary stay is warranted, district courts consider the following four factors: (1) the strength of the stay applicant's showing of likelihood of success on the merits; (2) the irreparability of injury absent a stay; (3) the substantiality of injury to other interested parties if a stay issues; and (4) the public interest."  *Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 720703, at *1 (E.D. Tex. Feb. 24, 2021) (citing *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020)); *see Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (explaining that the first two factors are "the most critical").  "These traditional four factors 'must be fully applied except where there is a serious legal question involved and the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits.'"  *OrthoAccel Techs., Inc. v. Propel Orthodontics, LLC*, No. 4:16-CV-00350-ALM, 2017 WL 3671862, at *2 (E.D. Tex. Apr. 28, 2017) (quoting *Weingarten Realty Inv'rs*, 661 F.3d at 910).  At all times, the applicant for a stay "bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).  "The movant must 'make out a clear case of hardship or inequity in being required to go forward.'"  *Nat'l Coal. for Men v. Selective Serv. Sys.*, 355 F. Supp. 3d 568, 575 (S.D. Tex. 2019) (quoting *Landis*, 299 U.S. at 254), *rev'd on other grounds*, 969 F.3d 546 (5th Cir. 2020).

## ANALYSIS

### I.     Certification for Interlocutory Appeal

In the Motion, Boeing asserts that the Court's March 15 order satisfies § 1292's tripartite test for certification (Dkt. #339 at pp. 4–8).  Plaintiffs disagree on all counts (Dkt. #346 at pp. 13–22).  The Court finds Boeing's arguments fall woefully short of satisfying the applicable statutory requirements.

#### a.   Controlling Question of Law

To be certifiable for interlocutory appeal, the Court's order must "involve[] a controlling question of law."  28 U.S.C. § 1292(b).  Boeing contends that the appropriate standard for application of the crime-fraud exception is at issue here (Dkt. #339 at p. 4).  Its argument centers on "whether the privileged communications that Plaintiffs identified must be produced in light of the conduct described in the Deferred Prosecution Agreement ('DPA') between Boeing and the Department of Justice," asserting the applicable standard is "more demanding" than the one the Court applied (Dkt. #339 at p. 5).  Plaintiffs disagree, responding with two points: (1) Boeing's own wording of the "controlling question of law" is "a factual one requiring the Court to make factual findings," and (2) in "attempt[ing] to manufacture a legal question," Boeing "flatly ignores" the text of the Court's order and incorrectly asserts that the application of the proper legal standard is a controlling question of law (Dkt. #346 at pp. 13–14).

Boeing's position is specious for three key reasons.  First, Boeing fails to recognize the proper legal standard for the crime-fraud exception.  Despite having previously provided the correct standard, *see Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 825501, at *1–2 (E.D. Tex. Mar. 4, 2021); *Earl v. Boeing Co.*, No. 4:19-CV-507, 2021 WL 963405, at *1 (E.D. Tex. Mar. 15, 2021), the Court again recites the standard's relevant aspects from the seminal Fifth Circuit case.

District courts make two inquiries to assess the applicability of the crime-fraud exception.  At the first step, the district court examines whether the exception's proponent has "establish[ed] a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002).  Once assured of the prima facie case as to the crime-fraud exception, the district court proceeds to the second step, in which it conducts an *in camera* review of the produced documents and ultimately turns over only those materials "hold[ing] 'some valid relationship' to the *prima facie* violation such that they 'reasonably relate to the fraudulent activity.'"  *Id.* at 346 (quoting *In re Burlington N., Inc.*, 822 F.2d 518, 525 n.5 (5th Cir. 1987)).

Peculiarly, Boeing argues that the Court applied the wrong standard in its March 15 order (Dkt. #339 at p. 5).  This assertion is either an entirely incorrect reading of *In re Grand Jury Subpoena* or a unilateral attempt to rewrite the law of this circuit.  What Boeing offers is an unrecognizable legal standard that has been nothing short of transmogrified.  Wishing for the first step's inquiry to replace that of the second step does not make it so.  The Fifth Circuit has clearly delineated the applicable standard to analyze the crime-fraud exception.  *See id.*  It is straightforward, uncontested, and, until the Fifth Circuit or the Supreme Court instructs otherwise, uncontestable.

Second, Boeing does not identify a question of law.  By definition, questions of law are those "susceptible of only two answers: 'yes,' the requirements of legal principles are met or 'no,' they are not met."  *United States v. Hausmann*, 711 F.2d 615, 618 (5th Cir. 1983) (internal quotation marks omitted) (quoting *United States v. Watson*, 623 F.2d 1198, 1202 (7th Cir. 1980)).  Questions of law do not involve "the application of settled law to disputed facts" and should not

necessitate "the appeals court to go 'hunting through the record' to see whether 'a genuine issue of material fact may be lurking there.'" *Flowserve Corp.*, 444 F. Supp. 2d at 722 (quoting *Ahrenholz*, 219 F.3d at 676); *IRAP v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) ("[A] question is not a controlling question of law where the appellate court is asked to consider 'whether the district court properly applied settled law to the facts or evidence of a particular case.'" (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004))).

The "question of law" Boeing isolates in the Court's March 15 order is "whether the privileged communications that Plaintiffs identified must be produced in light of the conduct described in the Deferred Prosecution Agreement ('DPA') between Boeing and the Department of Justice" (Dkt. #339 at p. 5). Even as phrased by Boeing, this question of law necessarily requires an exploration of facts in the record. The "privileged communications" mentioned in Boeing's question are the documents Plaintiffs identified in its original motion to compel (Dkt. #316, Exhibit 1), and Boeing submitted to the Court for *in camera* review, *see Earl*, 2021 WL 963405, at *4–5. The "conduct" referenced in Boeing's question is described by the DPA in the Statement of *Facts* section (Dkt. #316, Exhibit 4 at pp. 29–44). The only way to review the conclusions drawn in the Court's March 15 order is to examine the facts of Boeing's admitted fraud, analyze the produced documents, and connect the judicial dots by applying these facts to applicable law. "[C]ase law is clear that an interlocutory appeal is not appropriate when . . . the outcome turns on applying clear law to the facts." *Derrick Petroleum Services v. PLS, Inc.*, No. CIV.A. H-14-1520, 2015 WL 224991, at *2 (S.D. Tex. Jan. 15, 2015); *see, e.g.*, *Payne v. Friendship W. Baptist Church, Inc.*, No. 3:09-CV-0595-B, 2010 WL 11618799, at *1–2 (N.D. Tex. May 20, 2010) (Boyle, J.); *Solis v. Universal Project Mgmt., Inc.*, No. CIV. A. H-08-1517, 2009 WL 2018260, at *4 (S.D. Tex. July 6, 2009) (Rosenthal, J.); *Kelly v. Healthcare Servs. Grp., Inc.*, No. 2:13-CV-00441-JRG, 2014 WL

3612681, at *6 (E.D. Tex. July 22, 2014) (Gilstrap, J.); *Stoffels v. SBC Commc'ns, Inc.*, 572 F. Supp. 2d 809, 811–12 (W.D. Tex. 2009) (Justice, J.).  Such is the case here.  This result makes sense—a district court's discovery order is normally a fact-ridden, "non-appealable interlocutory order[,] . . . reviewable only upon final judgment."[1] *McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1534 (D. Conn. 1991); *see* 8 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2006 (3d ed.) ("Ordinarily it is difficult to believe that a discovery order will present a controlling question of law . . . .").

Third, assuming a question of law had been located, Boeing has not made the requisite showing that it is a *controlling* question of law.  "Whether an issue of law is controlling generally hinges upon its potential to have some impact on the course of the litigation." *Flowserve Corp.*, 444 F. Supp. 2d at 723 (emphasis omitted).  "[A]lthough not consistently defined," a question of law tends to control for purposes of § 1292(b) when resolving it "could materially advance the ultimate termination of the litigation," thereby "saving time and expense for the court and the litigants." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. CV H-14-3428, 2016 WL 949065, at *3 (S.D. Tex. Mar. 14, 2016) (internal quotation marks omitted) (quoting *Flowserve Corp.*, 444 F. Supp. 2d at 723).  In most instances, a controlling question of law "contrasts with a 'matter for the discretion of the trial court.'" *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994) (quoting *Garner*, 430 F.2d at 1096–97).

Discovery decisions fall directly within the discretion of the district court. *Williams v. Lockheed Martin Corp.*, No. 18-31162, 2021 WL 868529, at *7 (5th Cir. Mar. 9, 2021).  And even though Boeing never explicitly refers to the Court's order as an evidentiary ruling, Boeing's assertion that the Court erred is, in effect, an argument that the Court incorrectly determined an

---

[1] While this general rule is not absolute, its exceptions "tend to involve evidence more important to the case's ultimate outcome." *Dorato v. Smith*, 163 F. Supp. 3d 837, 893 (D.N.M. 2015).

evidentiary matter.  As is the case here, a party's assertion of a flawed discovery order seldom constitutes a legal issue in the § 1292(b) context.  *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citing *Jones v. Clinton*, 993 F. Supp. 1217, 1223 (E.D. Ark. 1998)).

Boeing does not put forward a controlling question of law that satisfies § 1292(b)'s first requirement.  The Court understands Boeing may not like "the Court's findings of fact as to its admitted criminal conduct," but Boeing's "grievances" unequivocally concern "questions of fact, not controlling questions of law" (Dkt. #346 at p. 18).

### b.  Substantial Ground for Difference of Opinion

Boeing next needed to demonstrate that there were "substantial ground[s] for difference of opinion."  28 U.S.C. § 1292(b).  In its motion, Boeing makes two arguments: (1) the Court applied the facts to the legal standard incorrectly under Fifth Circuit precedent, and (2) "the prospect of appellate review and relief" constitutes the necessary substantial grounds for difference of opinion (Dkt. #339 at pp. 5–7).  Plaintiffs do not agree, articulating that (1) the Court's March 15 order used the correct legal standard and properly applied the immediate facts, and (2) there is no legal question present (Dkt. #346 at pp. 18–21).

Boeing's position is flawed for several reasons.   To begin, § 1292(b) requires the substantial ground for difference of opinion to relate to the first element—the controlling question of law.  Considering the lack of a controlling question of law, Boeing is already unable to demonstrate the substantial-grounds requirement.

But even if there were a controlling question of law, Boeing has not demonstrated a substantial ground for difference of opinion.  For one thing, Boeing does not examine this element under the proper standard.  "The threshold for establishing the 'substantial ground for difference of opinion' . . . is a high one."  *Jud. Watch, Inc.*, 233 F. Supp. 2d at 19.  Courts normally find

substantial grounds for difference of opinion when (1) "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue"; (2) "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point"; (3) "complicated questions arise under foreign law"; or (4) "novel and difficult questions of first impression are presented." *Coates*, 919 F. Supp. 2d at 868–69 (internal quotation marks omitted) (quoting 4 AM. JUR. 2D *Appellate Review* § 123 (2012)).

Instead of addressing the correct standard, Boeing simply expresses its disagreement with the Court's March 15 order. Unfortunately for Boeing, "[m]ere disagreement with the Court's [o]rder is not sufficient to satisfy the second prong of 1292(b)." *La. State Conf. of NAACP v. Louisiana*, No. CV 19-479-JWD-SDJ, 2020 WL 6130747, at *9 (M.D. La. Oct. 19, 2020) (citing *S. U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2011 WL 2790182, at *2 (E.D. La. July 14, 2011)). Boeing's arguments, while not entirely without merit, are certainly less than well-conceived—they do not signal in which of the aforementioned substantial-grounds categories the immediate issue falls, let alone how these arguments clear the considerable threshold of this statutory requirement. If the position Boeing takes on this element were all that was necessary, "the majority of orders issued by district courts would be ripe for interlocutory appeal." *Texas v. Ysleta del Sur Pueblo*, 370 F. Supp. 3d 705, 710 (W.D. Tex. 2018).

Next, Boeing argues that "[t]he prospect of appellate review and relief" are sufficient under this element of § 1292(b) to warrant certification (Dkt. #339 at p. 6). Not so. To support its assertion, Boeing cites to two Texas district-court opinions—but they are inapposite. In *In re BP p.l.c. Securities Litigation*, Judge Ellison stated that, while confident in the accuracy of his opinion, there was "a non-zero chance that the Fifth Circuit w[ould] reach a different conclusion." No. 10-MD-2185, 2015 WL 926199, at *3 (S.D. Tex. Mar. 4, 2015). This citation might help Boeing if

not for the fact that Judge Ellison was addressing the *third* element of § 1292(b), not the second. *See id.* Further, that case, unlike the one currently before the Court, presented a novel and difficult question in the wake of a new Supreme Court opinion. *See id.* at *1–2.

The other case Boeing cites is equally unhelpful. In *Hopkins v. Cornerstone America*, Judge Means wrote that the court was "confident in its decision," but because "reasonable legal minds may disagree," the court found the substantial-grounds element present. No. 4:05-CV-332-Y, 2007 WL 9772306, at *6 (N.D. Tex. Aug. 1, 2007). Just as with the *In re BP* case, Boeing fails to mention that *Hopkins* was likely a "case of first impression," as the parties did not present, nor was Judge Means able to locate, "a single case from any circuit that ha[d] addressed" the issue at hand. *Id.* This alone is enough to distinguish *Hopkins* from the instant matter. But even further, the reference to a reasonable-minds test differing comes from a district-court case mentioning a *proposed* standard for § 1292(b)'s second element *found in* a *law review note*. *See Flowserve Corp.*, 444 F. Supp. 2d at 723 (citing Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 HARV. L. REV. 607, 623 (1975)). The Court cannot locate any binding precedent which applies a reasonable-appellate-judge-might-reverse standard for the substantial-grounds element.

Last but not least, Boeing recycles its argument from the previous element that the Court erred by (1) utilizing the wrong legal standard, and (2) applying the facts to that standard incorrectly (Dkt. #339 at pp. 6–10). But as discussed above, these arguments have nothing to do with a substantial ground for difference of opinion *as to a controlling question of law*. *See* 28 U.S.C. § 1292(b). For the same reasons previously discussed by the Court, *supra* pp. 6–10, these assertions are unhelpful.

Boeing does not demonstrate a substantial ground for difference of opinion as to the issues raised in the motion.  The circuit law applied by the Court is presently settled, and the relevant facts are not in dispute.  The Court is particularly confident in its assessment since Boeing does not even attempt to show that the instant matter falls within one of the categories of law under which courts "traditionally . . . find a substantial ground for difference of opinion."  *Coates*, 919 F. Supp. 2d at 868; *see Donato*, 163 F. Supp. 3d at 894 ("In the end, the Court believes that it is making very little, if any, new law in this case, but is merely applying established law to the particular facts of the case. The Court doubts that other judges would do much differently than what it has done.").  Again, the Court understands why Boeing "may take issue with the Court's factual findings" (Dkt. #346 at p. 20), but voicing such protestations here does nothing to affect the Court's March 15 order.

### c.   Materially Advance the Ultimate Termination of the Litigation

Finally, to satisfy the third element of § 1292(b), Boeing must show "that an immediate appeal from the [Court's] order may materially advance the ultimate termination of the litigation." To support its position, Boeing offers that this element is met because "the Court's significant ruling will affect the scope of evidence in this complex case," and that a "lack of appellate guidance" on this issue will result in unnecessarily duplicative litigation (Dkt. #339 at pp. 7–8). Plaintiffs argue otherwise, maintaining that immediate appeal of this issue would neither terminate nor advance the case and that Boeing's interpretation of this § 1292(b) element is "overbroad" (Dkt. #346 at pp. 21–22).

Boeing does not succeed on this element either.  "In evaluating this criterion, 'a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier

and less costly.'"  *Coates*, 919 F. Supp. 2d at 867 (quoting *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)).  Stated differently, "the ultimate termination of litigation is materially advanced when the resolution of a controlling question of law 'serves to avoid a trial or otherwise substantially shortens the litigation."  *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 8673848, at *2 (W.D. Tex. Aug. 8, 2016) (brackets omitted) (quoting *McFarlin*, 381 F.3d at 1259).  Similar to the controlling-question-of-law element, a district court's discovery order seldom advances the end of litigation in a material way.  8 WRIGHT & MILLER, *supra*, § 2006 ("Ordinarily it is difficult to believe that a discovery order will . . . materially advance the termination of the litigation.").

As with its arguments regarding the previous element, Boeing does not analyze this final statutory requirement under the correct standard.  Boeing's statement that the Court's March 15 order "will affect the scope of evidence" is self-evident.  But as Plaintiffs point out, "[v]irtually every question concerning the evidence, including run-of-the-mill evidentiary issues potentially affect the scope of the case at trial" (Dkt. #346 at p. 21).  If the standard Boeing proffers were law, it is difficult to imagine a situation in which a district court's order would *not* satisfy this requirement.

Still, Boeing's position as to the materially-advancing element is unsound for a few other reasons.  First, Boeing offers a single, distinguishable case to justify its position as to this element (Dkt. #339 at pp. 7–8; *see* Dkt. #346 at p. 22 n.6).  The absence of supporting case law does not help Boeing's already abbreviated consideration of § 1292(b)'s third criterion.  Next, Boeing offers vague speculations as to Plaintiffs' plans regarding future document requests.  This argument is problematic for two reasons.  For one thing, Boeing should have already produced (and must continue producing) all material required by the Federal Rules of Civil Procedure, the Local Rules,

and the Order Governing Proceedings—this point should not be of concern.  As well, the Court

cannot and does not take up issues based off of what a party might "have suggested that they intend

to" do (Dkt. #339 at p. 8).  Once a discrete matter arises that federal tribunals are empowered to

address, the Court will entertain such an issue when presented.  *See United States v. Sineneng-*

*Smith*, 140 S. Ct. 1575, 1579 (2020).  Until such time, the Court will not act based on a litigant's

strategic guesswork.  Finally, and critically, Boeing breezes past the rapidly approaching date of

the class-certification hearing.  Certifying the Court's March 15 order for interlocutory appeal will,

at best, create parallel proceedings, and, at worst, delay litigation.  *See* 16 WRIGHT & MILLER,

*supra*, § 3930 ("Delay may be a particularly strong ground for denying appeal . . . if there are

special reasons for pressing on with discovery . . . .").  These problems with Boeing's position

prove fatal.

Boeing has not shown that an immediate appeal will materially advance the ultimate

termination of this litigation.  In fact, if anything, certifying this issue for interlocutory appeal will

likely slow the case's progression—which would result in the direct contravention of § 1292(b)'s

mandates.  *See Abecassis v. Wyatt*, No. CIV.A. H-09-3884, 2014 WL 5483724, at *5 (S.D. Tex.

Oct. 29, 2014).

### d.  Conclusion:  Boeing Does Not Satisfy § 1292(b)'s Criteria

In sum, Boeing has fallen considerably short of showing that any of the three criteria

§ 1292(b) requires to certify an order for interlocutory appeal are present.  This being the case, the

Court denies Boeing's motion to certify the Court's March 15 order for interlocutory appeal.

## II.   Stay Pending Appeal

Having decided the § 1292(b)-certification issue, the Court turns to Boeing's motion for

stay pending appeal.  To recount, when considering a request for stay, courts examine: (1) whether

15

the stay applicant has made a strong showing of likelihood of succeed on the merits; (2) whether the applicant will suffer irreparable injury absent a stay; (3) whether a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Valentine*, 956 F.3d at 801.  As the Court describes below, Boeing does not successfully demonstrate the necessity for a stay of the Court's March 15 order.

### a.  Likelihood of Success on the Merits

First, Boeing fails to show a likelihood of success on the merits of its position.  To make the requisite showing under this element, the movant must demonstrate a strong case that it is "likely to succeed on the merits . . . , not [just] a 'mere possibility of relief." *Burgess v. FDIC*, 871 F.3d 297, 300 (5th Cir. 2017) (footnote omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  Boeing's arguments cannot even show the mere possibility of relief on the merits.

As in its motion for § 1292(b) certification, Boeing relies heavily on the position that the Court erred in articulating the correct legal standard and subsequently applied the facts improperly (Dkt. #336 at pp. 6–7).  Just as before, Boeing claims to have "raised a 'serious legal question,'" (Dkt. #336 at p. 7), even though the present issue heavily—if not entirely—involves factual matters.  For the reasons previously discussed by the Court, *supra* pp. 6–10, these arguments are insufficient to demonstrate likelihood of success on the merits.[2]  *See Nevada v. U.S. Dep't of Lab.*, 227 F. Supp. 3d 696, 698 (E.D. Tex. 2017) (holding that the movant did not show likelihood of success by generically arguing that the district court erred on the merits and the appellate court's ruling would control said merits).

---

[2] Even if the Court applied *Weingarten*'s standard, which only requires a "serious legal question [be] involved and the balance of equities heavily favor[] a stay," 661 F.3d at 910, Boeing would not satisfy this test since Boeing cannot demonstrate the balance of equities heavily favors a stay.

The Court wishes to address one other point Boeing makes.  In its motion, Boeing insinuates that the Court, after finding a prima facie case of the crime-fraud exception's applicability, did not follow Fifth Circuit precedent in conducting the second step of the exception's analysis (*see* Dkt. #336 at pp. 5–7).  As previously detailed, this is simply not the case.  Just as *In re Grand Jury Subpoena* instructs, the Court reviewed the documents *in camera* for "'some valid relationship' to the *prima facie* violation such that they 'reasonably relate to [Boeing's] fraudulent activity.'"  419 F.3d at 346 (quoting *Burlington N.*, 822 F.2d at 525 n.5).  And even though not required by precedent, *see id.* at 343 n.11, the Court engaged in a comprehensive, document-by-document analysis and diligently applied the facts to governing law to reach its ultimate conclusion—only thirty-four of the 232 documents under *in camera* review fell within the scope of the crime-fraud exception.  *See Earl*, 2021 WL 963405, at *4–6.  The Court followed Fifth Circuit law regarding the crime-fraud exception's second step to the letter and exercised its discretion over factual discovery matters only where permitted.

Boeing has not come close to showing a likelihood of success on the merits as to the issue currently before the Court.  Considering the "widely held view" that stays are not warranted "unless the movant has shown that success on appeal is probable," the odds Boeing remains able to demonstrate the necessity of a stay pending appeal decreases dramatically.  *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981); *see Scrum All., Inc.*, 2021 WL 720703, at *2 (E.D. Tex. Feb. 24, 2021) ("Defendants have not offered new arguments or authority indicating a likelihood of success on the merits, let alone a strong case at that.").  This factor weighs against granting a stay.

### b.  Irreparable Injury to Boeing

Next, Boeing must demonstrate it will suffer irreparable injury if the Court does not grant a stay.  An injury is irreparable when "there is no adequate remedy at law."  *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).  On the face of its argument, Boeing makes a solid case for irreparable harm (*see* Dkt. #336 at pp. 7–8).  But venturing past the surface of Boeing's position here demonstrates its weakness in two main ways.

First, Boeing's stance on this element directly conflicts with other statements made in its motion.  On the one hand, Boeing (accurately) emphasizes the sanctity of the discovery privileges that would be undone if the documents identified in the Court's March 15 order are improperly produced (*see* Dkt. #336 at pp. 7–8).  But on the other hand, Boeing argues elsewhere that the documents Plaintiffs seek are "irrelevant or at least immaterial" (*see, e.g.*, Dkt. #336 at p. 9).  To be certain, the Court recognizes that privilege protections are not predicated in any way on relevancy.  *In re Itron, Inc.*, 883 F.3d 553, 562 (5th Cir. 2018) ("[A] privilege that gives way whenever its contents become relevant or even 'highly relevant' to an opposing party's arguments cannot serve [its proper] purpose. Such a defeatable 'privilege' is hardly a privilege at all.").  Nevertheless, when a party requests the issuance of a stay, asserting that the production of certain privileged material will cause harm for which there is no adequate remedy at law while simultaneously dismissing the material as "irrelevant" is unhelpful in making the case for irreparable injury.

Second, Boeing errs regarding the nature of the purported harm.  As recited above, for an injury to be irreparable, there must be "no adequate remedy at law" for the harm.  *Daniels Health*, 710 F.3d at 585.  Yet such is not the case here.  Boeing is correct that unringing the privilege bell is a steep endeavor (Dkt. #336 at p. 7); *see In re Itron*, 883 F.3d at 567–68 (explaining the potential

inadequacy of interlocutory appeals as a remedy for erroneous discovery orders).  But, as Plaintiffs indicate in their response, this rationale is far from ironclad (Dkt. #346 at pp. 23–24).  Courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to [the] adversarial system." *Mohawk*, 558 U.S. at 108–09; *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) ("[W]e have generally denied review of pretrial discovery orders.").  Moreover, in *Mohawk*, the Supreme Court outlined two "alternative mechanisms" by which a party may seek review of a pretrial discovery order: (1) writ of mandamus, and (2) "defy[ing] a disclosure order and incur[ring] court-imposed sanctions."  558 U.S. at 111–12; *see Whole Woman's Health v. Smith*, 896 F.3d 362, 378 (5th Cir. 2018) (Costa, J., dissenting) ("[A] mandamus petition . . . is the typical way to protect a privilege when its piercing will cause irreparable harm.")[3]; *Firestone*, 449 U.S. at 377 ("[I]n the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." (citing *Cobbledick v. United States*, 309 U.S. 323, 327 (1940))).  The availability of these other avenues for review weakens Boeing's argument.

All things considered, the Court cannot find that Boeing will suffer irreparable injury absent a stay.  Construing this factor generously for Boeing leaves it, at best, in equipoise.

### c.  Substantial Injury to Plaintiffs

Boeing must also show that Plaintiffs will not be substantially harmed by the issuance of a stay—Boeing fails to do so.  First of all, Boeing's assertion that Plaintiffs would not be harmed during appellate review because "there are no pending deadlines for which these documents are

---

[3] Worth noting, the cases Boeing cites for the proposition that the erroneous disclosure of privileged documents is irreparable concern writs of mandamus, not motions for stay pending appeal.  *See In re EEOC*, 207 F. App'x 426, 429–30 (5th Cir. 2006); *In re City of New York*, 607 F.3d 923, 932–34 (2d Cir. 2010); *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 437–38 (6th Cir. 2009).

material" is downright odd (Dkt. #336 at p. 8).  The class-certification hearing is just over a month

away, and Plaintiffs' deadline to file their reply brief regarding the motion for class certification is

imminent (*see* Dkt. #346 at pp. 24–26).  Unlike Boeing, Plaintiffs do not know what information

the documents in question contain.  And even if Boeing does not (or refuses to) see how some of

these materials might be used in Plaintiffs' reply brief regarding class certification, allowing the

withholding party to determine the relevancy of potentially discoverable documents would be a

paradigmatic example of the fox guarding the henhouse.  Furthermore, as the Court discussed

above, *supra* p. 18, Boeing again appears to occupy two sides of the same argument.  In one breath,

Boeing maintains that Plaintiffs will not suffer substantial injury if a stay pending appeal issues

because the documents sought are not "material" (Dkt. #336 at p. 8).  Yet in the next breath, Boeing

stresses the importance of these materials and the irreparable injury that it will endure if required

to produce such critical documents (Dkt. #336 at pp. 7–8).  Boeing cannot have it both ways.

For the foregoing reasons and the lack of a clear case of hardship or inequity if the Court

decides to not exercise its discretion to stay, this factor weighs against granting a stay.

### d.  Public Interest

Finally, Boeing needed to demonstrate that a stay is in the public's interest.  Boeing's only

argument pertains to the consequential importance of evidentiary privileges in the context of

litigation, stating that the public interest favors allowing "the Fifth Circuit to resolve this serious

legal question before the documents are disclosed" (Dkt. #336 at p. 10).  But as Plaintiffs posit,

this argument is just an iteration of a similar line of reasoning Boeing offered regarding irreparable

injury (*see* Dkt. #346 at pp. 26–27).  Boeing still possesses viable mechanisms to argue its position

regarding the Court's March 15 order before the case ends.  *See Mohawk*, 558 U.S. at 111–12.

Having these avenues of review available to Boeing significantly diminishes whatever interest the public may have in the disclosure of the documents at issue.

Further, because Boeing has failed to show a likelihood of success on the merits, the public actually does possess a key interest in the litigation—the "speedy resolution of disputes." *Weingarten Realty Inv'rs*, 661 F.3d at 913.  Given both the availability of alternative mechanisms for Boeing to have the Court's March 15 order reviewed prior to the end of the case and the public's interest in efficient litigation, this factor weighs against granting a stay.

### e.  Conclusion:  Stay Pending Appeal is Not Warranted

Considering these factors together, the Court finds that Boeing has not carried its burden to demonstrate the need to stay the litigation pending appeal.

### CONCLUSION

It is therefore **ORDERED** that Boeing's Motion to Certify the Court's March 15, 2021 Order for Interlocutory Appeal Under 28 U.S.C. § 1292(b) (Dkt. #339) is **DENIED**.

It is **FURTHER ORDERED** that Boeing's Emergency Motion to Stay Pending Appellate Review (Dkt. #336) is **DENIED**.  Boeing must produce to Plaintiffs' counsel any documents identified for disclosure in the Court's March 15, 2021 memorandum opinion and order (Dkt. #335 at p. 10) no later than twenty-four (24) hours after this Order issues.

It is **FURTHER ORDERED** that the deadline for Plaintiffs to file their reply brief in support of the motion for class certification is extended to March 22, 2021.  All other dates shall remain the same as previously ordered by the Court.

**IT IS SO ORDERED.**
**SIGNED this 18th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE