# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X
SELINA KYLE,                                               :
                                                          :
               Plaintiff,                       :
                                                          :
         v.                                   :   Index No.: 1:20-cv-06142 (KPF)
                                                          :
DONALD D. LEWIS, in his individual and professional       :   **<u>AMENDED COMPLAINT</u>**
capacities, and PIERCE BAINBRIDGE BECK PRICE &            :
HECHT LLP,                                                :
                                                          :   **<u>Jury Trial Demanded</u>**
               Defendants.                      :
------------------------------------------------------------------------ X

Plaintiff Selina Kyle, by and through her attorneys, Wigdor LLP, as and for her Amended

Complaint against Donald Lewis ("Lewis") and Pierce Bainbridge Beck Price & Hecht LLP

("Pierce Bainbridge" or the "Firm") (together, "Defendants"), hereby alleges as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.      When Ms. Kyle began working at Pierce Bainbridge, she began what she hoped

would be a long and successful career in the legal industry.

2.      Horrifically, however, just a few weeks into her new employment at Pierce

Bainbridge, Mr. Lewis, a Partner at Pierce Bainbridge, sexually assaulted Ms. Kyle while she

was at work in the empty office on a weekend.

3.      On Saturday, July 7, 2018, Ms. Kyle went to Pierce Bainbridge's New York

offices in order to clean and catch up on some work.  Mr. Lewis also came to the office, claiming

that he had come to pick up a computer attachment.  Mr. Lewis stayed at the office, and after

some time, Ms. Kyle observed Mr. Lewis through a wide-open office door sitting at a desk with

his pants down, rubbing his penis with his hand over his boxers.

4.     Upon noticing Ms. Kyle standing there, Mr. Lewis walked up to her, softly mumbling and with his pants still partially down. Mr. Lewis then grabbed Ms. Kyle's breast as he continued to rub his penis.

5.     Terrified, Ms. Kyle ran from Mr. Lewis and locked herself in a bathroom where she proceeded to have a panic attack.

6.     Ms. Kyle summoned the courage to report Mr. Lewis's sexual assault to Pierce Bainbridge when she learned that he was to be promoted to a position in which he would be supervising numerous women.  As a result, Pierce Bainbridge launched an investigation, found Ms. Kyle's claims to be substantiated, and terminated Mr. Lewis.

7.     Mr. Lewis and Pierce Bainbridge soon began a series of backbiting lawsuits in which Mr. Lewis repeatedly and maliciously misrepresented, disparaged, and defamed Ms. Kyle in both his filings and various media.  Mr. Lewis launched a full-scale effort wherein he regularly defamed Ms. Kyle in an attempt to discredit, intimidate, and silence her in order to rehabilitate his own reputation after his termination from Pierce Bainbridge.  Upon information and belief, Mr. Lewis also has anonymously written articles, posts, and comments defaming Ms. Kyle across the internet.

8.     This retaliatory and tortious conduct culminated in Mr. Lewis filing a retaliatory and defamatory lawsuit against Ms. Kyle, simply for her attempts to protect her identity amid one of the multiple gratuitous lawsuits being thrown back and forth like darts between Pierce Bainbridge and Mr. Lewis.

9.     Over the course of 2019 and into 2020, Ms. Kyle continued to be drawn into the legal battle between Mr. Lewis and Pierce Bainbridge.  These indignities, intrusions, and further retaliatory acts included being personally named and sued as a so-called "discovery defendant"

by Mr. Lewis and having her identity disclosed in public pleadings or motions by both Pierce Bainbridge and Mr. Lewis. She attempted to extricate herself, to no avail.

10.     Finally, Ms. Kyle concluded that she had no choice but to actively seek remedies and redress from both Mr. Lewis and Pierce Bainbridge for the harassment, assault, retaliation, and tortious conduct that she has been forced to suffer and persevere through over the past two years. Therefore, Ms. Kyle files her claims against Defendants in the current action.

## NATURE OF THE CLAIMS

11.     Plaintiff seeks declaratory, injunctive, and equitable relief, as well as monetary damages, to remedy the unlawful employment practices of Pierce Bainbridge and Mr. Lewis, which violated the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"), as well as Mr. Lewis's defamatory statements regarding Ms. Kyle.

## ADMINISTRATIVE PREREQUISITES

12.     Pursuant to NYCHRL § 8-502, Plaintiff served a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of this action.

13.     Plaintiff has complied with any and all other prerequisites to filing this action.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interest and costs.

15.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district, Defendant Piece Bainbridge maintained an office and conducted business at all relevant times in New York, New York, and Defendant Lewis resides in New York.

## PARTIES

16.     Plaintiff is a former Paralegal at Pierce Bainbridge.  Ms. Kyle is a resident of the State of New Jersey and, at all relevant times, met the definition of an "employee" under all relevant statutes.

17.     Defendant Donald Lewis was a Partner at Pierce Bainbridge in 2018, supervised Plaintiff's employment, and met the definition of Plaintiff's "employer" under all relevant statutes.  During his tenure at Pierce Bainbridge in 2018, Defendant Lewis was Plaintiff's "employer" under all relevant statutes.  Upon information and belief, Mr. Lewis is a resident of the State of New York.

18.     Defendant Pierce Bainbridge Beck Price & Hecht LLP is a foreign registered limited liability partnership, with its principal office located at 20 West 23rd Street, Fifth Floor, New York, New York 10010.  At all times relevant herein, Pierce Bainbridge Beck Price & Hecht LLP was Plaintiff's "employer" under all relevant statutes.

## FACTUAL ALLEGATIONS

### A.     Ms. Kyle's Begins Work at Pierce Bainbridge

19.     Before she joined Pierce Bainbridge, Ms. Kyle was a web developer, designing, maintaining and developing databases, web applications, and websites.

20.     On June 5, 2018, Ms. Kyle began working with Pierce Bainbridge on a limited basis.  On June 18, 2018, after quickly realizing the value Ms. Kyle could bring to the Firm,

Pierce Bainbridge hired Ms. Kyle as a Legal Assistant. Ms. Kyle continued to prove her value to the Firm and eventually was promoted to the title of Paralegal.

21.     In Ms. Kyle's first few weeks at Pierce Bainbridge, Mr. Lewis, a Partner at the Firm, paid particular attention to her work, pulling her onto multiple assignments, including categorizing an internal list of enterprise clients, setting up his work laptop, assisting with paperwork, and other administrative tasks.

**B.      Ms. Kyle Is Sexually Harassed and Assaulted by Mr. Lewis**

22.     Due to the nature of Pierce Bainbridge's staffing in 2018, Ms. Kyle, although she was a Legal Assistant, also was responsible for cleaning the office on weekends. When she did so, she often took the opportunity while in the relatively quiet office to catch up on work for some of the many cases on which she was working.

23.     On July 7, 2018, Ms. Kyle went to the Pierce Bainbridge office in New York in order to clean and to catch up on some work. Although the office was normally closed on weekends, Ms. Kyle was one of a few people with a key to the New York office and the only person at the time who regularly came into the office each weekend.

24.     That same day, Mr. Lewis sent a message to Ms. Kyle on the instant messaging platform Slack, asking if he could come to the office because he had left his dongle (a small device that connects to a computer and adds functionality) there and wanted to pick it up. Ms. Kyle agreed and opened up the elevator in order to let him into the office.

25.     Rather than simply retrieve the item and leave, Mr. Lewis stayed in the office. Ms. Kyle continued to work while Mr. Lewis was there.

26.     After a couple of hours, Mr. Lewis grabbed his phone and computer and went into one of the two front offices, leaving the door open.

27.     As the office space was not large, Ms. Kyle could hear labored breathing sounds, strange grunting noises, and a rustling sound coming from the corner office where Mr. Lewis had gone.  Ms. Kyle continued to work and tried to ignore the noises and avoided eye contact with Mr. Lewis, despite the fact that she could see he was looking in her direction through the open glass door.

28.     At one point, Ms. Kyle printed a document.  In order to get to the printer, Ms. Kyle had to come close to the office where Mr. Lewis had set up.

29.     When Ms. Kyle passed that office, she noticed through the open door that Mr. Lewis had a hazy look on his face and smiled at her.  Ms. Kyle also noticed Mr. Lewis's hand moving underneath the desk.

30.     At that moment, Mr. Lewis locked eyes with Ms. Kyle and stood up, revealing that his pants were partially pulled down, exposing his boxers, and that his penis was erect.  Mr. Lewis was rubbing his erect penis over his boxers with his hand.   Ms. Kyle stood frozen with shock and fear.

31.     Mr. Lewis approached Ms. Kyle, mumbling words with his pants still slightly down.  Ms. Kyle detected that Mr. Lewis smelled of alcohol.

32.     Once Mr. Lewis reached Ms. Kyle, who was panicked, he grabbed her left breast and began to rub her breast as he continued with his other hand to rub his erect penis over his boxers.

33.     Ms. Kyle started saying "Stop" and "No," but she was still frozen with fear.  Ms. Kyle then pulled away from Mr. Lewis and ran into the bathroom.

34.     Unfortunately, she had left her phone at her desk.  Ms. Kyle suffered a panic attack in the bathroom, began hyperventilating, and cried for approximately 15 to 30 minutes.

35.     When Ms. Kyle left the bathroom in order to leave, Mr. Lewis was still in the office and tried to engage her in conversation.  Mr. Lewis asked Ms. Kyle if she liked her job and why she was working on the weekend.

36.     Mr. Lewis quickly revealed his true motives for talking to Ms. Kyle when he told her, "If you tell anyone what happened, you are gone.  I was friends with [John Pierce] at Harvard, and if you tell anyone you are finished."  Ms. Kyle fled the office.

**C.     <u>Mr. Lewis Retaliates Against and Tries to Undermine Ms. Kyle at the Firm</u>**

37.     Mr. Lewis quickly moved to try to discredit Ms. Kyle among the attorneys and her peers by complaining openly about her work, although it was unwarranted.

38.     For example, only a few days after the assault, Mr. Lewis gave Ms. Kyle an assignment which was much more suited for an attorney, rather than a legal assistant.  Mr. Lewis incessantly complained about Ms. Kyle's work on this assignment.

39.     As a result, Ms. Kyle went to Max Price and David Hecht, former Named Partners, and explained what was going on with the assignment.

40.     Mr. Price and Mr. Hecht agreed with Ms. Kyle's assessment that the assignment needed to be completed by an attorney and ordered Ms. Kyle to stop working on the assignment.

41.     Ms. Kyle eventually learned that, shortly after the assault, Mr. Lewis also had called multiple partners of Pierce Bainbridge and complained about Ms. Kyle to them.

42.     David Hecht, a former Named Partner, told Ms. Kyle that Mr. Lewis had called and told him that Ms. Kyle was going to "take down the Firm."

43.     After July 7, 2018, Mr. Lewis stopped coming into the office regularly.  In fact, Mr. Lewis only came to the office sporadically, approximately six times from July 2018 through October 2018.

44.     On July 20, 2018, Carolynn Beck, a Named Partner, was in town and went to lunch with other partners.  This left Ms. Kyle alone in the Pierce Bainbridge office, which was located in a low-rise building without a doorman or security.

45.     At that time, Mr. Lewis had stated on the Firm Slack channel that he would come to the office to pick up baseball tickets that he had been given.  Because Ms. Kyle feared being alone with Mr. Lewis in the office again, she offered to drop the tickets off at his home instead, knowing that she could either leave them with a doorman or give the tickets to him on the street in public.

46.     Mr. Lewis accepted Ms. Kyle's offer for her to drop them off at his apartment building and invited her up to his rooftop to join him with his girlfriend.

47.     When Ms. Kyle ignored this offer and simply asked for his address, Mr. Lewis asked again.  Ms. Kyle did not want to be alone with Mr. Lewis and his girlfriend and again declined the offer.

48.     Eventually, Mr. Lewis came downstairs and took the tickets from Ms. Kyle in a public place.

**D.     Mr. Lewis's Inappropriate, Offensive Conduct and Intimidation Tactics**

49.     Mr. Lewis regularly made inappropriate, offensive, and often misogynistic comments at the office and on the Firm's internal Slack.  Mr. Lewis facilitated a male-dominated "bro" culture at the firm that was particularly hostile to women and served to intimidate Ms. Kyle.

50.     Upon information and belief, Mr. Lewis was never reprimanded regarding his offensive posts.  Examples of Mr. Lewis's inappropriate posts on Slack are numerous.

51.     On the Pierce Bainbridge "#winning" Slack channel, Mr. Lewis inappropriately and offensively responded to a post about how his then-friend and partner Chris LaVigne had "won the local beer hoisting competition" by making a reference to masturbation:



52.     In response to an internal Slack discussion regarding WWF wrestlers mentioned at a client's deposition, Mr. Lewis superfluously injected one of the wrestlers' offensive catchphrases regarding a "train" of prostitutes, which had no bearing on the conversation and was only for his own amusement:



53.     Mr. Lewis alluded to crossing penises (*i.e.*, "sword fighting") in response to an innocuous comment on a proposed firm logo:



9

54.     Mr. Lewis further boasted on the "#general" Slack channel about his "Particular set of skillz," saying that he had "invok[ed]" Mr. Pierce by telling Gramercy Tavern about his "Harvard Law School classmate" to get a $250 credit.  This sort of banter created an intimidating atmosphere that underscored Mr. Lewis's closeness to Mr. Pierce, and further discouraged Mr. Kyle from immediately reporting the assault by Mr. Lewis.



55.     In response to a picture of the foyer of the Havana Club in Manhattan posted in the #general Slack channel, where Mr. Pierce was meeting former NYC mayor Rudolph "Rudy" Giuliani, Mr. Lewis posted a picture of himself smoking a cigar and asked Mr. Pierce if he could "locate [Mr. Lewis's] spot…," as Mr. Lewis was involved with recruiting Mr. Giuliani to the firm as a partner.



56. Mr. Lewis also frequently used outrageous sexual and misogynistic language in the workplace, including repeated use of the words "bitch," "cunt," "whore," and other profanity on the few occasions he appeared at the office during the second half of 2018. Ms. Kyle also felt discouraged from reporting Mr. Lewis sooner due to Mr. Lewis's regular attempts to portray himself as Mr. Pierce's right-hand man.

**E.    Ms. Kyle Reports the July 2018 Assault and Incident**

57. In early October 2018, Ms. Kyle learned that Mr. Lewis was going to be promoted to the position of Assigning Partner.

58. This information led Ms. Kyle to believe that Mr. Lewis would be in the office more often and that he would have supervisory authority over more women at the Firm, including increased supervisory authority over Ms. Kyle.

59. At the time of the July 7, 2018 incident, Ms. Kyle was the only female staff member working in the New York office of Pierce Bainbridge. By the time of Mr. Lewis's impending promotion three months later, however, there were more female attorneys and staff who had been hired due to Pierce Bainbridge's rapid growth.

60. Ms. Kyle made the decision to come forward about what had happened to her because she did not want any other woman to go through what she had with Mr. Lewis.

61. On October 4, 2018 Ms. Kyle called her supervisor, Grace Chang, the Supervising Managing Paralegal. Ms. Kyle recounted the details of the July 7, 2018 incident to Ms. Chang, who told Ms. Kyle that she needed to report the incident to Ms. Beck.

62. That same night, Ms. Kyle called Ms. Beck and gave her a detailed account of the incident with Mr. Lewis. Ms. Beck assured Ms. Kyle that she would speak with Mr. Pierce and "see what could be done about the situation."

63. Ms. Kyle emphasized to Ms. Beck that she was worried about being retaliated against as a result of her complaints of sexual harassment and assault and told Ms. Beck about Mr. Lewis's comments to her regarding the fact that she would be fired if she told anyone what happened because he was close with Mr. Pierce.

64. Approximately one or two weeks after Ms. Kyle made her protected complaint to Ms. Beck, Ms. Kyle noticed that Mr. Lewis's Slack account had been de-activated and overheard that Mr. Lewis was out on leave.

65. Approximately one week after making her initial complaint, Ms. Kyle was interviewed by Michael Yim and Sohu Rey, attorneys at Putney Twombley Hall & Hirson ("Putney Twombley").

66. Ms. Kyle recounted Mr. Lewis's assault on her again and filled out a complaint form.

67. It was not until December 4, 2018 that Ms. Kyle received an email from Ms. Beck stating that Mr. Lewis had been let go.

68. In fact, Ms. Kyle believed that it was possible that Mr. Lewis may have been terminated weeks before that, as she previously had noticed that his Firm email had been de-activated.

69. The email to Ms. Kyle stated that, as a result of the investigation by Putney Twombley, the Firm had made findings that:

> The weight of the evidence supports your allegations that you endured sexual harassment and the threat of retaliation by Mr. Lewis on July 7, 2018. The weight of the evidence is inconclusive concerning whether your allegation about Mr. Lewis' conduct on July 20, 2018, rose to the level of sexual harassment. The evidence does demonstrate, however, that Mr. Lewis exercised poor judgment by crossing personal and professional boundaries. The weight of the evidence supports a finding that Mr. Lewis had a retaliatory motive with respect to your employment status and performance.

70. This email from Ms. Beck also stated that, while Mr. Lewis had been terminated, it was not because of his conduct towards Ms. Kyle, but instead that he was terminated because of "his conduct during the investigation and in violation of the terms of his administrative leave and prior to the close of the investigation."

71. In a recent filing in State Court, Pierce Bainbridge alleges that on November 13, 2018, Mr. Lewis sent an email to nineteen partners and "threatened that if his termination was

not 'immediately rescinded,' he would bring retaliatory lawsuits against the firm, the individual partners, [Ms. Kyle], and Independent Counsel." Lewis v. Pierce Bainbridge Beck Price & Hecht LLP, et al., Index No. 652931/2019, Dkt. Nos. 264 and 274 (N.Y. Cty. March 30, 2021).

**F.    Mr. Lewis Defames Ms. Kyle in His Lawsuit Against the Firm and Subsequent Press Coverage**

72.    On May 16, 2019, Mr. Lewis filed a lawsuit against Pierce Bainbridge, Mr. Pierce, Ms. Beck, Mr. Hecht, Mr. Price, James Bainbridge, Amman Khan, Andrew Lorin, Caroline Polisi, Christopher LaVigne, Conor McDonough, Craig Bolton, Doug Curran, Eric Creizman, Jonathan Sorkowitz, Melissa Madrigal, Michael Pomerantz and Patrick Bradford, all Partners at Pierce Bainbridge, Putney Twombley, Mr. Yim, and even Lauren Shaefer-Green, Mr. Pierce's assistant.

73.    In this complaint, Mr. Lewis states that "demonstrably false allegations by a junior level employee who was used as a pawn by Pierce and Beck and, whose allegations, appear to have been altered after they were allegedly reported in an ill-fated effort to give the lies credibility" served as the basis for his termination.  Mr. Lewis then refers to the July 7, 2018 incident as "False Allegations," and uses that defined term dozens of times throughout the complaint.

74.    Mr. Lewis, though he used a pseudonym Jane Doe in the complaint, provided enough details about Ms. Kyle that anyone who was even remotely familiar with the Firm would be able to identify her.

75.    Mr. Lewis stated that Ms. Kyle "is just over 20 years old with no prior law firm experience. Although she works long hours, which Plaintiff recognized and commended, as the first paralegal in the N.Y. office Doe was able to pick and choose which assignments she preferred to do."

76.     Mr. Lewis continued his retaliatory, bullying denigration of Ms. Kyle, stating falsely that she "was accused of 'lying' by more than one firm personnel in connection with excuses made about not completing the assignments she disliked, including two individuals who did so on October 3, the day before the False Allegations."  Mr. Lewis also states that there was a "plethora of negative feedback about Doe at the firm."

77.     This is false.  Ms. Kyle has survived multiple reductions in force, demonstrating her value to the Firm.  Her employment ended only in early July 2020, with the closing of the Firm's New York office.

78.     In fact, multiple partners regularly made comments that Ms. Kyle was doing an "amazing job" and that she was helpful, diligent, and dedicated.  Partners often remarked that they were impressed that Ms. Kyle made herself available almost 24/7, including for late night California filings, which meant Ms. Kyle would need to be working until 3:00 a.m. EST.

79.     On July 26, 2019, Mr. Lewis filed an Amended Complaint, in which he added Ms. Kyle, a previously unnamed sexual assault victim, to the pleadings as a "discovery defendant."  In addition, Mr. Lewis made several false and misleading categorizations in his naming of exhibits to his Amended Complaint.

80.     For example, Exhibit 6 to the Amended Complaint is labeled "False Accuser Inappropriate E-mail to Former Employer of Lewis."  In reality, this was simply an email asking for two users to be added to an account because the primary account holder (Lewis) was on administrative leave.  In the routine work email, Ms. Kyle simply stated a fact that was undeniably true.

81.     Inexcusably, Mr. Lewis also used the Amended Complaint as a tool to threaten Ms. Kyle and intrude upon her personal life.

82.     The Amended Complaint, states that Mr. Lewis "intends to seek discovery from the False Accuser including without limitation: (i) the purported 'unlicensed arranged marriage' (LAC ¶ 25); (ii) the origins and nature of her relationship with David Hecht; (iii) the False Accuser's deleted Twitter, deleted Facebook, deleted Quora and deleted Couchsurfing.com accounts, all of which deletions were done after the investigation started and constitute spoliation."

83.     In fact, Ms. Kyle had legally changed her name years before in order to protect her identity and escape an abusive arranged marriage. Mr. Lewis has, as described, used that information to threaten and pressure Ms. Kyle.

84.     Mr. Lewis's threats, which have no place in a complaint, were clear retaliatory conduct designed to instill fear in Ms. Kyle and discourage her from ever taking any action or testifying against Mr. Lewis.

85.     Mr. Lewis went beyond his legal pleadings to defame Ms. Kyle in the media and online, including as recently as June 9, 2020 in an article from Law360:

> With regards to Kyle, he said he has "very strong arguments against the privilege asserted" and is "also exploring whether David Hecht, with whom Jane Doe has a close relationship, will face exposure for Jane Doe's dishonesty and defamation." "Jane Doe has lied," he added. "Period. Hard stop."[1]

---

[1]     Ryan Boysen, *Ex-Partner Wants Sanctions In Pierce Bainbridge Fraud Fight*, Law360, https://www.law360.com/employment/articles/1280807/ex-partner-wants-sanctions-in-pierce-bainbridge-fraud-fight (last accessed April 7, 2021).

86.  Other statements published in the press include:

- "The firm exploited false allegations, by a staffer attempting to save her job, to defame me nationwide anddiscredit my truthful allegations, which the firm has said: 'if true, would amount to criminal activity.'"[2]

- "This is consistent with [LaVigne's] comments to me that the Putney report is inconclusive and that nobody at the Firm believes the false accuser."[3]

- "Lewis alleges in his complaint that he was placed on leave following 'demonstrably false allegations by a junior level employee who was used as a pawn.'"[4]

87.  Upon information and belief, Mr. Lewis was also responsible for a bevy of articles that were published on legal blogs, including LawFuel, as well as in African-American-focused publications, such as BlackNews.com, as Mr. Lewis attempted generate outrage in his favor while conspicuously omitting the fact that his victim, Ms. Kyle, is a woman of color.

88.  By way of example only, in the ABA Journal, Mr. Lewis stated, "The allegations are a complete fabrication, abject lies. This disgraceful and racist weaponization of #MeToo undermines real victims and detracts from a serious cause."[5]

---

[2]  Rich Shapiro, *Law Firm Representing Rudy Giuliani Beset by Sordid Allegations, Partner Exodus*, NBC News, https://www.nbcnews.com/news/us-news/law-firm-representing-rudy-giuliani-beset-sordid-allegations-partner-exodus-n1127906 (last accessed April 7, 2021).

[3]  Jack Newsham, *Pierce Bainbridge, Ex-Partner Trade Barbs and Dismissal Bids*, NYLJ, https://www.law.com/newyorklawjournal/2019/09/09/pierce-bainbridge-ex-partner-trade-barbs-and-dismissal-bids/ (last accessed April 7, 2021).

[4]  Jack Newsham, *Ex-Partner Accuses Pierce Bainbridge of Lodging Phony Sexual Assault Claims as Firm Alleges Extortion*, NYLJ, https://www.law.com/newyorklawjournal/2019/05/15/pierce-bainbridge-ex-partner-trade-toxic-allegations-of-extortion-misconduct-389-69033/ (last accessed April 7, 2021).

[5]  Debra Cassens Weiss, *Former Pierce Bainbridge Paralegal Sues Firm and Ex-Partner Over Alleged Sex Assault*, ABA Journal, https://www.abajournal.com/news/article/former-pierce-bainbridge-paralegal-sues-firm-fired-partner-for-alleged-harassment (dated August 6, 2020) (last accessed April 7, 2021).

89.     Upon information and belief, several of these articles were ghostwritten by Mr. Lewis, as evidenced by the use of the press contact email "LewisPress2215@gmail.com."

90.     Further, Mr. Lewis has continued this rhetoric on Twitter:



## G.     Mr. Lewis Filed a Retaliatory Lawsuit Against Ms. Kyle

91.     On January 27, 2020, Mr. Lewis filed a retaliatory lawsuit against Ms. Kyle in New York State Court.

92.     Mr. Lewis and his attorneys asserted these claims against a sexual assault victim (at a minimum, an accuser who deserves to be heard and treated with dignity) and dragged her into his food fight with Pierce Bainbridge in open court for the blatant purpose of punishing and intimidating her for raising sincere allegations, and seemingly in the hope of silencing her.

93.     The January 27, 2020 complaint is shot through with baseless accusations and vague, bellicose character assassination that is presented without any factual support.  Statements in the complaint worthy of a motion to strike include: "Jane Doe has not been truthful and generally lacks credibility," as well as assertions that she was surreptitiously reading Mr.

Pierce's emails (she was not doing this, although she did have authorization and proper, work-related access to do so), and the assertion that Ms. Kyle "panicked and tried to create security by lodging the false allegations."

94.     In addition to all of this, Mr. Lewis's complaint makes strange assertions and suppositions about Ms. Kyle with no apparent basis, such as stating that "it appears that Jane Doe, incorrectly believing the statute of limitations for defamation had lapsed, came forward with an entirely new and independent defamatory publication to demonize Lewis, attempt to give credence to her own falsehoods and help out her employer Pierce Bainbridge."

95.     This confusing assertion is not only false, but Mr. Lewis has no means of knowing Ms. Kyle's state of mind, and yet he gratuitously (and, at this point, habitually) included it in his pleading as just one more bit of litigation theatrics.

96.     When Ms. Kyle's counsel in the Lewis/Pierce Bainbridge litigation reached out to Mr. Lewis's counsel earlier this year to request that the outrageous claims by Mr. Lewis be withdrawn, Mr. Lewis's counsel demanded that Ms. Kyle perjure herself by recanting her allegations and representing instead that she had supposedly been put up to everything by Mr. Pierce (*i.e.*, they wanted her to affirm a completely false version of events).

97.     Mr. Lewis has therefore shown no hesitation to attempt to use the justice system for his own purposes and scare Ms. Kyle into silence and/or submission so that she might instead put forth a false story that benefits him.

98.     After the filing of the instant action, Defendant Lewis filed a Motion to Disqualify Ms. Kyle's counsel.  See Dkt. 13-15.

99. Upon the denial of this motion on November 12, 2020, an article about the ruling was posted in Law 360.[6]

100. In this article, Defendant Lewis is quoted as stating to the author: "Jane Doe, a liar, has worked at both law firms."[7]

101. These frivolous accusations have even led Ms. Kyle's current employer to the belief that they are being attacked by Mr. Lewis as a result of having Ms. Kyle in their employ. Lewis v. Pierce Bainbridge Beck Price & Hecht LLP, et al., Index No. 652931/2019, Dkt. Nos. 288-289 (N.Y. Cty. March 30, 2021) ("Last year, after learning that HP was employing his accuser, Lewis shifted some of his ire (and conspiracy theories) to HP in what appears to be further retaliation.") ("At least two of my clients, along with opposing counsel in one of the matters I was handling, were directly contacted by Lewis over social media and email, respectively, at various times in 2020. Lewis communicated with these clients and opposing counsel with the apparent intent to disparage me, by posting and attaching various materials, including misleading and defamatory content which he authored.").

**H. Pierce Bainbridge Is Strictly Liable for the Unlawful Actions of Mr. Lewis, a Partner, While He was Employed There**

102. Ms. Kyle was subjected to inexcusable abuse at the hands of Mr. Lewis, and Pierce Bainbridge, for its part, is strictly liable for the actions of former partner Don Lewis.

103. Where a plaintiff's harasser is a supervisor or an individual "empowered to take tangible employment actions against the victim," and "the supervisor's harassment culminates in

---

[6] Ryan Boysen, *Ex-Pierce Bainbridge Atty Can't DQ Wigdor In Defamation Suit*, Law 360, https://www.law360.com/articles/1328440/ex-pierce-bainbridge-atty-can-t-dq-wigdor-in-defamation-suit (last accessed April 7, 2020).
[7] Ms. Kyle has been referred to as "Jane Doe" in various court pleadings and in other defamatory statements made by Defendant Lewis.

a tangible employment action," then "the employer is strictly liable." <u>Vance v. Ball State Univ.</u>,

570 U.S. 421, 133 S. Ct. 2434, 2439 (2013); <u>see also</u> <u>Dall v. St. Catherine of Siena Med. Ctr.</u>,

966 F. Supp. 2d 167, 189 n.11 (E.D.N.Y. 2013).

104.    Here, Mr. Lewis, a partner at Pierce Bainbridge, was certainly Ms. Kyle's

supervisor in this context, and Ms. Kyle was impacted by his actions and whisper campaign

against her after the assault.  Therefore, Pierce Bainbridge also should be held liable for Mr.

Lewis's harassment and retaliation.

## I.    Donald Lewis was Ms. Kyle's Supervisor

105.    Mr. Lewis, as a Partner at Pierce Bainbridge, had significant decision-making and

managerial authority, including over subordinate employees, and therefore was Ms. Kyle's

supervisor under the relevant statutes.

106.    An article written by counsel for Mr. Lewis in multiple related actions states that

Mr. Lewis was "an Equity Partner and Co-Founder of the New York Office" at Pierce

Bainbridge.[8]

107.    In fact, John Pierce stated on multiple occasions that Mr. Lewis was his "proxy"

when it came to making important decisions.

108.    By way of example only, in August 2018 when Mr. Pierce was on trial, he

informed Mr. Lewis that "You have my proxy…completely trust your judgment."

109.    Mr. Lewis, as a partner and senior attorney, also had the power to and did give

work assignments to and manage the workload of Ms. Kyle and other employees of Pierce

---

[8]    Neal Brickman, *Former African American Partner Alleges Discrimination, Corruption and Cover-Up at Pierce Bainbridge Beck Price & Hecht LLP*, https://www.blacknews.com/news/don-lewis-african-american-partner-alleges-discrimination-corruption-pierce-bainbridge-beck-price-hecht-llp/ (last accessed April 7, 2020).

Bainbridge. In an assignment channel on Slack, Mr. Lewis would regularly request help to get support on cases, including by requesting research.

110. Mr. Lewis would also assign work to Ms. Kyle directly.

111. By way of example only, in late summer/early fall 2018, Mr. Lewis gave Ms. Kyle an assignment regarding a motion for default judgment.

112. Additionally, in June 2018, Mr. Lewis assigned Ms. Kyle to compile a spreadsheet of Mr. Lewis's contacts from his former employer.

113. By way of further example, in summer 2018, Mr. Lewis also directed Ms. Kyle to create a case matrix for use with current and future funder relations.

114. Mr. Lewis also spoke to other Partners at Pierce Bainbridge about Ms. Kyle's job performance and had significant influence over perceptions of her work.

115. Mr. Lewis was also an active member of the Recruiting Committee at Pierce Bainbridge and had, at a minimum, substantial influence over the hiring of employees. Mr. Lewis coordinated the hiring of Adam Ludemann, a former Associate at Pierce Bainbridge, on or about late summer/early fall 2018. Mr. Lewis was also involved in the hiring of Patrick Bradford, a former Partner at Pierce Bainbridge in the fall of 2018.

116. Further, Mr. Lewis lobbied for the Firm to terminate the employment of a high-ranking employee at the Firm and, upon information and belief, openly told other partners to stop working with her. Upon further information and belief, when the Firm ultimately terminated the employee, Mr. Lewis coordinated her exit from the Firm.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
#### *Against All Defendants*

117.    Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

118.    Defendants have discriminated against Plaintiff on the basis of her gender in violation of the NYSHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, *inter alia*, subjecting her to sexual harassment and assault and/or a hostile work environment.

119.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

120.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, physical illness, and emotional distress for which she is entitled to an award of monetary damages and other relief.

121.    Defendants' unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Aiding and Abetting Gender Discrimination in Violation of the NYSHRL)
#### *Against Defendant Lewis*

122.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

23

123.     By the above-described conduct, Defendant Lewis knowingly or recklessly aided and abetted, and directly participated in, the unlawful discrimination to which Plaintiff was subjected in violation of the NYSHRL.

124.     As a direct and proximate result of Defendant Lewis's unlawful discriminatory conduct and harassment in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary, physical, and emotional harm for which she is entitled to an award of damages.

### THIRD CAUSE OF ACTION
**(Retaliation in Violation of the NYSHRL)**
***Against All Defendants***

125.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

126.     Defendants have retaliated against Plaintiff on the basis of her protected activity in violation of the NYSHRL by subjecting Plaintiff to adverse actions because she engaged in protected activity, including, *inter alia*, subjecting her to a hostile work environment.

127.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

128.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, physical illness, and emotional distress for which she is entitled to an award of monetary damages and other relief.

129.     Defendants' unlawful retaliatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
### *Against All Defendants*

130.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

131.     Defendants have discriminated against Plaintiff on the basis of her gender in violation of the NYCHRL by subjecting Plaintiff to disparate treatment based upon her gender, including, *inter alia*, subjecting her to sexual harassment and assault and/or a hostile work environment.

132.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

133.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, physical illness, and emotional distress for which she is entitled to an award of monetary damages and other relief.

134.     Defendants' unlawful discriminatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting Gender Discrimination in Violation of the NYCHRL)
### *Against Defendant Lewis*

135.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs, as though fully set forth herein.

136.     By the actions described above, Defendant Lewis knowingly or recklessly aided and abetted, and directly participated in, the unlawful discrimination to which Plaintiff was subjected in violation of the NYCHRL.

137.     As a direct and proximate result of Defendant Lewis's unlawful discriminatory conduct and harassment in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary, physical, and emotional harm for which she is entitled to an award of damages.

138.     Defendant Lewis's unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
### *Against All Defendants*

139.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

140.     Defendants have retaliated against Plaintiff on the basis of her protected activity in violation of the NYCHRL by subjecting Plaintiff to adverse actions because she engaged in protected activity, including, *inter alia*, subjecting her to a hostile work environment.

141.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

142.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish, physical illness, and emotional distress for which she is entitled to an award of monetary damages and other relief.

143.     Defendants' unlawful retaliatory conduct was intentional, done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
**(Defamation Per Se)**
*Against Defendant Donald Lewis*

144.     Ms. Kyle hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs, as though fully set forth herein.

145.     Defendant Lewis made defamatory statements with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

146.     Defendant Lewis's statements constitute defamation *per se* because they impugn Ms. Kyle's honesty, trustworthiness, dependability, and professional fitness and abilities.

147.     Defendants Lewis's defamatory statements have harmed Ms. Kyle's professional reputation and standing in her industry, have caused her economic harm, have caused her to incur special damages in the form of actual pecuniary loss, including lost income, benefits, job security and opportunities for career advancement, and have caused her embarrassment, humiliation, and physical and emotional injury.

148.     As a direct and proximate result of Mr. Lewis's defamation, Ms. Kyle has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace, and physical and emotional distress.

149.     As a direct and proximate result of Mr. Lewis's conduct, Ms. Kyle has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

150.     Mr. Lewis's defamatory statements were malicious, willful, wanton, and done with reckless disregard for Ms. Kyle's rights.  Therefore, Ms. Kyle is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York and the City of New York;

B.     An injunction and order permanently restraining Defendants from engaging in any such further unlawful conduct, including the policies and practices complained of herein and any further retaliation and/or tortious conduct;

C.     An award of damages against Defendants in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all past and future monetary and/or economic damages;

D.     An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress and physical illness;

E.     An award of punitive damages against Defendants, in an amount to be determined at trial;

F.     Prejudgment interest on all amounts due;

G.      An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated:  April 7, 2021
      New York, New York

                        Respectfully submitted,

                        **WIGDOR LLP**

                        By: _____
                                Lawrence M. Pearson
                                Lindsay M. Goldbrum

                        85 Fifth Avenue
                        New York, NY 10003
                        Telephone:  (212) 257-6800
                        Facsimile:  (212) 257-6845
                        lpearson@wigdorlaw.com
                        lgoldbrum@wigdorlaw.com

                        *Counsel for Plaintiff*