**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

Damonie Earl, et al.,

*Plaintiffs*,

v.

The Boeing Company, et al.,

*Defendants*.

Civil Action No. 4:19-cv-00507-ALM

**PLAINTIFFS' REPLY TO SOUTHWEST'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL SOUTHWEST TO PRODUCE TEXTS AND TESTIMONY**

**(FILED UNDER SEAL)**

**TABLE OF CONTENTS**

INTRODUCTION ........ 1

I. RENEWED DEPOSITIONS OF SOUTHWEST'S PAST WITNESSES ARE NECESSARY AND APPROPRIATE TO INQUIRE ABOUT NEWLY-PRODUCED EVIDENCE AND TO PROBE AND ATTEMPT TO REMEDIATE SERIOUS DISCOVERY MISCONDUCT IN THIS CASE ........ 1

A. [redacted] ........ 5

B. [redacted] ........ 10

C. [redacted] ........ 12

D. [redacted] ........ 13

II. SOUTHWEST'S ASSERTION THAT ITS COURT-IMPOSED OBLIGATION TO PRODUCE *ALL* RELEVANT TEXT MESSAGES FROM *ALL* POTENTIAL WITNESSES IS "MOOT" IS BIZARRE (AND TO BE CLEAR, INCORRECT) ........ 14

III. THE ORDER TO SHOW CAUSE SHOULD BE MODIFIED TO INQUIRE ABOUT SOUTHWEST'S RECENT AND ONGOING VIOLATIONS OF THE COURT'S DISCOVERY RULES AND ORDERS ........ 16

CONCLUSION ........ 17

## INTRODUCTION

On April 26, 2021, shortly after the class certification hearing in this matter, Defendant Southwest Airlines filed a response (Dkt. 417 ("Southwest Opposition")) to Plaintiffs' April 12, 2021, Motion to Compel Southwest to Produce Texts and Testimony (Dkt. 396 ("Motion")). Southwest's Opposition is remarkable, for all the wrong reasons. Most notably, the Opposition not only fails to rebut Plaintiffs' Motion in any meaningful respect, but in fact affirmatively establishes serious discovery misconduct over the past year by Southwest Airlines in connection with its witnesses' text messages. (It is also demonstrably incorrect on nearly every factual point it asserts—often in bold italics.)

Southwest's Opposition simply underscores the necessity and urgency of each prong of relief sought in Plaintiffs' Motion. The Court should issue an order (i) compelling the immediate production—and, to the extent not yet performed, search for, collection, and preservation—of *all* relevant text messages, from *all* potential witnesses, by Southwest; (ii) compelling the production of a knowledgeable corporate witness on the actual facts of Southwest's collection, preservation, and production of witnesses' text messages, including over the two months; (iii) compelling the re-production, for a limited duration, of Southwest's three previous fact witnesses in this case, after full near-term production of their text messages; and (iv) modifying the outstanding OSC against Southwest to inquire about its compliance with Court rules since the OSC was issued.

## I. RENEWED DEPOSITIONS OF SOUTHWEST'S PAST WITNESSES ARE NECESSARY AND APPROPRIATE TO INQUIRE ABOUT NEWLY-PRODUCED EVIDENCE AND TO PROBE AND ATTEMPT TO REMEDIATE SERIOUS DISCOVERY MISCONDUCT IN THIS CASE

Southwest's Opposition argues that Plaintiffs should be denied the opportunity to properly depose past Southwest witnesses Al Kasher, Bill Lusk, James Sheppard, and David Bunin because:

> [t]o be entitled to a second deposition, Plaintiffs must show "good cause" and show that each witness either was "inhibited from

> providing full information at the first deposition or where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition."
>
> . . . Plaintiffs' request for "do-over" depositions is not based on specific instances of text messages with unique content not found in Southwest's overall document production, but rather is based on the general allegation that Plaintiffs did not have a complete production of text messages at the time of the initial depositions.

(Southwest Opp. at 14-15 (footnotes omitted) (quoting *Kleppinger v. Tex. Dept. of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012) (quotation marks and citation omitted).) Southwest is wrong.

First, and as usual, Southwest's legal analysis leaves important things out; here, that the applicable federal rule does not in fact require "good cause" for a Court to order a witness re-produced for deposition. FED. R. CIV. P. 30(a)(2)(A)(ii), governing "When a Deposition May Be Taken" where "the deponent has already been deposed in the case," simply requires "leave of court," and does not by its terms (or in its Advisory Committee Notes) recite a "good cause" standard—an issue that the very case cited by Southwest *in its Opposition* acknowledges. *See Kleppinger*, 283 F.R.D. at 335 n.7 ("The Court notes that, unlike Rule 30(d)(1) where the advisory committee's notes state that a "good cause" standard applies when making a determination of whether a deposition should exceed the rule's duration limit, it is not explicit in either Rule 30(a)(2) or its advisory committee's notes that a 'good cause' standard applies when determining whether to reopen or retake a deposition."). To be sure, some courts (including the court in *Kleppinger*) have evaluated whether "good cause" exists in determining whether to grant leave under Rule 30(a)(2), *see id.* (citing cases from D. Utah, S.D. Ohio, and D.S.D.), but it is incorrect (and unhelpful to the Court) to assert that "Plaintiffs must show 'good cause'" (Southwest Opp. at 14) to reopen or retake a deposition in this case.

With that said, a *different* Federal Rule not addressed by Southwest in its Opposition, FED. R. CIV. P. 30(d)(1) ("[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours"), *does* impose a "good cause" standard, *see, e.g., Kleppinger*, 283 F.R.D. at 333 (collecting cases), but the particular test under that rule is not the one Southwest identifies:

> The court *must allow* additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination.

FED. R. CIV. P. 30(d)(1) (emphasis added).

In any event, no matter how sliced—the Rule 30(a)(2) standard or the Rule 30(d)(1) standard—Plaintiffs have met it here for Southwest witnesses Alan Kasher, Bill Lusk, James Sheppard, and David Bunin. [REDACTED] .[1] Southwest has also explained that it never bothered to collect *any* text messages from nearly every witness in this case; never looked at any of its deponents' mobile phones to check for text messages prior to their depositions—[REDACTED]; and *to this day* refuses to produce *all* relevant text messages from *all* Southwest witnesses. Then last Monday, Southwest (i) expressly argued at the Class Certification Hearing that Plaintiffs lacked evidence on issues of scienter and

[1] It is wearying and at this point inexplicable that Southwest continues to assert that its employees' text messages are not uniquely relevant or do not comprise "unique content not found in Southwest's overall document production." (*See* Southwest Opp. at 14.) Non-limiting examples of Southwest text messages—drawn solely from the inexplicably limited text messages that have to date been produced—are in the record at Dkt. 379 (Reply to Response to OSC), Dkt. 396 (Motion to Compel), Dkt. 412 (Reply to Second Supplemental Response to OSC), and Dkt. 425 (Motion for Excess Pages). Plaintiffs submit that the overwhelming, specific relevance and uniqueness of Southwest's (mostly still unproduced, and to an as-yet-unknown extent uncollected and unpreserved) text messages to essentially every contested issue in this action cannot seriously be disputed on the present record.

proximate causation (Apr. 26, 2021 Hearing. Tr. at 107:4-110:17, 114:4-116:15, 138:22-139:25); (ii) argued that "at no point since the entry of the Show Cause Order have Plaintiffs take any further specific steps to produce text messages" (Opp. at 2); and (iii) argued that Plaintiffs should have "attempted to supplement their certification briefs or asked to postpone the [class certification] hearing based on [unproduced] text messages" (*id.*).

Given the above, every future Southwest deponent will be examined on both (1) the content of their and others' text messages (central to every aspect of proof in this case); and (2) their efforts and communications to collect, preserve, and produce these messages, from the date this case was filed to the date of their deposition (central to Plaintiffs' investigation of and attempts to remediate Southwest's widespread—and apparently ongoing—non-collection, non-preservation, and non-production of its witnesses' most relevant evidence in this action for nearly two years of case pendency). Southwest's past fact deponents—Mr. Kasher, Mr. Lusk, Mr. Sheppard, and Mr. Bunin—need to answer the same questions. District courts in this circuit have held that "'new information' . . . that creates the need for further questioning," *O'Connor v. Cory*, 2018 WL 5016291, *2 (Oct. 16, 2018); *see also Kleppinger*, 283 F.R.D. at 333, can be, for example, (i) new issues in the case, *O'Connor*, 2018 WL 5016291 at *2-*3 (new affirmative defense justified re-opened depositions of multiple defendants), and "the production of new documents," *id.* at *3. Here, both are present: in the past six weeks, after the above-mentioned Southwest depositions, Southwest has produced approximately 3,000 relevant text messages (and should be ordered to produce thousands more), and an ongoing and pervasive spoliation issue has been revealed and made indisputably real through Southwest's productions and filings. Mr. Kasher, Mr. Lusk, Mr. Sheppard, and Mr. Bunin have relevant knowledge about both issues. Plaintiffs respectfully request leave to ask about this new information, under oath, as contemplated by the Federal Rules.

In the unlikely event the above showing is not "specific" enough for Southwest Airlines, Plaintiffs further offer the following:

**A.**

The increasingly troubling saga of Southwest Executive Vice President Alan Kasher—the first deponent in this case, and one of the highest-level executives in the entire company (*see* Exh. A (https://www.southwestairlinesinvestorrelations.com/corporate-governance/senior-executive-leaders) (accessed May 4, 2021))—is by now well-known to the Court, and Plaintiffs will not belabor it here.[2]



[2] Initial background of Mr. Kasher's July 2020 text message "collection" is set forth in pages 4-10 of Plaintiffs' Motion (Dkt. 412). (*See also id.* at 13-18 (reviewing Kasher text messages).) However, a lot of new information about the Kasher debacle has come out since the filing of Plaintiff's Motion; additional exhibits and context regarding Kasher are set forth in Dkt. 421 at 1-3 & 9-13, and in Dkt. 425 at 3-4 & 8-9, among other places.

[redacted] (Exh. B (Examples of Kasher-Van de Ven texts produced Apr. 21, 2021)); [redacted] (*see, e.g.,* Exh. C (SWA_Earl_01437172)); [redacted] (Exh. D (SWA_Earl_01436624) [redacted] (*see, e.g.,* Exh. E (SWA_Earl_01436631) [redacted], and [redacted] (*see, e.g.,* Exh. F (SWA_Earl_01437089); and [redacted] (Exh. G (SWA_Earl_01434582.)) It its very last volume of text messages, produced April 22, 2021, Southwest also produced the text message Mr. Dunne requested in July 2020 (the one that Southwest's outside counsel Mike Swartzendruber replied had "nothing to do with the MAX," and threatened to pull Mr. Kasher's deposition over, *see* Dkt. 412 at 8). [redacted]



(Exh. H (SWA_Earl_01437372).)

In numerous recent filings, Plaintiffs have raised concerns about the accuracy (and, at a certain point, the veracity) of Southwest's statements to this Court about what Southwest knew about and did to collect its executives' and other witnesses' text messages, in view of the July 2020 issues with Mr. Kasher—and what ended up being on his phone. (*See, e.g.,* Dkt. 379 (Reply to Southwest Response to OSC) at 7-12; Dkt. 396 (Motion) at 4-10, 13-24, 27-33, 35-36; Dkt. 412 (Reply to Second Supplemental Response to OSC) at *passim*; Dkt. 425 (Motion for Additional Pages) at 2-4, 8-9; *compare* Exh. B (limited excerpt of Kasher-VdV text messages collected from Kasher's iPhone in March 2021) *with* Dkt. 350 (Southwest Response to OSC) at 2 ("***Until receiving that [Feb. 28, 2021] letter, Southwest's counsel did not have reason to believe that Mr. Van de Ven had any relevant text messages***" (bold italics in original)) *and* Southwest Opp. at 10 ("Plaintiffs' suggestion that Mr. Kasher texted wth Mr. Van de Ven and that Southwest possessed that text as of Mr. Kasher's deposition is ***false***" (bold italics in original)).)



Southwest's Opposition ups the ante by affirmatively presenting the incredibly disturbing—and *per se* sanctionable, if true—position that

Setting aside Southwest Airlines' apparent failure to grasp that when all indisputably know about something,[3] the company knows

[3]

about it, the fact that Southwest Airlines let a high-level executive [redacted] and to this day has not explained [redacted] collected from Al Kasher's phone in March 2021 (*see, e.g.*, Exhs. I (SWA_Earl_01434546); J (SWA_Earl_01434593); K (SWA_Earl_01435533); L (SWA_Earl_01435534); Dkt. 412 at 12-13 & Exhs. MM-QQ); Dkt. 425 at 2-3 & Exhs. A-B), is beyond "good cause" for a new deposition. This justifies a full-on forensic examination into Mr. Kasher's electronic devices, into his cloud storage accounts, and into the metadata of Mr. Kasher's iPhone and iCloud to determine what exactly [redacted]—followed by a full deposition as to the how and why.

There are also hundreds of relevant Kasher text messages that have already been produced that justify further examination of Mr. Kasher on the factual merits, but this hardly even rates in comparison to the incredibly disturbing [redacted]

---

[redacted]



**B.**

[4] On August 21, 2020, Plaintiffs deposed Mr. Lusk—then Southwest Senior Manager of Compliance and Daily Operations.

(Exh. M (Lusk Dep. Tr.) at 259:14-17.) Mr. Bathaee then ended Mr. Lusk's deposition.

On April 19, 2021—after Plaintiffs filed their Motion, but before Southwest filed its opposition arguing that "Plaintiffs' request for 'do-over' depositions is not based on specific instances of text messages with unique content not found in Southwest's overall document production," and that the Motion should be denied "particularly as to . . . Mr. Lusk" (Dkt. 417 at 14-15)—Southwest produced the below text message:

---

[4] Incredibly, Southwest has to this day apparently not collected and produced a *single* Bill Lusk text message from one of his devices. Per metadata, every Lusk text message discussed in this section comes from some other witness's phone.



(Exh. N (SWA_Earl_01434425).)

This is the lede of the Seattle Times article sent by [redacted] [redacted] (the full article is Exhibit O to this Reply):




A former Boeing official who played a key role in the development of the 737 MAX has refused to provide documents sought by federal prosecutors investigating two fatal crashes of the jetliner, citing his Fifth Amendment right against self-incrimination, according to a person familiar with the matter.

Mark Forkner, Boeing's chief technical pilot on the MAX project, invoked the privilege in response to a grand jury subpoena issued by U.S. Justice Department prosecutors looking into the design and certification of the plane, the person said.

Invoking the Fifth to avoid testifying, while a legal right, is sometimes interpreted as an admission of guilt. Its use to resist a subpoena for documents is less common and may only imply a dance between prosecutors and defense attorneys, legal experts say.

Forkner, now a first officer for Southwest Airlines, referred questions to his attorney when reached by phone. His attorney, David Gerger, of Houston, did not respond to inquiries.

Justice Department spokesman Peter Carr declined to comment. Boeing also declined to comment.

(Exh. O (https://www.seattletimes.com/business/boeing-aerospace/former-boeing-official-subpoenaed-in-737-max-probe-wont-turn-over-documents-citing-fifth-amendment-protection/).)



**C.**

Given what has occurred in the past six weeks, Southwest in-house lawyer James Sheppard—who has litigated this case since its inception, and as far as Plaintiffs can tell is the person most knowledgeable at Southwest Airlines about its "official" position as to its collection, preservation, and (non-)production of relevant text messages—needs to come back for a deposition

5



regardless of whether he is put up by Southwest as its (appropriately prepared, this time) corporate representative on its text message discovery issues in this case. Beyond purportedly knowing next to nothing about text messaging issues everyone else in the entire company—including [redacted]—appears to have personally known about going back to 2019, Mr. Sheppard's answers on questions pertaining to text message production, collection, and production—particularly with respect to Mark Forkner (*see, e.g.,* Exh. T (Sheppard Dep. Tr. at pp. 134-41)) do not jibe with what has recently been produced in this case, [redacted] (*see, e.g.,* Exh. U (SWA_Earl_01432892)). Additionally, Mr. Sheppard has now submitted two fact declarations in Southwest responses to the Court's OSC. Plaintiffs are entitled to ask Mr. Sheppard about all of the above, under oath, given recent developments.

This is in addition to—but could feasibly be done in conjunction with—production of a knowledgeable corporate witness by Southwest Airlines on text message collection, preservation, and production issues in this case, including what has gone on in the past two months and the Kasher debacle.

**D.** [redacted]

The issues with Dave Bunin's deposition need little rehash here. (*See generally* Motion at 10-11; Exh. V (Feb. 21-24, 2021 Email Correspondence).) [redacted]

[redacted][6]

There is good cause under both Rule 30(a)(2) and Rule 30(d)(1) to order that Mr. Bunin's deposition be reopened, once all his text messages have been produced. Mr. Bunin's testimony is required both as to the content of whatever Bunin text messages Southwest eventually finds and produces, and as to what happened to the many others that appear to be missing, and when.

## II. SOUTHWEST'S ASSERTION THAT ITS COURT-IMPOSED OBLIGATION TO PRODUCE *ALL* RELEVANT TEXT MESSAGES FROM *ALL* POTENTIAL WITNESSES IS "MOOT" IS BIZARRE (AND TO BE CLEAR, INCORRECT)

Southwest bizarrely argues that "the request for further text message production is moot." First of all, Southwest's obligation to produce *all* relevant text messages from *all* relevant witnesses is not a *Plaintiff-sourced* "request," but a Court-ordered obligation, under numerous discovery orders, including the Order Governing Proceedings in this case. It is nonsensical in the extreme (but not particularly surprising) that Southwest Airlines would crow that it had "mooted" a Court-imposed discovery obligation: that it immediately collect, preserve, and produce *all documents relevant to the claims and defenses in this case*, which Southwest now (after a hearing, OSC, and motion practice specifically on text messages) must know *includes all relevant text messages from all Southwest witnesses*. Plaintiffs noted in their Motion that they should never have

---

[6] [redacted] Yet as Southwest argues as though it's a good thing, Southwest has to date only collected and produced ***thirty-nine*** Dave Bunin text messages. (Southwest Opp. at 15.)

had to move for this relief in the first place—Plaintiffs simply seek what the Court had already ordered produced in 2019—but nevertheless, the record is what it is, a month later, with Southwest just sitting on thousands of relevant text messages it has already collected, and simply declining to try to collect or preserve tens of thousands of others.[7]

Plaintiffs' concern here is not abstract, or overblown, or mischaracterized. Attached as Exhibits X-GG are the load metadata for *all* Southwest's native text message productions (ten spreadsheets, with the file names VOL0062.xlsx through VOL0074.xlsx). These spreadsheets include a "CUSTODIAN" field for each text message produced, which Plaintiffs understand to refer to the device a text message was collected from. Many custodians with hundreds or even many thousands of emails produced in this case have no more than two dozen text messages with their "CUSTODIAN" label; many have ***zero*** text messages produced from their custody. Among the key Southwest witnesses—many represented to this Court to have been ***collected from in this case*** for whom Southwest has produced ***zero*** custodial text messages are:

- [redacted]
- [redacted]
- [redacted]
- [redacted]
- [redacted]

---

[7] It hardly matters given the senselessness of the argument that a court-imposed production obligation is "moot," but contemporaneous written communications between counsel and filings by Plaintiffs in this case flatly refute Southwest's story on "mootness." (*See* Exh. W (Apr. 13-14, 2021 Email Correspondence); Dkt. 412 at 1-11 (describing ongoing deficiencies in Southwest production and commitments after alleged "mootness" meet-and-confer); *cf.* Dkt. 404 (Apr. 14, 2021 Response to Notice) at *passim* (explaining that Plaintiffs' Motion was properly authorized, and the sought relief ripe for decision).)

[redacted] [8] Given the indisputable non-preservation and indeed [redacted] by certain custodians of part or all of their relevant text messages, as well as the obviously sensitive nature of what Southwest witnesses say in text messages rather than emails (to wit, the truth—for the most part), it is absolutely beyond the pale that Southwest continues to stonewall on producing *all* relevant text messages from *all* Southwest witnesses, including *all* sides of *all* conversations—and to search for and find relevant metadata for all key witnesses, to determine what they have deleted since the filing of this case in July 2019.

One final note—Southwest appears to argue that its production burden for text messages should be lessened because it is harder, more intrusive, and more expensive to adequately search for, preserve, collect, and produce text messages than emails and attachments. *Of course* this is correct—***that is why Southwest's witnesses bury the truth about this case in text messages in the first place***. It simply cannot be the case that Southwest gets a pass from producing relevant, irreplaceable evidence in this action because ***its own witnesses have intentionally put that evidence in a hard-to-collect format***.

## III. THE ORDER TO SHOW CAUSE SHOULD BE MODIFIED TO INQUIRE ABOUT SOUTHWEST'S RECENT AND ONGOING VIOLATIONS OF THE COURT'S DISCOVERY RULES AND ORDERS

In its final section, Southwest's Opposition argues that Plaintiffs' request to modify the OSC to include Southwest's recent discovery conduct is "unnecessary" because "Southwest kept the Court (and Plaintiffs) apprised of the status of its text message production on a near-constant

---

[8] [redacted]

basis through the filing of its Show Cause Response [Dkt. 350], First Supplemental Show Cause Response [Dkt. 377], and Second Supplemental Show Cause Response [Dkt. 410]." (Southwest Opp. at 15.) Plaintiffs agree that Southwest has indeed been filing things near-constantly with the Court in the past six weeks—because Plaintiffs have had to near-constantly correct inaccurate or materially incomplete representations about Southwest's text message production from these filings. (*See, e.g.,* Dkt. 379 (Reply to Response to OSC), Dkt. 396 (Motion to Compel), Dkt. 404 (Response to Notice), Dkt. 412 (Reply to Second Supplemental Response to OSC), and Dkt. 425 (Motion for Excess Pages).) This doesn't make a Court-ordered inquiry into Southwest's ongoing compliance with applicable rules and orders regarding its text messages collection, preservation, and production efforts unnecessary; the situation is quite the opposite, as recent filings should make clear.

**CONCLUSION**

The Court should issue an order (i) compelling the immediate production—and, to the extent not yet performed, search for, collection, and preservation—of *all* relevant text messages, from *all* potential witnesses, by Southwest; (ii) compelling the production of a knowledgeable corporate witness on the actual facts of Southwest's collection, preservation, and production of witnesses' text messages, including over the two months; (iii) compelling the re-production, for a limited duration, of Southwest's three previous fact witnesses in this case, after full near-term production of their text messages; and (iv) modifying the outstanding OSC against Southwest to inquire about its compliance with Court rules since the OSC was issued.

Dated: May 4, 2021

Respectfully submitted,

/s/ Brian J. Dunne
Yavar Bathaee (NY 4703443) (Lead Counsel)
yavar@bathaeedunne.com
Brian J. Dunne (CA 275689)
bdunne@bathaeedunne.com
Edward M. Grauman (TX 24081931)
egrauman@bathaeedunne.com
Andrew Wolinsky (NY 4892196)
awolinsky@bathaeedunne.com
**BATHAEE DUNNE LLP**
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (332) 205-7668

*Attorneys for Plaintiffs*

John Jeffrey Eichmann (CA 227472)
jeff@dovel.com
Gregory S. Dovel (CA 135387)
greg@dovel.com
Simon Franzini (CA 287631)
simon@dovel.com
Julien A. Adams (CA 156135)
julien@dovel.com
Jonas Jacobson (CA 269912)
jonas@dovel.com
Christin Cho (CA 238173)
christin@dovel.com
Rick Lyon (CA 229288)
rick@dovel.com
**DOVEL & LUNER, LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066

*Attorneys for Plaintiffs*

Elizabeth L. DeRieux (TX 05770585)
ederieux@capshawlaw.com
S. Calvin Capshaw (TX 03783900)
ccapshaw@capshawlaw.com
**CAPSHAW DERIEUX LLP**
114 E. Commerce
Gladewater, Texas 75647
Tel: (903) 236-9800
Fax: (903) 236-8787

*Attorneys for Plaintiffs*

**Certificate of Service**

I certify that the above document was served on counsel of record for all parties on the above listed date via the ECF filing system.

*/s/ Brian J. Dunne*

**Certificate of Authorization to Seal**

Under the Stipulated Protective Order entered by the Court (Dkt. No. 132), and in compliance with LR CV-5(7), I hereby certify that this document and any sealed attachments are properly filed under seal.

*/s/ Brian J. Dunne*