# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DAMONIE EARL, ET AL., § | |
| § | |
| Plaintiffs, § | Civil Action No.  4:19-cv-507 |
| § | Judge Mazzant |
| v. § | |
| § | |
| THE BOEING COMPANY, ET AL., § | |
| § | |
| Defendants. § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Leave to Rely upon the Supplemental Report of Dr. Greg Allenby (Dkt. #235). Having considered the Motion and the relevant pleadings, the Court concludes that the Motion should be granted.

### BACKGROUND

This case arises out of allegations made by Plaintiffs that Defendants The Boeing Company ("Boeing") and Southwest Airlines Co. ("Southwest") colluded to cover up fatal defects in Boeing's 737 MAX 8 aircraft and encourage public confidence to fly aboard these aircrafts while aware of the defects (Dkt. #165). Defendants deny these allegations (Dkts. #191–92).

Under the operative scheduling order, September 10, 2020, was the parties' deadline to designate all opening expert witnesses related to class certification and serve all opening expert reports related to class certification, and October 15, 2020, was the parties' deadline to designate all rebuttal expert witnesses related to class certification and serve rebuttal expert reports related to class certification (Dkt. #117 at pp. 1–2). Dr. Greg Allenby ("Allenby"), one of Plaintiffs' experts, served his opening expert report on September 10, 2020 (Dkt. #235 at p. 4). Then on

October 15, 2020, four experts served rebuttal reports to Allenby's opening report (Dkt. #235 at p. 6). Plaintiffs gave these reports to Allenby on October 23, 2020 (Dkt. #248 at p. 4).

On November 11, 2020, Allenby completed the preparation of, and Plaintiffs served, "a ten-page supplemental report" (the "Report")[1] that "addresse[d] the criticisms made by" Defendants' rebuttal reports (Dkt. #235 at p. 4; *see* Dkt. #235, Exhibit 7). Plaintiffs purport that the Report summarizes Allenby's opening report and explains the initial analysis in light of Defendants' rebuttal reports (Dkt. #235 at p. 7). After receiving the Report, Defendants objected to it (Dkt. #235 at p. 8).

On November 18, 2020, Plaintiffs filed their Motion for Leave to Rely upon the Supplemental Report of Dr. Greg Allenby (Dkt. #235), currently before the Court. On December 2, 2020, Defendants jointly filed a response (Dkt. #248). On December 10, 2020, Plaintiffs filed their reply (Dkt. #267). And on December 18, 2020, Defendants jointly filed a sur-reply (Dkt. #270).

Plaintiffs seek permission to rely on the Report via two avenues: Rule 26(e)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure. Because the Rule 16(b)(4) analysis is dispositive, the Court does not engage the Rule 26(e)(2) argument.

## LEGAL STANDARD

The Federal Rules of Civil Procedure normally require courts to issue scheduling orders. *Hancock v. Chi. Title Ins. Co.*, 263 F.R.D. 383, 393 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011). And in its standard-form scheduling order, the Court sets deadlines for the parties' disclosure of expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2) (Dkt. #30 at pp. 2, 8). *See Petrone v. Werner Enters., Inc.*, 940 F.3d 425,

---

[1] The parties disagree on the Report's nomenclature. *Compare, e.g.*, (Dkt. #235 at p. 12), *with, e.g.*, (Dkt. #248 at p. 8). For simplicity's sake, the Court refers to the document at issue as "the Report."

434 (8th Cir. 2019). As such, any modification to the scheduling order is subject to Rule 16(b)(4), which "provides that a scheduling order 'may be modified only for good cause and with the judge's consent.'" *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting FED. R. CIV. P. 16(b)(4)).

The focus of the 16(b)(4) inquiry is good cause. *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019); *see, e.g.*, *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012). To satisfy this requirement, "the party seeking to modify the scheduling order has the burden of showing 'that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Squyres v. Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015) (quoting *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam)); *see, e.g.*, *Maiden Biosciences, Inc. v. MPM Med., Inc.*, No. 3:18-CV-1354-D, 2019 WL 935478, at *2–4 (N.D. Tex. Feb. 26, 2019). "To determine good cause, courts 'consider four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Earl v. Boeing Co.*, No. 4:19-CV-507, 2020 WL 5993785, at *1 (E.D. Tex. Oct. 9, 2020) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 735 (5th Cir. 2018)). As long as good cause exists, Rule 16(b)(4) "gives district courts broad discretion in enforcing the deadlines in their scheduling orders." *Batiste v. Lewis*, 976 F.3d 493, 500 (5th Cir. 2020); *see* 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.2 (3d ed.) ("The use of the good-cause standard, rather than allowing modification only in cases of manifest injustice as is done for other pretrial orders, indicates that there may be more flexibility in allowing some relief." (footnote omitted)).

3

## ANALYSIS

Regardless of characterization, the parties were required to file all forms of expert reports by October 15, 2020 (Dkt. #117 at p. 2). Plaintiffs filed the Report on November 11, 2020 (Dkt. #235 at p. 7). Because Plaintiffs filed the Report after the applicable deadline passed, Plaintiffs must show good cause to modify the scheduling order under Rule 16(b)(4). As such, the Court considers the quartet of good-cause factors to determine if a modification to the scheduling order may be granted. *See Shepherd ex rel. Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 287–88 (5th Cir. 2019).

Beginning with Plaintiffs' explanation for the failure to timely file the Report, Plaintiffs articulate that they "were not aware of—and could not have been aware of—Defendants' . . . criticisms" of Allenby's expert report prior to the filing deadline (Dkt. #235 at pp. 12–13; *see* Dkt. #267 at p. 7). Moreover, Plaintiffs state that after Allenby received and analyzed Defendants' rebuttal reports, Allenby "worked diligently with Plaintiffs' counsel to prepare" the Report (Dkt. #235 at p. 13). Defendants do not see things the same way, arguing that Allenby knew or should have known of "the bases for these criticisms because they rely primarily on . . . Allenby's own writings to critique aspects of his methodology" (Dkt. #270 at p. 6 (emphasis omitted); *see* Dkt. #248 at p. 10). As such, Defendants claim that this explanation for failing to timely file the Report is not enough (Dkt. #270 at p. 6).

Plaintiffs have the better of this factor. Defendants served their rebuttal reports on October 15, 2020 (Dkt. #235 at p. 6). Allenby served the Report to Defendants on November 11, 2020 (Dkt. #235 at p. 7). Not only is this length of time indicative of Allenby's diligence in turning around a responsive opinion, but Allenby could not have reasonably filed any form of responsive expert report by the scheduling-order deadline of October 15, 2020—the same day Defendants

served the rebuttal reports (*see* Dkt. #117 at p. 2; Dkt. #235 at p. 6).  Therefore, Plaintiffs' explanation for failure to timely file the Report weighs in favor of modification.[2]

Next, considering the importance of the Report, Plaintiffs maintain the Report's critical nature to the litigation because Allenby is "Plaintiffs' only expert in the field of conjoint analysis"—as such, Plaintiffs claim he is "the only one who can respond to the criticisms of the conjoint study he designed and performed in this case, and he is the only one who can provide the supplemental opinions set forth in his supplemental report" (Dkt. #235 at p. 13).  Further, Plaintiffs offer that without Allenby's opening expert report and the Report, the classes Plaintiffs propose will not be certifiable, which demonstrates the pivotal character of Allenby's expertise to the case (Dkt. #235 at p. 13).  In response, Defendants contend that the Report cannot be important because "it purports to change nothing about" Allenby's opening expert report (Dkt. #248 at p. 10).

Here again, Plaintiffs' argument fares better.  At multiple points in the class-certification briefing, Defendants indicate that Allenby's testimony is wholly defective and should be stricken under *Daubert*.  And as Defendants state in their briefs, without Allenby's expert testimony, the Court cannot certify the putative classes (Dkt. #302 at p. 50; Dkt. #303 at p. 14; Dkt. #388 at p. 47; Dkt. #389 at p. 41).  Plaintiffs agree with this contention (Dkt. #431 at p. 188:1–5).  Because "the class certification decision is generally the most important aspect of a class action case," 5 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 7:18 (5th ed.), the importance of Allenby's testimony is apparent.  Therefore, this factor weighs strongly in Plaintiffs' favor.

---

[2] Defendants also argue that Plaintiffs' have no right to supplement Allenby's opening report in this fashion (Dkt. #248 at p. 10).  But this point makes little sense.  Defendants are correct that Plaintiffs cannot serve the Report as of right—they must move for modification of the scheduling order, which is exactly what Plaintiffs are doing in the Motion (*see* Dkt. #235).  In Plaintiffs' own words, if they were allowed to serve the Report as of right, "then there would be no need to determine whether there was good cause for serving [the Report] in the first place" (Dkt. #267 at p. 7).

5

As for the potential prejudice in allowing the Report, Plaintiffs state that they served the Report on Defendants eight days before Defendants deposed Allenby (Dkt. #235, Exhibit 1 at p. 2). On account of this timing and that the contents of the Report "do[] not change [Allenby's] prior opinions," Plaintiffs argue that Defendants have not been prejudiced for 16(b)(4) purposes. Defendants counter that introducing the Report after Defendants' experts served rebuttal reports "deprives Defendants' experts of the opportunity to rebut" the Report (Dkt. #248 at p. 10). Further, Defendants maintain that the Report prejudices them because Plaintiffs, by introducing the Report, seek to bend the rules of discovery while Defendants aim to abide by them (Dkt. #270 at p. 7).

This factor weighs in Plaintiffs' favor for several reasons, starting with Defendants' own admission that the Report does not cause prejudice. In their sur-reply, Defendants state that the Report is not "damaging" and serves only to confirm that Allenby's "original report is unreliable" (Dkt. #270 at p. 7 n.3). The Court finds this statement probative of the Report's nonprejudicial nature.

In addition, Defendants' justifications for their assertions of prejudice ring hollow. For one thing, Defendants *did* respond to the Report in various forms. Eight days after receiving the Report, Defendants deposed Allenby and asked questions about the Report (Dkt. #267 at p. 8). Both Defendants also discussed and criticized the Report in their briefing in opposition to Plaintiffs' motion for class certification (*see* Dkt. #303, Exhibits 1, 23; Dkt. #388, Exhibit 1; Dkt. #389, Exhibit 1). It is difficult to understand how Defendants have been prejudiced by the Report when they have also taken the opportunity at multiple points in the litigation to attack its contents.

Just as well, when Defendants claim they have been prejudiced by the Report because Plaintiffs "refus[e] to play by the rules" (Dkt. #270 at p. 7), this is not a serious argument. Plaintiffs are unequivocally "playing by the rules." Through the Motion, they seek to file the Report on the

record after the deadline for such documents has passed. The Federal Rules of Civil Procedure allow for materials like the Report to be filed after a scheduling-order deadline when there is good cause and the presiding judge consents. FED. R. CIV. P. 16(b)(4). Plaintiffs are in the process of demonstrating good cause and obtaining consent from the Court for such action. And just because Defendants did not seek leave to file additional disclosures does not mean they can self-inflict prejudice to prevent Plaintiffs from attempting to file the Report. *Cf. Cameron Cnty. Hous. Auth. v. City of Port Isabel*, 997 F.3d 619, 623 (5th Cir. 2021). This argument fails, and the 16(b)(4)-prejudice factor weighs in Plaintiffs' favor.

Finally, regarding the continuance factor, Plaintiffs argue that a continuance is unnecessary and that Defendants are not actually requesting one (Dkt. #267 at p. 8). Defendants counter that a continuance is unavailable, and they will have to bear the cost of responding to the Report in motions practice (Dkt. #248 at p. 11).

Plaintiffs' position wins out here. Nowhere in the response or sur-reply do Defendants actually request a continuance. Typically, granting a continuance is for the purpose of allowing additional discovery or time for the nonmovant to adjust their resources and strategy in response to a modification of the scheduling order. *See Kovalchuk v. Wilmington Sav. Fund Soc'y, FSB*, No. 4:20-CV-186-SDJ, 2021 WL 1015950, at *3 (E.D. Tex. Mar. 16, 2021). But Defendants have amply responded to the Report, *supra* p. 6, and continuance does not appear necessary. Defendants have addressed the Report through standard motion practices of *Daubert* and class certification, so their argument about incurring additional costs as a result of the Report is unconvincing. This factor weighs in Plaintiffs' favor.

\* \* \*

"'The Rule 16(b)(4) analysis is holistic,' such that the Court 'does not mechanically count the number of factors that favor each side' but rather 'focuses on the diligence of the party seeking to modify the scheduling order.'" *Sievert v. Howmedica Osteonics Corp.*, No. 3:18-CV-2175-S, 2020 WL 2507678, at *1 (N.D. Tex. May 15, 2020) (quoting *Kouzbari v. Health Acquisition Co., LLC*, No. 3:18-CV-0126-D, 2018 WL 6514766, at *4 (N.D. Tex. Dec. 11, 2018)).  Considering the factors above in this light, the Court finds there is good cause under Rule 16(b)(4) to allow the Report.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Motion for Leave to Rely upon the Supplemental Report of Dr. Greg Allenby (Dkt. #235) is **GRANTED**.

**SIGNED** this 16th day of July, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE